**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| **TEEDA BARCLAY,** <br> on behalf of herself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> **ICON HEALTH & FITNESS, INC.** and **NORDICTRACK, INC.,** <br><br> Defendants. | Civil Case No. <br><br><br> **CLASS ACTION COMPLAINT** <br><br><br> **JURY TRIAL DEMANDED** |

The allegations made in this Complaint are based upon information and belief except those allegations that pertain to Plaintiff, which are based on personal knowledge. Each allegation either has evidentiary support or, alternatively, pursuant to Rule 11(b)(3) of the *Federal Rules of Civil Procedure*, is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

**INTRODUCTION**

1.      Plaintiff Teeda Barclay ("Plaintiff") brings this proposed class action on behalf of herself and similarly-situated purchasers (the "Class Members") of ICON Health & Fitness, Inc., ("ICON") and NordicTrack, Inc. ("NordicTrack" or collectively with ICON, "Defendants") treadmills, challenging the conduct of NordicTrack in the false advertising, misleading marketing, and sales of its personal fitness treadmills (the

"Treadmills"),[1] which are manufactured, developed, marketed and sold for household use. The Treadmills are incapable of reaching and maintaining ICON's overstated and inflated continuous horsepower representations during normal designed household exercise use. Plaintiff seeks damages and equitable relief on behalf of herself and all others similarly situated.

2.      Treadmill motor horsepower rating is one of the most prevalent and recognized specifications a consumer compares when purchasing a treadmill. NordicTrack markets that the horsepower delivered by the motor can directly affect the quality of the Treadmills' performance and thus a reasonable consumer's purchasing decision. NordicTrack deceitfully touts excessive continuous horsepower capabilities with false and misleadingly inflated continuous horsepower ratings intended to induce consumers into purchasing the Treadmills and paying an inflated premium price based on the horsepower misrepresentations.

3.      NordicTrack misleads consumers into believing that the Treadmills actually generate and maintain the represented continuous horsepower, even though the horsepower misrepresentations can never be obtained during actual household use by the Plaintiff and consumer Class Members. NordicTrack manufactures, develops, markets, distributes, and

---

[1] NordicTrack, Inc. manufactured, advertised, marketed and sold multiple treadmill models during the relevant time period with similar misrepresentations, including but not limited to, the Incline Trainers X7i (2.75 CHP), X9i (3.0 CHP), X22i (4.25/4.00 CHP), X32i (4.25 CHP), X11i (4.25/3.75 CHP), T Series 6.5 S (2.6 CHP), T Series T6.5 SI (2.6 CHP), T6.7 (2.6 CHP), T7.5 S (3.0 CHP), T8.5S (3.5 CHP), T9.5 S (3.6 CHP), Commercial 2950 (4.25 CHP), 2450 (4.0 CHP), 1750 (3.8/3.75CHP), C Series C700 (2.75 CHP), C1650 (3.5 CHP), C850s (2.75 CHP), C960i (3.0 CHP), C990 (3.0 CHP) and Elite 3760 (3.5 CHP), 5760 (3.8 CHP), 7760 (4.0 CHP).

sells a variety of treadmill models throughout the country, including the Treadmills Plaintiff and Class Members have purchased. Based on the horsepower misrepresentations, NordicTrack charges a premium price for the Treadmills' misrepresented horsepower capabilities available during household usage.

4.    NordicTrack makes numerous representations on its website (www.nordictrack.com/treadmills), in marketing materials, in store displays and online at Dick's Sporting Goods ("Dick's") and in store displays and online at Sears that its Treadmills have a specific power output, quantified in continuous horsepower ("CHP"). The Treadmills cannot produce, let alone maintain continuously, their marketed and advertised continuous horsepower during household usage. NordicTrack also sells and markets its Treadmills through other third-party retailers such as Amazon and Best Buy.

5.    NordicTrack maintains an authorized sales and distribution partnership with Amazon.com, the world's largest e-commerce marketplace, through which Plaintiff reviewed and purchased her treadmill.  Through Amazon.com, NordicTrack markets the same horsepower capability misrepresentations as it makes on its own website and marketing and advertising.

6.    In addition to online sales through Amazon.com and directly through nordictrack.com/treadmills, NordicTrack sells its exercise equipment products through an authorized distribution and sales partnership with Dick's, the nation's largest sporting goods retailer, and Sears, which sells a variety of NordicTrack treadmills online. NordicTrack treadmills are prominently displayed and sold at most of Dick's approximately 727 retail sporting goods store locations, in 47 states throughout the country.

3

Thus, Amazon.com, Dick's, and other third-party retailers like Sears, act as authorized agents of Defendants in the marketing, sale and distribution of Treadmills.

7.     NordicTrack advertises and markets that the Treadmills operate at a continuous horsepower of between 2.6 CHP and 4.25 CHP, depending on the specific model.  The pricing increase for specific models is generally in direct relationship to the advertised CHP representations.

8.     NordicTrack labels the Treadmills with false and misleading horsepower ratings because such representations are highly material to consumers and serve to differentiate the Treadmills from the competition and justify a higher price.   Reasonable consumers expect their Treadmills to generate and maintain the horsepower NordicTrack claims, but instead, Plaintiff and Class Members' Treadmills only provide a small fraction of the horsepower promised by NordicTrack while exercising.

9.     NordicTrack's CHP representations are inaccurate, misleading, and materially overstate the Treadmills' true operating horsepower. It is not possible for the Treadmills to operate at a CHP of 4.25 CHP, or even 2.6 CHP, when plugged into the standard 120-volt, 15-amp outlet found in residential homes in the United States for which the Treadmills are designed.

10.     NordicTrack recognizes that consumers view a treadmill's power as one of the most important features in making a treadmill purchase for their home. Defendants specifically highlight NordicTrack's claims concerning the Treadmills' horsepower in advertising, on its website, in its press releases, and at its point of sale marketing materials prominently displayed at Dick's stores and online by third-party retailers like Amazon and

4

Sears. In addition to online sales through authorized partners, Defendant ICON also markets and sells treadmills through its online retail subsidiary, Workout Warehouse (www.workoutwarehouse.com/nordictrack).

11.    NordicTrack's false and overstated horsepower representations are designed to mislead consumers into believing the Treadmills have much more power than they actually deliver, leading consumers to overpay for the Treadmills and/or cause consumers to purchase the Treadmills instead of competitor manufacturers' treadmills or less expensive models.

12.    Reasonable consumers like Plaintiff expect the Treadmills to produce the represented horsepower stated in and on NordicTrack's marketing materials, website, and/or retail store display, during household operation, and would not have purchased the Treadmills or would have paid less had they known that Defendants' representations regarding the Treadmills' CHP were misleading. NordicTrack's Treadmills are worth substantially less than what Plaintiff and Class Members paid to purchase them.

13.    Plaintiff suffered damages resulting from NordicTrack's actions and omissions. Accordingly, Plaintiff brings this class action asserting claims against Defendants for violations of consumer protection and false advertising statutes, breaches of express and implied warranties, and negligent misrepresentations.

## JURISDICTION

14.    This Court has jurisdiction over this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because ICON and NordicTrack are incorporated as Utah corporations. ICON and NordicTrack are citizens of the State of Utah; Plaintiff Teeda

Barclay is a citizen of, and purchased a Treadmill within, the State of Minnesota; there are more than 100 class members in many different states throughout the country; and the aggregate amount in controversy exceeds $5 million.

15.    Venue is proper in this Court because Defendants are registered Utah corporations that transact business, distributed, advertised and sold Treadmills in the District of Minnesota, including the Treadmill Plaintiff Teeda Barclay purchased, and Plaintiff reviewed and evaluated NordicTrack's CHP representation and eventually purchased her NordicTrack treadmill in this District.

## PARTIES

16.    Plaintiff Teeda Barclay purchased a NordicTrack 6.5S treadmill online through Amazon.com on or about June 3, 2019, for the purpose of using the Treadmill for personal exercise use in the basement of her home located in Coon Rapids, Minnesota. After purchasing her Treadmill, Plaintiff has used her Treadmill for ordinary intended use within her home and has not received the CHP that NordicTrack represents. Amazon's website expressly noted that the 6.5S treadmill had 2.6 CHP.

17.    Before purchasing her Treadmill from Defendants, Plaintiff reviewed NordicTrack's website, NordicTrack's statements that the NordicTrack 6.5S treadmill was capable of producing 2.6 CHP when she was comparing the T Series 6.5S treadmill to other treadmill manufacturers, such as Sole Treadmills.  NordicTrack's representations and marketing stating that the T Series 6.5S treadmill produced 2.6 CHP was a material factor considered in Plaintiff's purchase of her Treadmill. Plaintiff would not have purchased her NordicTrack T Series 6.5S treadmill or would have paid considerably less if she had known

6

the true horsepower capabilities. Plaintiff believed that power was a material factor in the quality of treadmill she wished to purchase, that the CHP represented at the NordicTrack website indicated the power of the treadmill she would receive, and would not have purchased her Treadmill or would have paid less but for the CHP representations on NordicTrack and Amazon's websites.

18.    Plaintiff paid over $500 for her NordicTrack T Series 6.5 S treadmill in June 2019 and has been damaged. After purchasing her Treadmill, and delivery to her home, Plaintiff has used her Treadmill for ordinary use within her home and has not received the CHP that Defendants represented.

19.    Defendant ICON Health & Fitness, Inc. is a Utah corporation, headquartered in Logan, Utah. In 1998, ICON acquired NordicTrack, Inc. and added treadmills to the NordicTrack brand. ICON develops, markets and sells fitness equipment for residential use, including treadmills, elliptical, bikes and rowers. ICON has been in the business of developing, marketing and selling exercise equipment throughout North America in interstate commerce since 2002 and continues to expand its presence in the US and internationally.[2]

20.    Defendant NordicTrack, Inc. is a Utah corporation, headquartered in Logan, Utah.  Originally, NordicTrack was founded in 1975 in Chaska, Minnesota after a Minnesota resident invented the NordicTrack ski machine in his basement. The

---

[2] ICON has a wide range of health fitness brands in addition to NordicTrack, including entities doing business as ProForm Fitness Products, Weslo, Fitness Warehouse, Workout Warehouse and Healthrider.

NordicTrack brand has been owned and managed by Defendant ICON since 1999. NordicTrack manufacturers, markets and sells treadmills, strength training equipment, elliptical machines, stationary bikes and the Nordic ski machine.

## STATEMENT OF FACTS

### I.    Horsepower Overview

21.    Horsepower is a unit of measurement of power or the rate at which work is done and is often used to quantify the mechanical power output of a motor or an engine.

22.    The "horsepower" measurement of power was adopted in the late 18th century by Scottish engineer James Watt to compare the output of steam engines with the power of draft horses. In describing electric power under the metric system, the term "watt" is now commonly used instead of horsepower as a measure of mechanical power output performed by an electric motor. One unit of horsepower equals approximately 746 watts.

23.    The amount of mechanical power output generated by any given electric motor can be determined by examining that electrical voltage available to it and the amperage that the motor is capable of drawing. To calculate an electric motor's operating horsepower, voltage is multiplied by amperage and then by a fraction representing the efficiency of the motor. That total is then divided by 746 watts to convert the watts to horsepower.

24.    A simple equation thus describes how to calculate horsepower by multiplying the available voltage, amperage draw, and motor efficiency, and dividing that product by 746 (to convert into horsepower as measured by wattage):

$$\frac{\underline{(Voltage)} \; x \; \underline{(Amperage)} \; x \; \underline{(Motor\ Efficiency)}}{746} = HP$$

25.    Most electrical outlets in American homes are equipped with the standard 15-amps, with two slots and a U-shaped grounding third hole and have an accompanying 120-volt circuit. A 15-amp circuit is usually served by 14-gauge wire and is protected by a 15-amp circuit breaker or fuse based on building and electrical codes.

26.    Defendants' Treadmills are rated at 15 amps with a 110-volt circuit, which equates to a theoretical maximum output power of 1,650 watts or 2.21 horsepower output without taking into consideration the motor's actual efficiency[3] and power factor losses, which further decrease the motor's horsepower output. Heat and other factors decrease the motor's efficiency, and therefore further decrease the power output of the motor while in actual use.

27.    After factoring the effects of the power factor and efficiency losses, NordicTrack's Treadmills are capable of providing only a fraction of the advertised CHP that NordicTrack markets its Treadmills as capable of providing while in household use.

28.    It is beyond the safety rating for an electrical device to draw more power than the receptacle and household electrical circuit is designed for. If an electrical device does draw more power than the household electrical circuit is designed for, the circuit-breaker will flip and cut off power to that circuit. As such, NordicTrack treadmills are incapable of

---

[3] Electric motor efficiency is the measure of the ability of an electric motor to convert electrical energy to mechanical energy.

drawing more power than a household outlet is capable of providing during actual household use.

29.    In addition to the power input limits available during household use, the Treadmills themselves are equipped with an electronic control board that regulates the amperage draw and further limits the horsepower capabilities.

30.    Defendants' Treadmills are only capable of producing a fraction of the misrepresented CHP due to the Treadmill's onboard electrical circuit breaker, as well as common household electrical limits found in households throughout the United States.

31.    NordicTrack's horsepower representations seem to defy the laws of physics and allow NordicTrack's Treadmills to output more CHP than the Treadmills are actually capable of producing from a common household outlet power source in the United States and for which the Treadmills are rated and marketed. Based on NordicTrack's misleading horsepower representations, Defendants' Treadmills purportedly output more CHP than possible from the actual energy input from a household outlet receptacle.

## II.    Continuous Horsepower

32.    NordicTrack markets and sells the Treadmills as maintaining a certain "continuous horsepower," or "continuous duty horsepower." CHP can be defined as a measurement of the motor's ability to maintain and continuously produce power over an extended period of time without exceeding the current rating of the motor.

33.     CHP is often considered to be the most accurate indicator of a motor's power output because, as Defendant ICON states, "it is performed at the voltage used in application by the particular motor."[4]

34.     The CHP associated with a particular treadmill is meant to define "*how much power is maintained throughout the workout*."[5] Additional industry experts have made clear that a "*continuous duty motor measures the minimum horsepower delivered at all points during a workout*."[6]

35.     The CHP associated with a treadmill is the "*measure of sustained power during regular use*. The continuous motor power is what is consistently delivered during heavy usage over an extended period of time."[7]

36.     When assessing the CHP of a treadmill, "the measurement is taken over an extended period of time. *It shows that the motor can maintain the power it is rated for without lagging or slowing down under strain.*"[8]

37.     The advertised CHP capabilities associated with NordicTrack's Treadmills are deliberate misrepresentations because the Treadmill motor is incapable of maintaining the stated CHP rating at any time during the consumer's workout.  In fact, NordicTrack's

---

[4] http://iconsupport.eu/what-difference-between-hp-and-chp (last accessed Oct. 24, 2019).

[5] https://www.treadmillreviews.net/treadmill-motors-what-you-need-to-know/ (emphasis added) (last accessed Oct. 24, 2019).

[6] https://blog.johnsonfitness.com/blog/treadmill_drive_motors_and_the_question_of_horsepower/ (emphasis added) (last accessed Oct. 24, 2019).

[7] https://treadmill-ratings-reviews.com/treadmill-articles/facts-about-treadmill-motors/ (emphasis added) (last accessed Oct. 24, 2019).

[8] https://www.treadmillreviews.com/treadmill-buying-guide/ (emphasis added) (last accessed Oct. 24, 2019).

Treadmills are not capable of achieving the advertised CHP at any time during a consumer's workout.

38.     In order for NordicTrack to even come close to achieving the misrepresented horsepower capabilities of its Treadmills, NordicTrack bases its misleading horsepower representations on an inflated laboratory testing power draw (amperage) not possible in household use. The laboratory testing power input far exceeds the current rating of the Treadmill motors while in household use, and thus cannot be truthfully represented, by definition, as the Treadmills' CHP capabilities to Plaintiff and the Class Members.

39.     NordicTrack's advertised CHP is a misleading power metric for a consumer to evaluate unless the motor is actually capable of attaining the CHP in actual use and under standard operating conditions. A reasonable consumer is led to believe that the CHP representations are actually achievable while in normal exercise use based on NordicTrack's horsepower misrepresentations. Reasonable consumers cannot properly evaluate the Treadmills' power metrics due to NordicTrack's misleading and false statements regarding the Treadmills' inflated CHP.

## III.    NordicTrack's CHP Misrepresentations and Misleading Statements

40.     NordicTrack promotes the Treadmills in numerous market outlets including its own treadmill blog. NordicTrack makes clear that although "it's not 'sexy', the motor on your treadmill is one of the most important features when choosing your machine."[9]

---

[9] https://nordictracktreadmillblog.com/treadmill-motor/ (last accessed Oct. 24, 2019).

41.    Focusing directly on the power capabilities of its X11i incline trainer treadmill, Defendants points to their "monster 4.25 motor [which] means it can hold up to heavy or frequent use with ease."[10]

42.    NordicTrack touts that its treadmill "machine works as hard as you with up to an incredible 4.25 CHP DurX™ Commercial Plus motor, powering your calorie-torching iFit workout."[11]

43.    NordicTrack also claims that its T Series treadmill "machine works as hard as you with up to an incredible 3.6 CHP DurX™ Commercial Plus motor. Your calorie-torching iFit workouts will never be the same."[12]

44.    NordicTrack further states that "[t]he 3.0 continuous horsepower DurX™ motor features…a built-in ground brush [which] ensure[s] the motor performs with quiet reliability mile after mile."[13] Defendants representations clearly indicate that the CHP is delivered to the consumer while working out "mile after mile."

45.    The NordicTrack Blog explains that the "CHP is found by measuring the continual use of the motor at the highest listed horsepower" which is "helpful to runners who plan on doing a good bit of training on their treadmills."[14]  NordicTrack is clearly representing that the CHP is the treadmill power achieved in continual use during a runner's workout.

---

[10] https://nordictracktreadmillblog.com/ (last accessed Oct. 24, 2019).

[11] https://www.nordictrack.com/commercial-treadmills (last accessed Oct. 1, 2019).

[12] https://www.nordictrack.com/t-series-treadmills (last accessed Oct. 1, 2019).

[13] https://www.workoutwarehouse.com/treadmills/c-990 (last accessed Oct. 24, 2019).

[14] https://www.nordictrack.com/learn/knowing-the-difference-between-treadmill-motors/ (last accessed Nov. 8, 2019).

46.    NordicTrack sells many of its Treadmills through Amazon.com and proclaims the "Proven Performance" of the T Series Treadmills (6.5S & 6.5Si Models) using a "Durable 2.6 CHP Motor," is perfect for "running, jogging, and walking in the comfort of your home" and picture a "durable 2.6 CHP motor."[15] Defendants' misrepresentations exemplify that a consumer will be able to achieve the represented CHP while in household use.



47.    Additional treadmill reviews parrot Defendants' misrepresentations and further mislead reasonable consumers such as Plaintiff. The T 6.5Si model "has a commercial 2.6 CHP motor, giving it greater durability and power than can usually be found in a treadmill in this price range" and has the "commercial [2.6 CHP] DurX motor, which makes it a stronger motor…."[16]

---

[15] https://www.amazon.com/NordicTrack-Treadmills-6-5S-6-5Si-Models/dp/B07RZ3NX6J (last accessed Oct. 28, 2019).

[16] https://www.treadmillreviews.com/nordictrack-t-6-5-si-treadmill-review/ (last accessed Oct. 2, 2019).

48.    Representations by Defendants also extend to the actual product branding misrepresentations of CHP capabilities on the treadmill running deck itself, "2.6 CHP" Smart Drive System.



49.    In addition to NordicTrack's online advertising and marketing horsepower misrepresentations, NordicTrack's in-store floor model displays across the country at Dick's Sporting Goods prominently exhibit NordicTrack's CHP as a major selling feature (picture taken at Dick's Sporting Goods, Richfield, MN, Oct. 2, 2019) (highlighting added).



50.     In direct correlation to the misrepresented horsepower and the various treadmill models that NordicTrack offers, Defendants have priced the models according to the misleading CHP associated, incrementally increasing the price premium based on successively higher CHP representations.

51.     NordicTrack's advertised CHP rating is fictitious when compared to the actual horsepower available in normal household operation. In order to achieve the misleading CHP output that NordicTrack claims the Treadmills are capable of achieving, the power input necessary when plugged into a consumer's household outlet would have to be two to three times the actual capability of the electrical infrastructure found in American homes.

52.     The CHP misrepresentations made by NordicTrack are more than mere subjective promotional statements that could be considered advertising puffery. NordicTrack's CHP misrepresentations are an objectionably measurable and quantifiable

16

metric that a reasonable consumer is drawn to believe is real and achievable when using the Treadmills for ordinary exercise use.

## CLASS ACTION ALLEGATIONS

53.    It is believed that there are tens of thousands of Class Members across the United States who have purchased NordicTrack's Treadmills.

54.    Under Fed. R. Civ. P. 23(b)(2) and (b)(3), Plaintiff brings this suit on behalf of herself and a nationwide class (the "Nationwide Class" or "Class") defined as follows:

> All persons in the United States who purchased a NordicTrack treadmill, during the maximum period of time permitted by law, for personal, family, or household purposes, and not for resale.

55.    Under Fed. R. Civ. P. 23(b)(2) and (b)(3), Plaintiff brings this suit on behalf of herself and a Minnesota-statewide class (the "Minnesota Class" or "Subclass") defined as follows:

> All persons in the State of Minnesota who purchased a NordicTrack treadmill, during the maximum period of time permitted by law, for personal, family, or household purposes, and not for resale.

56.    Plaintiff specifically excludes ICON and NordicTrack, their employees, agents, officer, directors, legal representatives, successors, subsidiaries, parent entities, or predecessors; class counsel and its employees; and the judicial officers and its associated court staff assigned to this case from the proposed Classes.

57.    The definitions of the Class and Subclass are unambiguous, and Plaintiff is a member of the Class and Subclass she individually seeks to represent.

58.     Plaintiff reserves the right to amend or modify the Class and Subclass definitions to create greater specificity, further division into subclasses, or limitation to particular issues as this case progresses.

59.     The Nationwide Class is so numerous and geographically dispersed that joining all Class members would be impracticable. The exact number of Class members is unknown by Plaintiff at this time and can only be ascertained through appropriate discovery. Plaintiff believes that the Class numbers at least in the tens of thousands.

60.     The Subclass is no numerous and geographically dispersed in Minnesota that joining all the member would be impracticable. The exact number of members in the Subclass is unknown by Plaintiff at this time and can only be ascertained through appropriate discovery. Plaintiff believes the Subclass consists of at least 100 potential class members.

61.     Plaintiff's claims are typical of the claims of the Class because Plaintiff purchased a NordicTrack treadmill that was sold with a misleading CHP rating and suffered a pecuniary loss as a result of the purchase. Plaintiff's claims have the same essential characteristics as all other Class members' claims and the evidence to establish the facts and claims stated herein will be the same for Plaintiff and all other members of the Classes. All claims are based on the course of conduct and similar legal theories. All Class members, including Plaintiff, suffered the same type of injury and possess the same interests in pursuing this case as does Plaintiff, and none benefitted from the misleading representations. A single resolution of these claims would be preferable to a multiplicity of similar actions.

62.     Plaintiff's claims are typical of the claims of the Subclasses because Plaintiff purchased a NordicTrack treadmill sold with a misleading horsepower rating and suffered a pecuniary loss as a result of the purchase. The Subclass claims have the same essential characteristics as all other Subclass members' claims and the evidence to establish the facts and claims stated herein will be the same for Plaintiff and all other members of the Subclass. Each Subclass claim is based on the course of conduct and similar legal theories. All Subclass members, including Plaintiff, suffered the same type of injury and possess the same interests in pursuing this case as do Plaintiff, and none benefitted from the misleading representations. A single resolution of these claims would be preferable to a multiplicity of similar actions.

63.     Plaintiff will fairly and adequately protect the interests of the members of the Class and the Subclass and has retained counsel competent and experienced in class action litigation.

64.     Defendants acted or refused to act on grounds generally applicable to the Class and the Subclass, thereby making it appropriate for the Court to render final injunctive relief regarding the Class as a whole and the Subclass as a whole. Specifically, NordicTrack continues to misrepresent the CHP available in the Treadmills.

65.     Common questions of law and fact exist as to Class members' claims and Subclass members' claims and predominate over questions affecting only individual Class or Subclass members. Common legal and factual questions include, but are not limited to:

   a.     The nature of NordicTrack's promotion of CHP;

b.     Whether NordicTrack misrepresented the CHP, and/or horsepower of the Treadmills;

c.     Whether the NordicTrack's "continuous horsepower" claims were false and/or misleading;

d.     Whether NordicTrack knew or should have known its claims regarding the Treadmills' horsepower were false and/or misleading;

e.     Whether NordicTrack's representations were material to consumers and the market;

f.     Whether the Treadmills produce the represented "continuous horsepower" for any time material to consumer operation and use;

g.     Whether NordicTrack placed "continuous horsepower" ratings on the Treadmills' packaging and store display;

h.     Whether NordicTrack provided point of sale materials to retailers for use in promoting NordicTrack's Treadmills and whether those materials included misleading references to CHP;

i.     Whether NordicTrack provided advertising copy or suggested promotional language to retailers for use in promoting NordicTrack's Treadmills and whether those materials included misleading references to CHP;

j.     Whether NordicTrack's CHP statements constituted contractual promises or warranties on the Treadmills;

k.      Whether NordicTrack's misleading representations caused it to receive money that it would not have received absent those representations;

l.      Whether NordicTrack's actions breached the duties it owed Plaintiff and the Class under express warranties for the Treadmills;

m.      Whether NordicTrack's actions breached the duties it owed Plaintiff and the Class under its implied warranties regarding the Treadmills;

n.      Whether Plaintiff and the Class paid more for the Treadmills than they would have paid absent NordicTrack's misleading horsepower representations;

o.      Whether Class members are entitled to damages, restitution, and/or monetary relief and if so, the amount and nature of such relief; and

p.      Whether the Court should enjoin NordicTrack from continuing to misrepresent the Treadmills' horsepower.

66.      Resolution of each of these issues will turn upon evidence common to all Class and Subclass members.

67.      Resolution of issues common to all Class and Subclass members will predominate over individual issues.

68.      The issues common to the Class and the Subclass and the nature of the common relief creates a cohesive class for injunctive relief.

69.      Treating this case as a class action rather than attempting multiple individual actions provides a superior method for the fair and efficient adjudication of this controversy because:

   a. It will avoid a multiplicity of suits and consequential burden on the courts and Defendants;

   b. It would be virtually impossible for all members of the Class and/or Subclass to intervene as plaintiffs in this action;

   c. It would assure uniform application of the laws and a single, uniform decision across the board without sacrificing procedural fairness or bringing about other undesirable results;

   d. It will provide court oversight of the claims process, once NordicTrack's liability is adjudicated;

   e. It would permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender; and

   f. It will permit the adjudication of relatively small claims by certain Class members, who could not afford to individually litigate such claims against a large corporate entity such as NordicTrack.

70. Plaintiff and the proposed Class and Subclass satisfy the requirements of Rule 23(b)(1)(A), (b)(2), and/or (b)(3).

71. Plaintiff is not aware of any difficulties that are likely to be encountered in managing this action that would preclude its maintenance as a class action.

## PRE-LAWSUIT NOTICE

72. In a notice letter dated October 10, 2019, Plaintiff provided ICON and NordicTrack with proper pre-suit notice on behalf of Plaintiff and putative class members before filing this lawsuit in an attempt to address Defendants' horsepower misrepresentations without court intervention and allow Defendants the opportunity to

cure. Defendant ICON acknowledged receipt of Plaintiff's notice letter in an October 11, 2019 email from ICON's legal counsel.

73.    Plaintiff's October 10, 2019 notice letter was sent within a reasonable time after she discovered or reasonably should have discovered that her NordicTrack treadmill did not possess the represented 2.6 CHP.

74.    In response to the October 10, 2019 pre-suit notice letter, NordicTrack indicated through its legal counsel that it fully stands behind its treadmill specifications and provided no indication that Defendants were willing to cure the treadmill horsepower misrepresentations.

### COUNT 1
### Breach of Express Warranty
### (on behalf of Nationwide Class)

75.    Plaintiff restates and incorporates all other allegations in this Complaint.

76.    Plaintiff and the Class bring this count as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

77.    Defendants represented on the Treadmills' packaging, on NordicTrack's website and on point-of-sale materials used for display and sale of the Treadmills that the Treadmills had certain horsepower specifications, as noted herein, which Plaintiff and other consumers reviewed and relied on as truths asserted before purchasing their Treadmills.

78.    As detailed above, these representations are false and/or misleading, and the Treadmills Plaintiff and the Class members purchased do not conform to the above noted horsepower representations and cannot operate as promised during household usage.

79.    These representations constitute express warranties as to the Treadmills' qualities, nature and performance.

80.    These representations became part of the basis of the bargain for Plaintiff and the other Class members because they reviewed and considered such statements in deciding to purchase the Treadmills and because such statements are among the facts a reasonable consumer would consider material in the purchase of the Treadmills.

81.    Plaintiff and the Class would not have purchased the Treadmills absent Defendants' representations that the Treadmills would operate at 2.6 CHP and above or would have paid substantially less for the Treadmills.

82.    Defendants breached these express warranties because the Treadmills cannot reach the claimed horsepower even under ideal conditions during household operation, and certainly not during any usage time material to consumer use.

83.    At the time the Treadmills were sold, Defendants knew that the written affirmation of facts or written promises regarding the level of horsepower were false and misleading.

84.    Defendants have breached their promises and warranties by failing to provide goods conforming to the promised product specifications directly and proximately injured Plaintiff and the Class, by providing them with non-conforming Treadmills and creating an artificially inflated price for those Treadmills.

85.    Plaintiff provided Defendants with notice 30 days before the filing of this lawsuit.

86.    Defendants' breach of the promises and warranties entitles Plaintiff and the Class to: (a) damages, in an amount to be determined at trial, and (b) an order requiring future representations to conform with the Treadmills' actual performance in the type of use for which they are intended.

## COUNT 2
### Breach of Express Warranty — Magnuson-Moss Warranty Act
### (on behalf of the Nationwide Class)

87.    Plaintiff restates and incorporates all other allegations in this Complaint.

88.    Plaintiff and the Class bring this count as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

89.    The Treadmills are consumer products as defined in 15 U.S.C. § 2301(1).

90.    Plaintiff and the Class members are consumers as defined in 15 U.S.C. § 2301(3).

91.    NordicTrack is a supplier and warrantor as defined in 15 U.S.C. §§ 2301(4) and (5).

92.    NordicTrack provided Plaintiff and Class members "written warranties" within the meaning of 15 U.S.C. § 2301(6).

93.    15 U.S.C. § 2310(d) is satisfied because Plaintiff properly invokes the jurisdiction of this Court under CAFA.

94.    This same section—15 U.S.C. § 2310(d)—provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written warranty.

95.    Defendants made written warranties regarding the Treadmills to Plaintiff and Class members within the meaning of 15 U.S.C. § 2301(6) (hereinafter, "written warranties" or "express warranties").

96.    Defendants breached express warranties made to Plaintiff and the Class members.

97.    Defendants promised, affirmed, and expressly warranted that the Treadmills had 2.6 CHP or higher, and promised that the Treadmills would maintain 2.6 CHP or higher for their lifetimes. In other words, Defendants expressly warranted to Plaintiff and Class members that the Treadmills would meet a level of performance, or power output, associated with a 2.6 CHP or higher horsepower treadmill motor, for life.

98.    The Treadmills are warranted to produce 2.6 CHP or higher for at least the duration of the lifetime warranty during household usage.

99.    NordicTrack's horsepower warranties became part of the basis of the bargain for Plaintiff and other Class members because they reviewed and considered such statements in deciding to purchase the Treadmills, and because such statements are among the facts a reasonable consumer would consider material in the purchase of a high-end treadmill.

100.    Plaintiff reviewed and considered NordicTrack's representations about the Treadmills producing at least 2.6 CHP before purchasing the Treadmills. But for Defendants' representations about the Treadmills' horsepower capabilities, Plaintiff would not have purchased the Treadmill or would have paid substantially less for the Treadmill.

26

101.    NordicTrack breached its horsepower warranties by delivering Treadmills that do not—and indeed cannot—provide the power and performance of a 2.6 CHP or higher treadmill during household usage.

102.    At the time the Treadmills were sold, NordicTrack knew that the affirmations of fact or written promises they made regarding horsepower were false and were offered with no intention or capability of honoring them.

103.    As a direct and proximate result of NordicTrack's breach of its express written warranties regarding the horsepower representations, Plaintiff and the Class members have been damaged in an amount to be proven at trial.

104.    Plaintiff has given Defendants notice and an opportunity to cure these breaches.  Plaintiff has also given Defendants notice that her notice was also on behalf of putative class members.

105.    In addition, under 15 U.S.C. § 2310(d)(2), Plaintiff and the other Class members are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been incurred by Plaintiff and the other Class members in connection with the commencement and prosecution of this action.

106.    Furthermore, Plaintiff and the Class are also entitled to equitable relief under 15 U.S.C. § 2310(d) and damages as a result of Defendants' violation of its written warranties.

## COUNT 3
### Breach of Express Warranty
### Minn. Stat. §336.2-313
### (on behalf of the Minnesota Class)

107.     Plaintiff restates and incorporates all other allegations in this Complaint.

108.     Plaintiff and the Minnesota Class bring this count as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

109.     An express warranty was created by the Defendants on any affirmation of fact or promise made by NordicTrack to the Plaintiff and Minnesota Class members which relates to the goods and becomes part of the basis of the bargain to create an express warranty that the goods shall conform to the affirmation or promise.

110.     NordicTrack represented that the Treadmills had certain horsepower specifications on the Treadmills' packaging, on its website, and on point of sale materials used for display and sale of the Treadmills, as noted herein, which Plaintiff and the Minnesota Class reviewed and considered before purchasing their Treadmills. NordicTrack warranted that the Treadmills would perform as advertised with a lifetime warranty on the motor producing the stated CHP.

111.     Defendants' promise that their Treadmills provide a specific CHP was part of the basis of the bargain when Plaintiff and Minnesota Class members purchased the Treadmills.

112.     As detailed above, these representations are false and/or misleading, and the Treadmills Plaintiff, and the Minnesota Class purchased, do not conform to the above-

28

noted horsepower representations and cannot operate as promised during household operation.

113.    These representations constitute express warranties as to the Treadmills' qualities, nature and performance.

114.    These representations became part of the basis of the bargain for Plaintiff and the Minnesota Class members because they reviewed and considered such statements in deciding to purchase the Treadmills and because such statements are among the facts a reasonable consumer would consider material in the purchase of a high-end treadmill.

115.    Plaintiff and the Minnesota Class would not have purchased the Treadmills absent NordicTrack's representations about the Treadmills producing 2.6 CHP or higher or would have paid substantially less for the Treadmills.

116.    Defendants breached these express warranties because the Treadmills cannot reach the affirmation and promise of stated CHP during household use.

117.    At the time the Treadmills were sold, Defendants knew that the written affirmation of facts or written promises regarding the level of horsepower during household use were false.

118.    Defendants' breach of promises and warranties by failing to provide goods conforming to the promised product specifications directly and proximately injured Plaintiff and the Minnesota Class, by providing them with non-conforming Treadmills and creating an artificially inflated price for those Treadmills.

119.    NordicTrack's breach of the promises and warranties entitles Plaintiff and the Minnesota Class to: (a) damages, in an amount to be determined at trial, and (b) an

order requiring future representations to conform with the Treadmills' actual performance in the type of use for which they are intended.

### COUNT 4
### Breach of Implied Warranty
### Minn. Stat. § 336.2-314
### (on behalf of the Minnesota Class)

120.    Plaintiff restates and incorporates all other allegations in this Complaint.

121.    Plaintiff brings this count as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

122.    A warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to the goods of that kind.

123.    Defendants' implied warranty extends to Plaintiff who may reasonably be expected to use, consume or be affected by the goods and was injured by breach of the warranty. Minn. Stat. §336.2-318

124.    The laws governing the sale of goods imply a warranty that the goods conform to the representations and specifications suppliers/merchants supply for the goods to conform to the promises or affirmations of fact made on the container or label.

125.    The promises or affirmations of fact made by Defendants are made with the intent that the consumer benefit from such representations.

126.    The purpose of these warranties is to protect consumers. Consumers are the intended beneficiaries of those warranties, as the representations were made to facilitate NordicTrack's Treadmill sales by creating consumer demand in the market and consumer purchases.

127.   The Treadmills are consumer goods.

128.   Defendants are merchants with respect to the sale of the Treadmills.

129.   NordicTrack breached these implied contractual provisions because the Treadmills cannot perform as NordicTrack promised and/or affirmed.

130.   NordicTrack cannot provide a remedy or provide conforming goods because motors useable in the Treadmills inherently cannot provide the represented power in ordinary household operation.

131.   NordicTrack's breach of the implied warranty of merchantability injured the Plaintiff and the Minnesota Class by providing Treadmills that could not do the work as warranted and caused Plaintiff and the Class to pay a premium price for the Treadmills.

132.   NordicTrack's actions breach implied warranties due consumers.

133.   NordicTrack's breach entitles Plaintiff and the Class to: (a) damages, in an amount to be determined at trial, and (b) an order requiring future representations to conform with the Treadmills' actual performance in the type of use for which they are intended.

## COUNT 5
### Breach of Warranty — Magnuson-Moss Warranty Act
### (on behalf of the Minnesota Class)

134.   Plaintiff restates and incorporates all other allegations in this Complaint.

135.   Plaintiff brings this claim on behalf of the Minnesota Class pursuant to Rule 23 of the Federal Rules of Civil Procedure.

136.   The Treadmills are consumer products within the meaning of 15 U.S.C. § 2301(1).

137.   Plaintiff and the Minnesota Class are consumers within the meaning of 15 U.S.C. § 2301(3) because they are persons entitled under applicable state laws to enforce against the warrantor the obligations of its express and implied warranties.

138.   NordicTrack is and was a supplier of consumer products and a warrantor within the meaning of 15 U.S.C. §§2301(4) and (5).

139.   15 U.S.C. § 2310(d) is satisfied because Plaintiff properly invokes the jurisdiction of this Court under CAFA.

140.   This same section—15 U.S.C. § 2310(d)—provides a cause of action to any consumer who is damaged by the failure of a warrantor to comply with an implied warranty.

141.   NordicTrack made implied warranties regarding the Treadmills to Plaintiff and the Minnesota Class within the meaning of 15 U.S.C. § 2301(7). NordicTrack provided Plaintiff and other Minnesota Class members an implied warranty of merchantability within the meaning of 15 U.S.C. § 2301(7).

142.   NordicTrack breached the implied warranty of merchantability because the Treadmills do not—and cannot—perform as promised or affirmed at the 2.6 CHP or higher representation of the Treadmill during household operation. Specifically, the Treadmills do not—and cannot—produce the power expected of a 2.6 CHP or higher treadmill during ordinary household use.

143.   Pursuant to 15 U.S.C. § 2310(e), Plaintiff is entitled to bring this class action and is not required to give NordicTrack notice and an opportunity to cure until such time

as the Court determines the representative capacity of Plaintiff pursuant to Rule 23 of the Federal Rules of Civil Procedure.

144.    As a direct and proximate result of NordicTrack's breach of the warranties regarding the CHP representations, Plaintiff, individually and on behalf of the Minnesota Class, has been damaged. In addition, under 15 U.S.C. § 2310(d)(2), Plaintiff and the Minnesota Class are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been incurred by Plaintiff and the Minnesota Class in connection with the commencement and prosecution of this action.

145.    Furthermore, Plaintiff and the Minnesota Class are also entitled to equitable relief under 15 U.S.C. § 2310(d) and damages as a result of NordicTrack's violation of its implied warranties.

**COUNT 6**
**Violation of Minnesota Uniform Deceptive Trade Practices Act;**
**Minn. Stat. § 325D.43-.48**
**(on behalf of the Minnesota Class)**

146.    Plaintiff restates and incorporates all other allegations in this Complaint.

147.    Plaintiff and the Minnesota Class bring this count as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

148.    The Minnesota Uniform Deceptive Trade Practices Act ("MUDTPA"), Minn. Stat. §§ 325D.43-.48, prohibits deceptive trade practices in a person's business, vocation, or occupation. *See* Minn. Stat. §§ 325D.44, subd. 1.

149.    Defendants advertised, offered, or sold goods or services in Minnesota and therefore engaged in business directly or indirectly affecting the people of Minnesota.

150.    By engaging in deceptive trade practices in the course of its business, directly or indirectly affecting the people of Minnesota, Defendants violated Minn. Stat. § 325D.44, including the following provisions:

  a.    Representing that its goods and services had characteristics, uses, qualities and benefits that they did not have, in violation of Minn. Stat. §325D.44, subd. 1(5);

  b.    Representing that goods and services are of a particular standard or quality when they are of another, in violation of Minn. Stat. §325D.44, subd. 1 (7); and

  c.    Engaging in other conduct which similarly creates a likelihood of confusion or misunderstanding, in violation of Minn. Stat. §325D.44, subd. 1, (13).

151.    Defendants' deceptive practices include:

  a.    Representing a rating for CHP that it knew could not be achieved in normal household use;

  b.    Highlighted this fictitious CHP rating as a means to distinguish otherwise similar products as a means to suggest the reasonability of an increased cost for the Treadmills purchased by Plaintiff and the Minnesota Class; and

      c.  Breaching the express and implied warranties related to the CHP

          Treadmills were capable of achieving in household use;

152.   Defendants' conduct caused substantial injury and provided no benefit to consumers.

153.   Defendants intended to mislead Plaintiff and Minnesota Class members and induce them to rely on its misrepresentations.

154.   Had Defendants disclosed to Plaintiff and the Minnesota Class that its Treadmills did not meet the ratings for CHP as advertised, Defendants would have been unable to justify the price differentiation and premium price charged to consumers.

155.   As a direct and proximate result of Defendants' deceptive trade practices, Plaintiff and the Minnesota Class have suffered and will continue to suffer monetary damages, in an amount to be determined at trial.

156.   Plaintiffs and the Minnesota Class are entitled to recover damages and other appropriate relief, as alleged.

**COUNT 7**
**Violation of Minnesota Consumer Fraud Act;**
**Minn. Stat. §325F.68-.70**
**(on behalf of the Minnesota Class)**

157.   Plaintiff restates and incorporates all other allegations in this Complaint.

158.   Plaintiff and the Minnesota Class bring this count as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

159.   Defendants' acts, practices, misrepresentations and omissions constitute fraud, false pretense, false promise, misrepresentation as well as deceptive sales practices

35

and dissemination of misleading information in violation of Minnesota Prevention of Consumer Fraud Statutes, Minn. Stat. § 325F.69, subd. 1

160.    Defendants engaged in such acts, deceptive practices, misleading statements, misrepresentations and omissions with the intent that Plaintiff and the Minnesota Class would rely on such misrepresentations and omissions in connection with the purchase of Treadmills.

161.    Plaintiff and the Minnesota Class are entitled to restitution and/or actual damages and/or equitable and injunctive relief, costs, and reasonable attorneys' fees pursuant to Minn. Stat. § 8.31, subd. 3a.

### **COUNT 8**
**Violation of Minnesota False Statement in Advertising Act;**
**Minn. Stat. § 325F.67**
**(on behalf of the Minnesota Class)**

162.    Plaintiff restates and incorporates all other allegations in this Complaint.

163.    Plaintiff and the Minnesota Class bring this count as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

164.    The Minnesota False Statement in Advertising Act, Minn. Stat. § 325F, prohibits any person or corporation who sells merchandise, directly or indirectly, to the public, for sale or distribution, from making or causing to be published, disseminating, circulating or placing before the public, in this state, in publication, notice, poster, bill, label, price tag, pamphlet or in any other way, any advertisement containing any material assertion, representation, or statement of fact which is untrue, deceptive or misleading. *See* Minn. Stat. §§ 325F.

165.   The Treadmills are merchandise under this statute, and Defendants have engaged in substantial advertisement in the state of Minnesota concerning the nature, capabilities and/or quality of the Treadmills related to their CHP capacity, and this advertisement contained untrue, deceptive and misleading representations as to the nature and quality of the Treadmills, specifically that the Treadmills can achieve and maintain a continuous horsepower that is impossible under the known intended household use.

166.   By committing the acts described more fully above, while continuing to advertise a false and deceptive representation of the Treadmills, Defendants have violated the Minnesota False Statement in Advertising Act.

167.   Plaintiff and the Minnesota Class have suffered injuries caused by Defendants' false advertising because they were induced to purchase a product that they would not otherwise have purchased; and because they paid a premium price for merchandise that was not of the quality or character advertised, due to Defendants' false and misleading statements, either express or implied, regarding the Treadmills' ability to achieve and maintain a CHP that is impossible under the known intended household use.

168.   In accordance with Minn. Stat. § 325F.67, and as authorized by Minn. Stat. § 8.31, subd. 3a, Plaintiff seeks an order, on behalf of herself and others similarly situated: (a) enjoining Defendants from continuing to represent the Treadmills as being capable of maintaining a CHP beyond that possible under household conditions, or in any way falsely advertising the horsepower output as more than would actually be expected through normal use and operation of the Treadmills;  and (b) awarding Plaintiff and the Minnesota Class damages and costs, including reasonable attorneys' fees.

## COUNT 9
### Violations of Minnesota Unlawful Trade Practices Act:
### Minn. Stat. §325.13
### (on behalf of a Minnesota Class)

169.    Plaintiff restates and incorporates all other allegations in this Complaint.

170.    Plaintiff and the Minnesota Class bring this count as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

171.    Defendants misrepresented the true quality of its Treadmills, while touting an inflated horsepower capability. Specifically, Defendants represent that their Treadmills are capable of providing an inflated CHP not actually available while in household use.

172.    Minnesota Unlawful Trade Practices Act (MUTPA) prohibits Defendant sellers from knowingly misrepresenting, either directly or indirectly, the true quality of merchandise.

173.    MUTPA allows for a private right of action to enjoin violation for any person damaged or who is threatened with loss, damage, or injury by reason of a violation of section 325D.13, and shall be entitled to sue for and have injunctive relieve…against any damage or threatened loss or injury by reason of a violation.

174.    In the course of business, Defendants willfully failed to disclose and actively concealed the true horsepower capabilities of the Treadmills discussed herein, and otherwise engaged in activities with a tendency or capacity to deceive.  Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission, in connection with the sale of the Treadmills.

175. Defendants knew their Treadmills did not produce the CHP represented to Plaintiff and Class Members.

176. By failing to disclose the true horsepower capabilities of the Treadmills, Defendants engaged in deceptive business practices in violation of the MUTPA.

177. Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff and Class Members, about the true horsepower capabilities of the Treadmills.

178. Defendants intentionally and knowingly misrepresented material facts regarding the Treadmills with intent to mislead Plaintiff and Class Members.

179. Defendants knew or should have known that its conduct violated the MUTPA.

180. Defendants owed Plaintiff and Class Members a duty to disclose the true horsepower capabilities of the Treadmills, because NordicTrack:

    a. Possessed exclusive knowledge that the Treadmills did not possess the represented horsepower capabilities;

    b. Intentionally concealed the foregoing from Plaintiff and Class Members; and

    c. Made incomplete and misleading representations about the Treadmills, while purposefully withholding material facts from Plaintiff and Class Members that contradicted these representations.

181. Plaintiff and Class Members suffered ascertainable loss caused by Defendants' misrepresentations and its concealment of and failure to disclose material

information.  Plaintiff and Class Members who purchased the Treadmills either would have paid less or would not have purchased the Treadmills at all but for Defendants' violations of MUTPA. All purchasers of the Treadmills have suffered ascertainable losses as a result of NordicTrack's deceptive and unfair acts and practices made in the course of Defendants' business.

182.    NordicTrack's continuous violations of MUTPA present a continuing risk to the general public.

183.    As a direct and proximate result of Defendants' violations of the MUTPA, Plaintiff and Class Members have suffered injury-in-fact and/or actual damages.

## COUNT 10
### Negligent Misrepresentation
### (on behalf of a Minnesota Class)

184.    Plaintiff restates and incorporates all other allegations in this Complaint.

185.    Plaintiff brings this claim on behalf of the Nationwide Class pursuant to Rule 23 of the Federal Rules of Civil Procedure.

186.    In the course of business, NordicTrack misrepresented that the Treadmills maintain a CHP output that they cannot accomplish while in household use. NordicTrack had a duty of care to disclose the truthful CHP capabilities rather than the misrepresented information.

187.    NordicTrack supplied the Plaintiff and Class members false and misleading information that a reasonable consumer would have used as guidance in evaluating the Treadmills' horsepower capabilities.

188.   At the time Defendants made these misrepresentations, Defendants knew or should have known that these CHP representations were false, misleading or made them without knowledge of their truth or falsity. Defendants have failed to exercise reasonable care or competence in communicating the CHP representations.

189.   NordicTrack negligently misrepresented and/or at a minimum, negligently omitted material facts concerning the Treadmill power representations, namely its true CHP capabilities while in operating use.

190.   The misrepresentations and omissions made by Defendants, upon which Plaintiff and Class members reasonably and justifiably relied, were intended to induce and actually induced Plaintiff and Class members to purchase or pay a premium price for the Treadmills.

191.   Plaintiff and Class members maintained an asymmetrical bargaining power which weighed heavily in favor of Defendants, who are large corporate entities and maintained exclusive control over the actual horsepower capabilities of the Treadmills.

192.   Plaintiff and Class members would not have purchased the Treadmills or would have paid considerably less, if the true facts concerning the CHP claims had been known.

193.   Defendants' deceitful actions have caused damage to Plaintiff and Class members, who are entitled to damages and other legal and equitable relief as a result of Defendants' misrepresentations.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, respectfully request that this Court:

1. Certify the proposed Class and Subclass and appoint Plaintiff and her legal counsel to represent the Class and Subclass;

2. Find in favor of Plaintiff, the Class, and the Subclass on all counts asserted herein;

3. Declare that Defendants' conduct violated the statutes referenced herein;

4. Award Damages, including compensatory, exemplary, and statutory to Plaintiff, the Class, and the Subclass in an amount to be determined at trial;

5. Grant restitution to Plaintiff, the Class and the Subclass and require Defendants to disgorge its ill-gotten gains;

6. Award Plaintiff, the Class and the Subclass punitive damages in an amount to be determined at trial;

7. Award Plaintiff, the Class and the Subclass reasonable attorneys' fees and the costs and disbursements of this suit incurred herein;

8. Enjoin Defendants from future misrepresentations regarding the horsepower of its Treadmills;

9. Award Plaintiff, the Class and the Subclass pre-judgment and post-judgment interest at the highest legal rate to the extent provided by law; and

10. Order any such other and further relief the Court deems just and equitable.

    Plaintiff demands a trial by jury of all issues so triable.

Respectfully submitted,

November 22, 2019

*/s/  Bryan L. Bleichner*
Karl L. Cambronne (MN 0014321)
Bryan L. Bleichner (MN 0326689)
CHESTNUT CAMBRONNE, PA
17 Washington Ave. N., Suite 300
Minneapolis, MN 55401
Telephone: (612) 339-7300
Fax: (612) 336-2940
*kcambronne@chestnutcambronne.com*
*bbleichner@chestnutcambronne.com*

Nathan D. Prosser (MN 0329745)
HELLMUTH & JOHNSON, PLLC
8050 West 78th Street
Edina. MN 55439
Telephone: (952) 941-4005
Fax: (952) 941-2337
*nprosser@hjlawfirm.com*

W.B. Markovits (*pro hac vice forthcoming*)
Terence R. Coates (*pro hac vice forthcoming*)
Justin C. Walker (*pro hac vice forthcoming*)
MARKOVITS, STOCK & DEMARCO, LLC
3825 Edwards Road, Suite 650
Cincinnati, OH 45209
Phone: (513) 651-3700
Fax: (513) 665-0219
*bmarkovits@msdlegal.com*
*tcoates@msdlegal.com*
*jwalker@msdlegal.com*

*Counsel for Plaintiff, the Class, and the Subclass*