IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| TEEDA BARCLAY, ERIN OVSAK, NICOLE NORDICK, and LARRY SCHWARTZ, individually, and on behalf of others similarly situated, | Case No. 0:19-cv-02970-ECT-DTS |
| Plaintiffs, | **DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL ARBITRATION** |
| v. | |
| ICON HEALTH & FITNESS, INC., and NORDICTRACK, INC., | |
| Defendants. | |

# TABLE OF CONTENTS

TABLE OF CONTENTS................................................................................ii

TABLE OF AUTHORITIES.........................................................................iii

INTRODUCTION .........................................................................................1

STATEMENT OF FACTS .............................................................................2

A.   ICON sells treadmills and provides fitness-support technology throughout the United States. ......................................................... 2

B.   The NordicTrack Terms and iFit Terms permit ICON to arbitrate disputes on an individual, non-class basis. ...................................... 3

C.   The NordicTrack and iFit Terms are readily available and presented to users................................................................................................. 4

D.   Plaintiffs agreed to arbitrate their disputes with ICON when they visited NordicTrack.com, became iFit members, or both.............. 6

E.   Plaintiffs refuse to submit their disputes to arbitration.................. 7

ARGUMENT ................................................................................................ 7

I.   Each Plaintiff agreed to arbitrate disputes with ICON. ................... 9

   A.   Barclay and Nordick agreed to arbitrate their disputes when they signed up for iFit memberships ...................................... 11

   B.   Ovsak is bound by the 2018 iFit Terms because a member of her household agreed to the 2016 iFit Terms, which included a modification clause............................................................... 14

   C.   Schwartz had constructive notice of, and agreed to, the 2018 NordicTrack Terms when he purchased his treadmill from NordicTrack.com. ................................................................ 16

II.   Alternatively, if there are factual disputes as to whether the Plaintiffs agreed to arbitrate their disputes with ICON, these disputes must be resolved through discovery and a summary trial. ........................... 19

III.   Any remaining issues regarding arbitration should be resolved by an arbitrator, not the court. ................................................................ 21

CONCLUSION............................................................................................24

# TABLE OF AUTHORITIES

**Cases**                                                                **Page(s)**

*Allied-Bruce Terminix Cos. v. Dobson*,
    513 U.S. 265 (1995) ...............................................................................7

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011)..........................................................................8, 16

*Barkl v. Career Educ. Corp.*,
    No. 10-3565, 2010 WL 4979231 (D. Minn. Dec. 2, 2010) .........................23

*Baugh v. Allied Professionals Ins. Co., A Risk Retention Grp.*,
    No. 18-74, 2019 WL 1358855 (D. Utah Mar. 26, 2019) .....................23, 24

*Brady v. Park*,
    302 P.3d 1220 (Utah Ct. App. 2013) .......................................................23

*Bybee v. Abdulla*,
    189 P.3d 40 (Utah 2008)..................................................................14, 15

*Cea v. Hoffman*,
    276 P.3d 1178 (Utah Ct. App. 2012) .......................................................10

*Cedar Surgery Ctr., LLC v. Bonelli*,
    96 P.3d 911 (Utah 2004).........................................................................10

*City of Benkelman, Neb. v. Baseline Eng'g Corp.*,
    867 F.3d 875 (8th Cir. 2017) ....................................................................8

*Commercial Union Assocs. v. Clayton*,
    863 P.2d 29 (Utah Ct. App. 1993) ...........................................................17

*Conrad v. Phone Directories Co.*,
    585 F.3d 1376 (10th Cir. 2009) .................................................................2

*Crawford Prof'l Drugs, Inc. v. CVS Caremark Corp.*,
    748 F.3d 249 (5th Cir. 2014) ...................................................................23

*Crawford v. Beachbody, LLC*,
    No. 14-1583, 2014 WL6606563 (S.D. Cal. Nov. 5, 2014) ..........................18

*Ellsworth v. Am. Arbitration Ass'n,*
  148 P.3d 983 (Utah 2006) ..................................................................... 15

*Engen v. Grocery Delivery E-Servs. USA Inc.,*
  No. 19-cv-2433, 2020 WL 1816043 (D. Minn. Apr. 10, 2020) .................................16

*Epic Sys. Corp. v. Lewis,*
  138 S. Ct. 1612 (2018) ........................................................................19

*Fallo v. High-Tech Inst.,*
  559 F.3d 874 (8th Cir. 2009) ...........................................................22, 23

*Gannon v. Circuit City Stores, Inc.,*
  262 F.3d 677 (8th Cir. 2001) ..................................................................... 9

*Green Tree Fin. Corp.-Alabama v. Randolph,*
  531 U.S. 79 (2000) ............................................................................... 8

*Hancock v. Am. Tel. & Tel. Co., Inc.,*
  701 F.3d 1248 (10th Cir. 2012).................................................................11

*Henry Schein, Inc. v. Archer & White Sales, Inc.,*
  139 S. Ct. 524 (2019) ......................................................................... 24

*Hubbert v. Dell Corp.,*
  835 N.E.2d 113 (Ill. Ct. App. 2005)...........................................................18

*Levin v. Alms & Assocs., Inc.,*
  634 F.3d 260 (4th Cir. 2011) ................................................................14

*Med. Staff of Avera Marshall Regional Med. Ctr.,* 857 N.W.2d 695
  (Minn. 2014)...................................................................................... 9

*MedCam Inc. v. MCNC,*
  414 F.3d 972 (8th Cir. 2005) ................................................................... 9

*Meyer v. Uber Techs., Inc.,*
  868 F.3d 66 (2d Cir. 2017) ....................................................12, 13, 17, 18

*Modol v. Dan Nelson Auto. Grp.,*
  372 F.3d 997 (8th Cir. 2004) ................................................................... 9

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,*
  460 U.S. 1 (1983)...........................................................................8, 21

*Nanosolutions, LLC v. Prajza,*
　　793 F. Supp. 2d 46 (D.D.C. 2011) ............................................................... 14

*Nebraska Machinery Co. v. Cargotec Solutions, LLC,*
　　762 F.3d 737 (8th Cir. 2014) ..................................................................... 24

*Nicosia v. Amazon.com, Inc.,*
　　384 F. Supp. 3d 254 (E.D.N.Y. 2019) .................................................. 12, 15

*Nodak Mut. Ins. Co. v. Am. Family Mut. Ins. Co.,*
　　604 N.W.2d 91 (Minn. 2000) .......................................................................... 9

*Palmer v. Davis,*
　　808 P.2d 128 (Utah 1991) ............................................................................ 14

*PDC Labs., Inc. v. Hach Co.,*
　　No. 09-1110, 2009 WL 2605270 (C.D. Ill. Aug. 25, 2009) .......................... 18

*Register.com, Inc. v. Verio, Inc.,*
　　356 F.3d 393 (2d Cir. 2004) ........................................................................ 21

*Rent-A-Ctr., W., Inc. v. Jackson,*
　　561 U.S. 63 (2010) .......................................................................................... 8

*Sadler v. Green Tree Servicing, LLC,*
　　466 F.3d 623 (8th Cir. 2006) ..................................................................... 24

*Specht v. Netscape Commc'ns Corp.,*
　　306 F.3d 17 (2d Cir. 2002) ................................................................... 19, 20

*Swift v. Zynga Game Network, Inc.,*
　　805 F. Supp. 2d 904 (N.D. Cal. 2011) ........................................................ 13

*Ticketmaster LLC v. RMG Techs., Inc.,*
　　507 F. Supp. 2d 1096 (C.D. Cal.2007) ...................................................... 18

*Traylor v. I.C. System, Inc.,*
　　No. 11-2968, 2012 WL 1883814 (D. Minn. May 22, 2012) ....................... 20

*Troia v. Tinder, Inc.,*
　　No. 19-cv-1647, 2020 WL 619855 (E.D. Mo. Feb. 10, 2020),
　　*appeal filed* (8th Cir. Feb. 20, 2020) ......................................................... 12

*Wells Fargo Ins. Servs. USA, Inc. v. Kyle King & Sherman Ins. Agency, Inc.*, No. 15-4378, 2016 WL 6892108 (D. Minn. July 29, 2016) ............................... 21

*Youngs v. Am. Nutrition, Inc.*, 537 F.3d 1135 (10th Cir. 2008) ................................................................................10

**Statutes**

9 U. S. C. § 2 ........................................................................................ 7, 8, 15

9 U. S. C. § 3 ................................................................................................ 1, 24

9 U. S. C. § 4 ......................................................................................... 1, 8, 20, 24

**Other Authorities**

Consumer Arbitration Rules, Am. Arbitration Ass'n, Rule 14(a) (Sept. 1, 2014) ........................................................................................ 22

Fed. R. Civ. P. 12 ........................................................................................ 1, 2

Fed. R. Civ. P. 56 ............................................................................................ 8

Mark A. Lemley, *Terms of Use*, 91 Minn. L. Rev. 459 (2006) ..................................... 12

# INTRODUCTION

On behalf of themselves and a putative nationwide class of consumers, Plaintiffs Teeda Barclay, Erin Ovsak, Nicole Nordick, and Larry Schwartz (collectively, "Plaintiffs") assert 16 claims against Defendants ICON Health & Fitness, Inc. and NordicTrack, Inc. (collectively, "ICON"), arising out of their purchases of NordicTrack-brand treadmills. Plaintiffs' complaint is jurisdictionally defective, and their claims are without merit. But even more fundamentally, Plaintiffs' claims do not belong before this Court, or any court for that matter. Plaintiffs' claims belong in arbitration.

Each Plaintiff agreed to arbitrate their claims against ICON at least once—Schwartz, when he purchased his treadmill from NordicTrack.com, and Barclay, Ovsak, and Nordick when they (or, in Ovsak's case, a household member) signed up for iFit fitness memberships. If that is not enough (and it should be), then the Court should allow immediate and targeted discovery concerning whether Plaintiffs agreed to be bound by one or more sets of arbitration agreements, while staying the balance of this lawsuit.

In light of their agreements to arbitrate, the Court should not reach the merits of Plaintiffs' claims.[1] Rather, the Court should enforce the arbitration

---

[1] Contemporaneously with this motion, ICON has moved to dismiss Plaintiffs' claims under Rule 12(b)(1), (b)(2), (b)(6) and (f). ICON's motion to compel arbitration is brought under the Federal Arbitration Act, 9 U.S.C. §§ 3, 4, and is

agreements by staying this action and compelling arbitration under the Federal

Arbitration Act ("FAA").

## STATEMENT OF FACTS

**A.     ICON sells treadmills and provides fitness-support technology throughout the United States.**

ICON is a leading manufacturer of exercise equipment, including in-home

treadmills. *See* Second Amended Complaint ("SAC") ¶ 28; Declaration of Tracy

Cox ¶ 3 (hereinafter "Cox Decl."). ICON markets and sells treadmills under the

NordicTrack brand. Cox Decl. ¶ 4.

---

accordingly "expressly not a motion made under Rule 12." *Conrad v. Phone Directories Co.*, 585 F.3d 1376, 1383 n.2 (10th Cir. 2009).

With one exception, the Court should fully resolve ICON's motion to compel arbitration *before* reaching ICON's motion to dismiss. That one exception is that the Court must, as a threshold matter, determine whether it may exercise personal jurisdiction over the claims brought by Schwartz against ICON. If the Court concludes (as it should) that it lacks personal jurisdiction over Schwartz's claims, then the Court should dismiss those claims for lack of personal jurisdiction without addressing whether Schwartz should be compelled to arbitrate. But if the Court concludes that it may exercise jurisdiction over Schwartz's claims, then, as this motion demonstrates, the Court should compel Schwartz to arbitrate those claims, just as it should compel every other Plaintiff to do.

ICON filed its motion to dismiss simultaneously with its motion to compel arbitration so as not to risk waiving a personal-jurisdiction defense with respect to Schwartz's claims. And Rule 12 is clear that "a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2). So along with its personal-jurisdiction defense, ICON had to raise its other Rule 12 defenses. The Court need not, and should not, reach any arguments contained in ICON's motion to dismiss until ICON's motion to compel arbitration has been fully resolved.

In addition to selling NordicTrack-brand treadmills, ICON also operates and sells iFit memberships. iFit connects individuals with fitness coaches, whether through wrist wearables, smart-device applications, or touchscreens on workout equipment. Declaration of Chase Brammer ¶ 3 (hereinafter "Brammer Decl."). Many individuals that purchase NordicTrack treadmills also register for iFit memberships, so that they can access iFit's training-support technology during their treadmill exercises. Brammer Decl. ¶ 4.

## B.   The NordicTrack Terms and iFit Terms permit ICON to arbitrate disputes on an individual, non-class basis.

Since the fall of 2018—before Barclay, Nordick, and Schwartz purchased their treadmills—the Terms of Use that govern access of both NordicTrack.com and iFit.com (individually and respectively, "NordicTrack Terms" and "iFit Terms," and collectively, "Terms") have included arbitration agreements and class action waivers. The identical arbitration agreements provide:

> You acknowledge and agree that ICON may, at its sole discretion, require you to submit any disputes arising from the use of these Terms of Use or the ICON Sites, including disputes arising from or concerning their interpretation, violation, invalidity, non-performance, or termination, to final and binding arbitration under the Rules of Arbitration of the American Arbitration Association applying Utah law.

Brammer Decl. Ex. 6 at 10; Cox Decl. Ex. 3 at 6; *see also* Brammer Decl. ¶ 12. The Terms also provide that users "acknowledge and agree that you may only resolve disputes with us on an individual basis"—not "as a plaintiff or a class member in a

class, consolidated, or representative action." Brammer Decl. Ex. 6 at 10; Cox Decl. Ex. 3 at 6. The class-action waiver specifies that "[c]lass arbitrations . . . are not allowed." Brammer Decl. Ex. 6 at 10; Cox Decl. Ex. 3 at 6.

Although the iFit Terms that were in effect as of February 2016 (when Ovsak purchased her treadmill) did not include an arbitration agreement, they did include a modification clause, which enabled ICON to revise the iFit Terms. Brammer Decl. Ex. 4 at 1-2. And ICON has indeed revised the iFit Terms, both before and after the 2018 revision, which added the arbitration agreement. *See id.* Exs. 5, 7, 8.

**C.     The NordicTrack and iFit Terms are readily available and presented to users.**

Both the NordicTrack and iFit Terms are made available to, and presented to, users online.

On NordicTrack.com, there is a link that reads "Terms of Use" that is visible at the bottom of each NordicTrack.com webpage. Cox Decl. ¶ 5; *see also id.* Ex. 1 at 5. Additionally, since July 23, 2019, the NordicTrack Terms have also been presented at purchase checkout, via a hyperlink in blue font that says "View Terms & Privacy." *Id.* ¶ 6; *id.* Ex. 2. This hyperlink appears below a box that can be checked indicating that product purchasers would "like delivery updates via text." *Id.* ¶ 6; *id.* Ex. 2. The hyperlink takes users directly to the NordicTrack Terms.

*Id.* ¶ 6. Individuals may take as long as they like to review the NordicTrack Terms before purchasing a treadmill from NordicTrack.com. *Id.* ¶ 8.

The iFit Terms are similarly available online. Even before Ovsak purchased a NordicTrack treadmill in 2016, users signing up for iFit memberships on iFit.com have been required to agree to the iFit Terms of Use. As a part of the sign-up process, users are asked to check the box next to the words "I confirm that I have read and agree to iFit's Terms of Use and Privacy Policy." Brammer Decl. ¶ 7; *id.* Ex. 2. The phrase "Terms of Use" appears in a different font and hyperlinks directly to the iFit Terms. *Id.* ¶ 7; *id.* Ex. 2.

iFit users can alternatively sign up for iFit memberships through the iFit mobile application (or "app"). Since before 2016, users signing up for iFit memberships via the iFit app have been required to click a box that says "CREATE ACCOUNT." Brammer Decl. ¶ 8; *id.* Ex. 3. Directly below that box is a statement that reads "By clicking next, you agree to the **Terms of Use** and **Privacy Policy**." *Id.* ¶ 8; *id.* Ex. 3. The phrase "Terms of Use" is bolded and underlined, and hyperlinks directly to the iFit terms available on iFit.com. *Id.* ¶ 8. Similar to the NordicTrack Terms, iFit users may take as long as they like to review the iFit Terms before signing up for iFit memberships. *Id.* ¶ 18.

**D.     Plaintiffs agreed to arbitrate their disputes with ICON when they visited NordicTrack.com, became iFit members, or both.**

Through one transaction or another, all four Plaintiffs agreed to arbitrate their disputes with ICON. Each Plaintiff visited NordicTrack.com. Nordick, Ovsak and Schwartz purchased their treadmills from NordicTrack.com. And Nordick, Barclay, and a member of Ovsak's household signed up for iFit memberships.

*Barclay*: Barclay (like every other Plaintiff) alleges that ICON made misrepresentations on NordicTrack.com. *See* SAC ¶ 4. And while Barclay (like every other Plaintiff) does not allege what *specific* website representations she viewed, she allegedly "reviewed NordicTrack's website" before purchasing her NordicTrack treadmill from Amazon.com on or about June 3, 2019. *See id.* ¶¶ 16-17. Barclay signed up for an iFit membership shortly thereafter, on June 18, 2019. Brammer Decl. ¶ 17.

*Nordick*: Nordick allegedly purchased an ICON treadmill directly from NordicTrack.com on or about January 22, 2019. SAC ¶ 22. Like Barclay, she allegedly "reviewed NordicTrack's website" before doing so. *Id.* ¶ 23. Nordick signed up for an iFit membership on March 4, 2019. Brammer Decl. ¶ 16.

*Ovsak*: Ovsak allegedly purchased a treadmill directly from NordicTrack.com on or about February 13, 2016. SAC ¶ 19. She too allegedly "reviewed NordicTrack's website" before doing so. *Id.* ¶ 20. On March 25, 2016, an individual that self-identified as Jay Ovsak, and lived at the address to which

6

Ovsak's treadmill was shipped, signed up for an iFit membership. Brammer Decl. ¶ 15.

*Schwartz*: Schwartz allegedly purchased a treadmill directly from NordicTrack.com on or about November 19, 2019. SAC ¶ 25. He too allegedly "reviewed NordicTrack's website" before doing so. *Id.* ¶ 26. Schwartz declined delivery of his treadmill and does not allege that he has received or used an ICON treadmill. *See Id.* ¶ 25.

## E.    Plaintiffs refuse to submit their disputes to arbitration.

ICON exercised its right under the Terms to resolve this dispute via binding, individual arbitration by requesting that Plaintiffs withdraw and dismiss their Second Amended Complaint and submit their claims to individual arbitration. *See generally* Defendants' Meet and Confer Statement. Plaintiffs did not agree to submit their claims to arbitration. *Id.*

## ARGUMENT

Congress enacted the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, which applies to the Terms,[2] "to reverse the longstanding judicial hostility to arbitration

---

[2] The FAA governs the construction and applicability of the Terms' arbitration agreements, because the Terms are "contract[s] evidencing a transaction involving commerce." 9 U.S.C. § 2; *see also Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273-74 (1995) (explaining that in 9 U.S.C. § 2, "the word 'involving' is broad and is indeed the functional equivalent of 'affecting'"); SAC ¶ 28 ("ICON is in the business of developing, marketing and selling exercise equipment throughout North America in interstate commerce . . . .").

agreements." *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 89 (2000) (quotation marks omitted). The FAA's "primary substantive provision," Section 2, provides that arbitration agreements to which the Act applies "'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting 9 U.S.C. § 2). Section 2 reflects "both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract." *Id.* (quotation marks and internal citation omitted).

The FAA "also establishes procedures by which federal courts implement § 2's substantive rule." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010). Section 3 "requires courts to stay litigation of arbitral claims pending arbitration of those claims," and Section 4 "requires courts to compel arbitration in accordance with the terms of the agreement" to arbitrate. *Concepcion*, 563 U.S. at 344 (quotation marks omitted). Motions to compel arbitration are analyzed under Federal Rule of Civil Procedure 56 when they involve consideration of evidence beyond the pleadings. *City of Benkelman, Neb. v. Baseline Eng'g Corp.*, 867 F.3d 875, 882 (8th Cir. 2017). If there is an "issue"—a disputed issue of material fact under Rule 56—regarding whether an agreement to arbitrate exists, "the court shall summarily proceed to [] trial" on the issue of arbitration. 9 U.S.C. § 4; *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,

8

460 U.S. 1, 29 (1983) (explaining that the FAA "calls for a summary and speedy disposition of motions . . . to enforce arbitration clauses"); *Modol v. Dan Nelson Auto. Grp.*, 372 F.3d 997, 999-1000 (8th Cir. 2004) (noting that the district court ordered discovery and the receipt of further evidence regarding the issue of arbitration).

This case must proceed, if at all, in arbitration.

## I.    Each Plaintiff agreed to arbitrate disputes with ICON.

When considering a motion to compel arbitration, the Court must first determine whether there is an agreement to arbitrate. *MedCam Inc. v. MCNC*, 414 F.3d 972, 974 (8th Cir. 2005). The Court looks to state law for this analysis. *Gannon v. Circuit City Stores, Inc.*, 262 F.3d 677, 680 (8th Cir. 2001). The Terms identify Utah law as governing their application and interpretation.[3] *See, e.g.*, Brammer Decl. Ex. 6 at 10; Cox Decl. Ex. 3 at 6. Utah law, like federal law,

---

[3] This Court need not engage in a choice-of-law analysis, because there is no conflict of law here. *See Nodak Mut. Ins. Co. v. Am. Family Mut. Ins. Co.*, 604 N.W.2d 91, 93-94 (Minn. 2000) ("Before a choice-of-law analysis can be applied, a court must determine that a conflict exists between the laws of two forums." (footnote omitted)). The elements of contract formation are foundational common-law principles widely adopted in the United States. In other words, on this limited issue, there is no conflict of law—Utah law regarding contract formation is consistent with Minnesota law, and the law of other states across the United States. *See Med. Staff of Avera Marshall Regional Med. Ctr.*, 857 N.W.2d 695, 701 (Minn. 2014) ("A contract is formed when two or more parties exchange bargained-for promises, manifest mutual assent to the exchange, and support their promises with consideration." (citing Restatement (Second) of Contracts § 17 (1981))).

recognizes and reflects "the important public policy behind enforcing arbitration agreements as an approved, practical, and inexpensive means of settling disputes and easing court congestion." *Cedar Surgery Ctr., LLC v. Bonelli,* 96 P.3d 911, 914 (Utah 2004) (quotation marks omitted); *see also* Utah Code § 78B-11-101 *et seq.*[4]

Generally, contract formation requires "an offer, an acceptance, and consideration." *Cea v. Hoffman*, 276 P.3d 1178, 1185 (Utah Ct. App. 2012). An offer is a "manifestation of willingness to enter into a bargain," and must include "definite and unambiguous" terms. *Id.* (quotation marks omitted). Acceptance results from the "manifestation of assent to an offer, such that an objective reasonable person is justified in understanding that a fully enforceable contract has been made." *Id.* (quotation marks omitted). And consideration exists "whenever a promisor receives a benefit or where [a] promisee suffers a detriment, however slight." *Id.* at 1186 (alteration in original) (quotation marks omitted).

Neither the clarity of the offer (the Terms) nor the adequacy of consideration should be in dispute. Rather, the only real question is whether Plaintiffs assented to the Terms. The answer to that question is yes. Plaintiffs

---

[4] Indeed, given the "nearly identical" provisions of the FAA and the Utah Uniform Arbitration Act, "the Utah Supreme Court looks to federal caselaw for guidance" for questions regarding arbitration. *Youngs v. Am. Nutrition, Inc.*, 537 F.3d 1135, 1140 (10th Cir. 2008) (quotation marks omitted).

agreed to arbitrate disputes with ICON on an individual, non-class basis through a combination of not one, but two, arbitration agreements.

> **A.  Barclay and Nordick agreed to arbitrate their disputes when they signed up for iFit memberships.**

iFit users can create memberships on iFit.com and via the iFit mobile application. Brammer Decl. ¶¶ 7-8. Whether they signed up through the website or the mobile application, Barclay and Nordick unambiguously manifested their assent to be bound by the iFit Terms when they became iFit members. *Id*. ¶¶ 16-17.

The iFit Terms available on iFit.com are referred to as "clickwrap" agreements, which is a commonly used phrase "for agreements requiring a computer user to consent to any terms or conditions by clicking a dialog box on the screen in order to proceed with [a] . . . transaction." *Hancock v. Am. Tel. & Tel. Co., Inc.*, 701 F.3d 1248, 1255 (10th Cir. 2012) (alterations in original) (quotation marks omitted). When Barclay and Nordick, respectively, signed-up for iFit memberships on iFit.com, they were required to acknowledge that they read and agreed to the iFit Terms of Use by checking, or "clicking," the box next to the words "I confirm that I have read and agree to iFit's Terms of Use and Privacy Policy." Brammer Decl. ¶ 7; *id.* Ex. 2. Those iFit Terms included arbitration agreements and class-action waivers. *Id.* Ex. 6 at 10 (2018 iFit Terms in effect for Nordick's purchase); *id.* Ex. 7 at 9-10 (January 2019 iFit Terms in effect for Barclay's purchase). Appellate and district courts "routinely uphold [such a] clickwrap

agreement[] for the principal reason that the user has affirmatively assented to the terms of agreement by clicking 'I agree.'" *Meyer v. Uber Techs., Inc*., 868 F.3d 66, 75 (2d Cir. 2017); *see also* Mark A. Lemley, *Terms of Use*, 91 Minn. L. Rev. 459, 466 (2006) ("Because the user has 'signed' the contract by clicking 'I agree,' every court to consider the issue has held clickwrap licenses enforceable." (footnote omitted)).

The result would be the same if Barclay or Nordick signed up via the iFit mobile app. iFit users that sign-up via the app engage in a hybrid, click-based agreement (sometimes referred to as a "sign-up wrap" agreement). *See, e.g., Troia v. Tinder, Inc.,* No. 19-cv-1647, 2020 WL 619855, at *3 & n.2 (E.D. Mo. Feb. 10, 2020), *appeal filed* (8th Cir. Feb. 20, 2020) (discussing hybrid wrap agreements). Under a button that says "CREATE ACCOUNT" is the notification that "By clicking next, you agree to the Terms of Use and Privacy Policy," with a hyperlink to the Terms of Use. Brammer Decl. ¶ 8; *id.* Ex. 3. Courts routinely conclude that users have constructive notice and agree to sign-up wrap agreements presented in a manner similar to the iFit Terms' presentation on the app. *See, e.g., Nicosia v. Amazon.com, Inc*., 384 F. Supp. 3d 254, 269 (E.D.N.Y. 2019) (having "no difficulty finding" that party was bound by terms similarly presented as part of sign-up process).[5]

---

[5] *See also, e.g., Meyer*, 868 F.3d at 78-80 (concluding that similar app sign-up satisfied notice and assent requirements); *Swift v. Zynga Game Network, Inc*.,

Consistent with this great weight of authority, the Court should conclude that Nordick and Barclay agreed to, respectively, the 2018 iFit Terms and the January 2019 iFit Terms, both of which include an arbitration provision and class-action waiver. Both Barclay and Nordick unambiguously assented to the 2018 and 2019 iFit Terms when they checked the box next to the words "I confirm that I have read and agree to iFit's Terms of Use" on iFit.com or, alternatively, clicked "CREATE ACCOUNT" on the iFit app.

Because Barclay and Ovsak agreed to the iFit Terms—which included an agreement to submit "any disputes" regarding, among other things, their use of ICON's websites to arbitration—they should be compelled to arbitrate.[6]

---

805 F. Supp. 2d 904, 911 (N.D. Cal. 2011) ("Plaintiff admits that she was required to and did click on an 'Accept' button directly above a statement that clicking on the button served as assent to the . . . terms of service along with a blue hyperlink directly to the terms of service.").

[6] As discussed in Section III, *infra*, the parties have agreed that an arbitrator should be the one to determine whether Plaintiffs' claims fall within the scope of the arbitration agreements and whether the iFit and NordicTrack Terms are enforceable. Thus, to the extent that Plaintiffs contend that their claims are beyond the scope of their arbitration agreements via iFit, that's an argument that must be raised in arbitration. Notably, however, this argument is also misguided. Courts routinely conclude that "broad" arbitration agreements, like those in the iFit Terms, apply retroactively to claims that accrued before the arbitration agreement was in effect. *See, e.g., Levin v. Alms & Assocs., Inc.*, 634 F.3d 260, 267 (4th Cir. 2011) ("[C]ourts have generally applied broad 'any dispute' language retroactively . . . ."); *Nanosolutions, LLC v. Prajza*, 793 F. Supp. 2d 46, 60 (D.D.C. 2011) (observing that "[s]everal circuits have held that a broad arbitration clause may encompass claims between the parties that arise out of their ongoing relationship, even if those claims predate the agreement" and collecting cases).

**B.    Ovsak is bound by the 2018 iFit Terms because a member of her household agreed to the 2015 iFit Terms, which included a modification clause.**

Ovsak similarly must arbitrate her claims under the iFit Terms. She is bound by Jay Ovsak's acceptance of the 2015 iFit Terms. And both Ovsak and Jay Ovsak are bound by the revised terms and arbitration agreement, by virtue of the 2015 iFit Terms' modification clause.

Ovsak is a direct beneficiary of Jay Ovsak's iFit membership and agreement. Courts may "invoke the doctrine of estoppel to compel a third-party beneficiary of a contract to arbitrate a claim [s]he seeks to pursue that arises from the contract containing the arbitration clause." *Bybee v. Abdulla*, 189 P.3d 40, 50 (Utah 2008); *see also Palmer v. Davis*, 808 P.2d 128, 131 (Utah 1991) (explaining that "third-party beneficiaries are determined by the intentions of the parties to the subject contract" (quotation marks omitted)). Here, as the purchaser and user of an ICON treadmill equipped with iFit technology (that is used in her household), Ovsak "*directly* benefit[s]" from Jay Ovsak's agreement to the iFit Terms. *See Bybee*, 189 P.3d at 50 (concluding that non-patient was not a "direct beneficiary of a contract between a physician and the patient").

It would be inequitable to permit Ovsak to benefit from Jay Ovsak's iFit membership (and to indeed sue ICON based on alleged breach-of-warranties) while at the same time "repudiating an arbitration clause [she] perceives to be disadvantageous." *See id.*; *see also Nicosia*, 384 F. Supp. 3d at 271-72 (explaining

that password sharing "cannot be used as a back door to undermine the contractual landscape governing internet commerce" and concluding that plaintiff was equitably estopped from avoiding arbitration). Thus, under these well-established contract-law principles, Ovsak is bound by the iFit Terms to which Jay Ovsak, a member of her household, has agreed.[7]

Further, because of the modification clause in the 2015 iFit Terms, both Ovsak and Jay Ovsak are bound by the arbitration clause that ICON added to the iFit Terms beginning in 2018. The modification clause in the 2015 iFit Terms to which Jay Ovsak agreed provided ICON with the right "to change these Terms of Use from time to time without notice," and directed users to "review this site and these Terms of Use from time to time and to familiarize yourself with any modifications." Brammer Decl. Ex. 4 at 1-2. ICON exercised that contractual right by modifying the iFit Terms in 2016 and then again in 2018, at which time ICON

---

[7] Ovsak may also have created her own individual iFit account, used her household member's email address to create the "Jay Ovsak" account, or even directed Jay Ovsak to create an iFit account on behalf of her and the household (without actually paying for a household membership), any of which would similarly result in Ovsak being bound by the iFit Terms. *See Ellsworth v. Am. Arbitration Ass'n*, 148 P.3d 983, 990 (Utah 2006) (observing that, with some "additional fact or circumstance," there may be evidence that "a person acts as the agent of his or her spouse"); *see also Nicosia*, 384 F. Supp. 3d at 269 (concluding that spouse acted as agent in signing up for Amazon service). Thus, as explained below, *see* Section II, *infra*, even if the Court declines to find, on this record, that Ovsak is bound by Jay Ovsak's iFit membership, the Court should at a minimum permit limited discovery on the issue of whether Ovsak is otherwise bound by the iFit Terms by virtue of her conduct.

added an arbitration agreement and class-action waiver. *Id.* ¶ 10 (listing revision publication dates); *id.* Ex. 6 at 10; *see also id.* Ex. 7 at 9-10 (maintaining arbitration agreement and class-action waiver); *id.* Ex. 8 at 11 (maintaining arbitration agreement and class action waiver).

When, as is the case here, a party exercises its contractual right to modify a contract, the other party to the contract is bound by the revised contract. *Engen v. Grocery Delivery E-Servs. USA Inc.*, No. 19-cv-2433, 2020 WL 1816043, at *5 (D. Minn. Apr. 10, 2020) (Tostrud, J.) (stating that there is nothing "inherently wrong with a unilateral modification clause," applying New York law); *see also, e.g., Concepcion*, 563 U.S. at 336 (observing that the "agreement authorized AT & T to make unilateral amendments, which it did to the arbitration provision on several occasions"). Ovsak accordingly is bound by the 2018 iFit Terms and arbitration agreements.

### C. Schwartz had constructive notice of, and agreed to, the 2018 NordicTrack Terms when he purchased his treadmill from NordicTrack.com.

Finally, Schwartz too agreed to arbitration with ICON, although he did so by agreeing to the NordicTrack Terms, which were presented as part of the check-out process at the time of his treadmill purchase. A web user is bound by online terms when the "user has actual or constructive knowledge of a website's terms and conditions," even if "no affirmative action is required by the website user to agree to the terms of a contract other than his or her use of the website." *Meyer*, 868

16

F.3d at 75 (quotation marks omitted); *see also Commercial Union Assocs. v. Clayton*, 863 P.2d 29, 34 (Utah Ct. App. 1993) ("It is a fundamental contract law that the parties may become bound by the terms of a contract even though they did not sign the contract . . . ." (quotation marks omitted)). Courts may determine on a motion to compel arbitration "that an agreement to arbitrate exists where the notice of the arbitration provision was reasonably conspicuous and manifestation of assent unambiguous as a matter of law." *Meyer*, 868 F.3d at 76.

Schwartz allegedly purchased a treadmill online through NordicTrack.com on or about November 19, 2019. SAC ¶ 25. At that time, the phrase "View Terms & Privacy" appeared on the NordicTrack.com checkout page and hyperlinked directly to the NordicTrack Terms. Cox. Decl. ¶ 6; *id.* Ex. 2. The hyperlinked language appeared in a different font and color. Cox Decl. ¶ 6; *id.* Ex. 2. Schwartz was placed on inquiry notice of the Terms "by virtue of the hyperlink to the Terms" on the checkout page, and manifested assent by clicking "Continue" and purchasing the treadmill. *See Meyer*, 868 F.3d at 77; *see also Ticketmaster LLC v. RMG Techs., Inc.*, 507 F. Supp. 2d 1096, 1107 (C.D. Cal.2007) (concluding that any person viewing ticketmaster.com was "put on notice of the Terms of Use").

The NordicTrack Terms' presentation during the checkout process makes this case far more analogous to those in which courts have enforced web-based agreements than those in which courts have not. The checkout page is

17

"uncluttered," the "entire screen is visible at once," and the hyperlink to the Terms appears in "blue and underlined" font. *See Meyer*, 868 F.3d at 78. Courts routinely conclude that website users have constructive notice of terms that apply to online product purchases, when those terms are similarly presented as part of the checkout process. *See e.g.*, *Hubbert v. Dell Corp.*, 835 N.E.2d 113, 121-22 (Ill. Ct. App. 2005) (noting that the "blue hyperlink entitled 'Terms and Conditions of Sale' appeared" during checkout and that "[a] person using a computer quickly learns that more information is available by clicking on a blue hyperlink").[8]

And, by contrast, this is not a case where the Terms were only ever presented via a link at the bottom of a webpage, a circumstance that leads some courts to conclude that users were not on constructive notice of applicable terms. *See, e.g.*, *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 32 (2d Cir. 2002) (Sotomayor, J.). In short, due to the conspicuousness and the placement of the NordicTrack Terms at the time of his treadmill purchase, Schwartz was on notice of the terms and unambiguously assented to those terms by continuing to use NordicTrack.com and, more specifically, purchasing a treadmill on the website.

---

[8] *See also, e.g.*, *Crawford v. Beachbody, LLC*, No. 14-1583, 2014 WL6606563, at *3 (S.D. Cal. Nov. 5, 2014) (enforcing contract and observing that the words "'Terms and Conditions' were in blue font . . . [and] hyperlinked to the full text of the Terms and Conditions"); *PDC Labs., Inc. v. Hach Co*., No. 09-1110, 2009 WL 2605270, at *3 (C.D. Ill. Aug. 25, 2009) (concluding that "the Terms were conspicuous enough to have been included" when hyperlinked as part of the checkout process "in underlined, blue, contrasting font").

The Court should compel Schwartz to arbitrate his claims against ICON, provided (of course) that it has jurisdiction to do so.

*       *       *

The record before the Court demonstrates that each Plaintiff is bound by at least one agreement to arbitrate their disputes with ICON. Arbitration agreements subject to the FAA must be enforced "according to their terms—including terms providing for individualized proceedings." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1619 (2018). The Court should follow the Supreme Court's unambiguous mandate by staying this action and compelling each Plaintiff to arbitrate their disputes against ICON on an individual, non-class basis.

## II.   Alternatively, if there are factual disputes as to whether the Plaintiffs agreed to arbitrate their disputes with ICON, these disputes must be resolved through discovery and a summary trial.

This Court can, and should, compel arbitration based solely on the record before it. But if the Court determines that the record is insufficient to compel arbitration at this juncture, then the Court should order discovery, proceed to a summary trial on the issue of arbitration alone, and stay any further proceedings on this case until ICON's motion to compel arbitration is completely resolved.

If there is any "issue" regarding "the making of the arbitration agreement," then the FAA provides that "the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4. In implementing the FAA's procedural guarantee of summary trials regarding arbitration agreements, courts routinely order limited

19

discovery relevant to determining whether the parties did in fact agree to arbitrate the dispute. *See, e.g., Traylor v. I.C. System, Inc.*, No. 11-2968, 2012 WL 1883814, at *2 (D. Minn. May 22, 2012) (Frank, J.) (directing parties to "engage in very limited discovery to gather information necessary for the Court to determine whether Plaintiff agreed to the arbitration provision"); *see also Specht*, 306 F.3d at 28 (explaining that the parties "conduct[ed] weeks of discovery on defendants' motion to compel arbitration" which included "deposition testimony by each named plaintiff"). The Court should, at a minimum, order limited discovery and a summary trial if there are any disputed facts about whether Plaintiffs agreed to arbitrate their disputes with ICON.[9]

The Court should also stay all merits proceedings in this case—including resolution of ICON's motion to dismiss and certainly broad, merits-based discovery—until it has resolved ICON's motion to compel arbitration. The FAA "calls for a summary and speedy disposition of motions . . . to enforce arbitration clauses." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 29. Consistent with this call, courts in this district will stay proceedings on the merits of a case during the

---

[9] ICON believes that it should prevail based on the evidence filed in support of this motion alone. If the Court disagrees, however, then discovery could unearth additional circumstances that would show that there are binding arbitration agreements. To take but one example, any users that had actual notice of the iFit or NordicTrack Terms and, "fully aware of the terms," continued to access the websites, are, of course, bound by the Terms. *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 402-03 (2d Cir. 2004).

pendency of discovery and a summary trial regarding arbitration. *See, e.g., Wells Fargo Ins. Servs. USA, Inc. v. Kyle King & Sherman Ins. Agency, Inc*., No. 15-4378, 2016 WL 6892108, at *5 (D. Minn. July 29, 2016) (Bowbeer, M.J.) ("The Court therefore concludes that WFIS has shown good cause to stay broad-based discovery until Judge Schiltz rules on its motion to compel arbitration."). Accordingly, if the Court orders the parties to engage in limited discovery and a summary trial on the issue of arbitration, all other merits proceedings in this case should be stayed.

### III.   Any remaining issues regarding arbitration should be resolved by an arbitrator, not the court.

This Court's analysis should start and end with the parties' agreement to arbitrate, and all other questions should be left for resolution by an arbitrator. That is because the parties agreed to delegate gateway questions of arbitrability— including questions regarding the Terms' scope and enforceability—to an arbitrator, and courts routinely find such delegations to be valid and enforceable.

The Terms provide that any arbitration shall be conducted under the American Arbitration Association ("AAA") Rules of Arbitration. *See, e.g.* Brammer Decl. Ex. 6 at 10; Cox Decl. Ex. 3 at 6. The applicable AAA rules provide that the arbitrator has "the power to rule on his or her own jurisdiction," including any questions about the "existence, scope, or validity of the arbitration agreement."

Consumer Arbitration Rules, Am. Arbitration Ass'n, Rule 14(a) (Sept. 1, 2014).[10] Analyzing identical AAA rule language, the Eighth Circuit has held that the incorporation of AAA rules into an arbitration agreement "is clear and unmistakable evidence that [the parties] intend[] to allow an arbitrator" to answer questions of arbitrability. *Fallo v. High-Tech Inst.*, 559 F.3d 874, 880 (8th Cir. 2009). This is because the relevant AAA rule unambiguously "provides that arbitrators determine their own jurisdiction." *Id.* at 877. Because the Terms incorporate the AAA rules, any further issues in this case, including whether "the dispute resolution provision is invalid as a contract of adhesion or an unconscionable agreement . . . [,] should be decided by an arbitrator rather than the Court." *Barkl v. Career Educ. Corp.*, No. 10-3565, 2010 WL 4979231, at *3 (D. Minn. Dec. 2, 2010) (Montgomery, J.).[11]

An arbitration agreement's "incorporation of the AAA Rules supersedes a choice-of-law provision contained in the same agreement." *Fallo*, 559 F.3d at 879.

---

[10] *Available at* https://www.adr.org/sites/default/files/Consumer_Rules_Web_0.pdf (last visited Apr. 30, 2020).

[11] Of course, in any event, it is Plaintiffs' burden to demonstrate unconscionability and unenforceability. *See Crawford Prof'l Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249, 263 (5th Cir. 2014) (explaining that under relevant state law the "Plaintiffs [bore] the burden of proving an unconscionability-related defense to arbitration"); *Brady v. Park*, 302 P.3d 1220, 1227 (Utah Ct. App. 2013) ("[T]he parties challenging the [contract] provision[] bear the burden of demonstrating that the provision is unconscionable.").

But even if it did not, Courts applying Utah law have reached the same conclusion—the incorporation of AAA rules into an arbitration agreement results in the delegation of all questions regarding arbitrability to the arbitrator. *Baugh v. Allied Professionals Ins. Co., A Risk Retention Grp*., No. 18-74, 2019 WL 1358855, at *4 (D. Utah Mar. 26, 2019) ("The delegation language of the policy along with this incorporation of the AAA rules reflects the policy's clear and unmistakable delegation of the arbitrability question to the arbitrator."). In *Baugh*, for example, the Court declined to address Plaintiffs' argument that the arbitration clause was unenforceable. Rather, because of the incorporation of the AAA rules, "the issue of enforceability of the clause [fell] to the arbitrator." *Id.* Similarly here, all questions regarding arbitrability should be resolved by the arbitrator alone.

The Court must defer to the arbitrator on whether Plaintiffs' claims are arbitrable. When the parties' contract "delegates the arbitrability question to an arbitrator, a court may not override the contract." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019). This is true even if the Court considers the argument for arbitrability to be "wholly groundless." *Id.*; *see also Sadler v. Green Tree Servicing, LLC*, 466 F.3d 623, 625 (8th Cir. 2006) (reversing district court and compelling arbitration where contract delegated arbitrability questions to arbitrator). It is up to an arbitrator, not this Court, to determine whether the present dispute is arbitrable.

## CONCLUSION

Plaintiffs' disputes fall within the scope of not one, but two, arbitration agreements. The Court should stay these proceedings under the FAA and compel Plaintiffs to arbitrate their disputes against ICON on an individual, non-class basis. *See* 9 U.S.C. §§ 3, 4. If, however, there are disputed issues of material fact bearing on the propriety of granting ICON's motion, then the court should "summarily proceed to trial on those issues as the FAA instructs." *Nebraska Machinery Co. v. Cargotec Solutions, LLC*, 762 F.3d 737, 744 (8th Cir. 2014).


Dated: April 30, 2020                     **GREENE ESPEL PLLP**


                                           s/*X. Kevin Zhao*
                                          Lawrence M. Shapiro, P.A., Reg. No. 0130886
                                          X. Kevin Zhao, Reg. No. 0391302
                                          Caitlinrose H. Fisher, Reg. No. 0398358
                                          222 S. Ninth Street, Suite 2200
                                          Minneapolis, MN  55402
                                          lshapiro@greeneespel.com
                                          kzhao@greeneespel.com
                                          cfisher@greeneespel.com
                                          (612) 373-0830

                                          Attorneys for Defendants

24