**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| TEEDA BARCLAY, ERIN OVSAK, NICOLE NORDICK, and LARRY SCHWARTZ, individually, and on behalf of others similarly situated, | Case No. 0:19-cv-02970-ECT-DTS |
| Plaintiffs, | |
| v. | **PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION** |
| ICON HEALTH & FITNESS, INC., and NORDICTRACK, INC., | |
| Defendants. | |

i

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................iii

INTRODUCTION ....................................................................................................... 1

STATEMENT OF FACTS ........................................................................................... 2

   A.  The NordicTrack and iFit "Agreements" at Issue ................................... 3

     1. NordicTrack Treadmill Purchase .................................................... 5

     2. iFit Service Purchase ....................................................................... 8

   B.  Plaintiffs' Involvement With NordicTrack and iFit .............................. 9

   C.  ICON's Failure to Produce Relevant Information .............................. 10

ARGUMENT ........................................................................................................... 12

  I.  The Legal Standard ................................................................................ 12

  II.  None of the four Plaintiffs agreed to the NordicTrack Terms of Use .... 16

  III. None of the four Plaintiffs agreed to arbitrate disputes relating to their NordicTrack treadmills that arose at time of purchase through their subsequent subscription to iFit. .................................................................................................... 20

   A.  The inquiry notice of the iFit Terms is insufficient for assent............................ 21

   B.  There was no assent, through the iFit Terms, to arbitration of disputes arising at the time of the earlier NordicTrack treadmill purchase...................................... 22

   C.  The iFit arbitration provision cannot apply to Erin Ovsak, for the additional reasons that she did not subscribe to iFit, and the arbitration provision was not in place at the time her husband subscribed. ......................................................... 26

  IV. No further discovery is necessary ........................................................ 29

CONCLUSION ........................................................................................................ 30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
 477 U.S. 242 (1986) .................................................... 16

*AT&T Mobility LLC v. Concepcion*,
 563 U.S. 333 (2011) .................................................... 14

*Austin Freight Sys., Inc. v. W. Wind Logistics, Inc.*,
 No. 18-CV-4832, 2019 WL 2088056 (N.D. Ill. May 13, 2019) ................................... 25

*Bazemore v. Jefferson Capital Sys., LLC*,
 827 F.3d 1325 (11th Cir. 2016) .................................................... 29

*Berkson v. GOGO LLC*,
 97 F. Supp. 3d 359 (E.D.N.Y. 2015) .......................................... 15, 16, 20, 22

*Bosse v. New York Life Ins. Co.*,
 No. 19-CV-016, 2019 WL 5967204 (D.N.H. Nov. 13, 2019) ....................................... 24

*Bridas S.A.P.I.C. v. Gov't of Turkmenistan*,
 345 F.3d 347 (5th Cir. 2003) .......................................................... 27

*Bybee v. Abdulla*,
 189 P.3d 40 (Utah 2008) ................................................ 15

*Campos v. Bluestem Brands, Inc.*,
 No. 3:15-CV-00629, 2016 WL 297429 (D. Or. Jan. 22, 2016) .............................. 12, 13

*City of Benkelman v. Baseline Eng'g Corp.*,
 867 F.3d 875 (8th Cir. 2017) .......................................................... 16

*Dillon v. BMO Harris Bank, NA*,
 173 F. Supp. 3d 258 (M.D.N.C. 2016) .......................................... 21

*Engen v. Grocery Delivery E-Services USA, Inc.*,
 No. 19-CV-2433, 2020 WL 1816043 (D. Minn. Apr. 10, 2020) ............................. 16, 29

*Fallo v. High-Tech Inst.*,
 559 F.3d 874 (8th Cir. 2009) .......................................................... 29

*First Options of Chicago, Inc. v. Kaplan*,
　　514 U.S. 938 (1995) ......................................................................................... 15

*Green Tree Fin. Corp. v. Bazzle*,
　　539 U.S. 444 (2003) ......................................................................................... 14

*Howard v. Ferrellgas Partners*,
　　748 F.3d 975 (10th Cir. 2014) .......................................................... 14, 15, 26

*Howsam v. Dean Witter Reynolds, Inc.*,
　　537 U.S. 79 (2002) ........................................................................................... 13

*Hudyka v. Sunoco, Inc.*,
　　474 F. Supp. 2d 712 (E.D. Pa. 2007) ............................................................ 28

*Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*,
　　379 F.3d 159 (5th Cir. 2004).......................................................................... 29

*Karzon v AT&T, Inc.*,
　　No. 4:13-CV-2002, 2014 WL 51331 (E.D. Mo. 2014)................................. 28

*Kirleis v. Dickie, MCamey & Chilcote, P.C.*,
　　560 F.3d 156 (3d Cir. 2009)........................................................................... 14

*Lamps Plus, Inc. v. Varela*,
　　139 S. Ct. 1407 (2019) ............................................................................. 13, 14

*Levin v. Alms & Assocs., Inc.*,
　　634 F.3d 260 (4th Cir. 2011)......................................................................... 25

*Long v. Provide Commerce, Inc.*,
　　200 Cal. Rptr. 3d 117 (Cal. Ct. App. 2016) ................................................ 15

*Lopez v. Terra's Kitchen, LLC*,
　　331 F. Supp. 3d 1092 (S.D. Cal. 2018) ........................................................ 19

*Martin v. Wells Fargo Bank, NA*,
　　No. 12-CV-06030, 2013 WL 6236762 (N.D. Cal. Dec. 2, 2013)................. 28

*MedCam, Inc. v. MCNC*,
　　414 F.3d 972 (8th Cir. 2005)......................................................................... 14

*Meyer v. Uber Techs., Inc.*,
　　868 F.3d 66 (2d Cir. 2017)............................................................................. 19

iv

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
    473 U.S. 614 (1985) ....................................................................... 14

*Moore-Dennis v. Franklin*,
    Nos. 1131142, 1131176, 2016 WL 761698 (Ala. Feb. 26, 2016) ................................. 28

*Nanosolutions, LLC v. Prajza*,
    793 F. Supp. 2d 46 (D.D.C. 2011) .................................................................. 25

*Neb. Machinery Co. v. Cargotec Solutions, LLC*,
    762 F.3d 737 (8th Cir. 2014)..................................................................... 14

*Newbanks v. Cellular Sales of Knoxville, Inc.*,
    548 F. App'x 851 (4th Cir. 2013) ................................................................ 25

*Nguyen v. Barnes & Noble Inc.*,
    763 F.3d 1171 (9th Cir. 2014).................................................................17-19

*Nicosia v. Amazon.com, Inc.*,
    834 F.3d 220 (2d Cir. 2016)...................................................................... 22

*Norcia v. Samsung Telecomms. Am., LLC*,
    No. 14-CV-00582, 2014 WL 4652332 (N.D. Cal. Sept. 18, 2014) ........................ 14, 24

*O'Callaghan v. Uber Corp. of Cal.*,
    No. 17-CV-2094, 2018 WL 3302179 (S.D.N.Y. July 5, 2018) .................................... 12

*O'Shaughnessy v. Young Living Essential Oils, LC*,
    No. 1:19-CV-412-LY, 2019 WL 5296359 (W.D. Tex. Oct. 18, 2019) ........................ 13

*Palmer v. Davis*,
    808 P.2d 128 (Utah Ct. App. 1991) ............................................................. 27

*Rodman v. Safeway, Inc.*,
    No. 11-CV-03003, 2015 WL 604985 (N.D. Cal. Feb. 12, 2015) ................................. 28

*Schnabel v. Trilegiant Corp.*,
    697 F.3d 110 (2d Cir. 2012)...................................................................... 28

*SCI Minn. Funeral Servs., Inc. v. Washburn-McReavy Funeral Corp.*,
    795 N.W.2d 855 (Minn. 2011).................................................................... 13

*Sec. Watch, Inc. v. Sentinel Syst., Inc.*,
    176 F.3d 369 (6th Cir. 1999)...................................................................... 25

*Sgouros v. TransUnion Corp.*,
  817 F.3d 1029 (7th Cir. 2016)......................................................................16

*Shockley v. PrimeLending*,
  929 F.3d 1012 (8th Cir. 2019)................................................................15, 29

*Smith v. Swift Transp., Co., Inc.*,
  No. 13-CV-2247, 2013 WL 5551804 (D. Kan. Oct. 7, 2013) ......................25

*Specht v. Netscape Commcn's Corp.*,
  306 F.3d 17 (2d Cir. 2002)......................................................................13, 17

*Stinson v. Best Buy Co.*,
  No. 0:18-CV-295, 2018 WL 3850739 (D. Minn. June 26, 2018)..................24

*Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
  559 U.S. 662 (2010) ....................................................................................13

*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*,
  363 U.S. 574 (1960) ....................................................................................16

*Van Tassell v. United Mktg. Grp., LLC*,
  795 F. Supp. 2d 770 (N.D. Ill. 2011) ..........................................................17

*Versmesse v. AT&T Mobility, LLC*,
  No. 3:13-CV-171, 2014 WL 856447 (N.D. Ind. Mar. 4, 2014)....................28

*Weitz Co., LLC v. Lloyd's of London*,
  574 F.3d 885 (8th Cir. 2009)........................................................................16

*Wexler v. AT&T Corp.*,
  211 F. Supp. 3d 500 (E.D.N.Y. 2016) ....................................................23, 24

## Statutes

U.S. Const. art. III, § 2.....................................................................................12

U.S. Const. amend. VII.....................................................................................12

## Other Authorities

Restatement (Second) of Contracts § 19(2) (1981).........................................13

Plaintiffs Teeda Barclay, Erin Ovsak, Nicole Nordick, and Larry Schwartz ("Plaintiffs"), by and through their attorneys, submit the following factual and legal basis to deny the motion to compel arbitration brought by Defendants Icon Health & Fitness, Inc., ("ICON") and NordicTrack, Inc. ("NordicTrack") (jointly "Defendants").

## INTRODUCTION

Defendants seek to deny Plaintiffs their constitutional right to a trial by jury, citing the "liberal federal policy" favoring arbitration. Defendants' Memorandum of Law in Support of Motion to Compel Arbitration ("MTC" or "Motion to Compel") at 7-9, ECF No. 30. But that policy does not come into play in determining whether an agreement to arbitrate exists, and no such agreement is found in this case. In attempting to prove otherwise, Defendants stretch the concept of mutual assent, required with respect to any contract (including arbitration agreements), beyond any semblance of logic and common sense.

This litigation centers upon NordicTrack's treadmill horsepower misrepresentations. Plaintiffs purchased NordicTrack treadmills, relied upon NordicTrack's misrepresentations, and suffered injury as a result. Defendants first argue that Plaintiffs agreed to arbitrate this dispute based upon an arbitration clause buried in the online NordicTrack Terms of Use. Plaintiffs never saw these Terms of Use, or the included arbitration clause, much less agreed to them. The Terms of Use may be accessed through inconspicuous hyperlinks buried at the bottom of the NordicTrack website, but need not be accessed or agreed to in order to purchase a treadmill on that site. When a consumer buys a NordicTrack treadmill from a third-party, such as Amazon or Dick's

Sporting Goods, the hyperlinked Terms of Use are not even accessible on those sites. And the Terms of Use are not provided in the Owner's Manual or other documentation a purchaser receives with the treadmill. Under these circumstances, there is no agreement to arbitrate based on the NordicTrack Terms of Use.

Defendants next argue that Plaintiffs in any case agreed to arbitrate disputes relating to their purchase of NordicTrack treadmills when, sometimes months after purchase, they signed up for an iFit subscription. The iFit service provides streaming online interactive fitness training, and iFit is purchased through what NordicTrack itself acknowledges is an entirely separate transaction. The NordicTrack treadmills can be used with or without iFit, and iFit can be used as a separate fitness service with or without a NordicTrack treadmill. While the iFit Terms of Use recently added an arbitration clause, no reasonably prudent consumer would understand that by subscribing to iFit they have—according to Defendants—mutually assented to arbitrate disputes that arose at the time of their prior NordicTrack treadmill purchase.

Plaintiffs respectfully request that Defendants' motion to compel be denied.

## STATEMENT OF FACTS

Plaintiffs brought this class action based upon misrepresentations relating to their purchases of NordicTrack treadmills. *See generally* Second Amended Complaint ("SAC"), ECF No. 22. NordicTrack's marketing emphasized the "continuous horsepower" ("CHP") of NordicTrack treadmills, with substantial dollar increases depending upon whether a consumer chose a 2.6, 3.5 or 4.25 CHP motor. SAC, ¶¶ 51-62. In fact, the operating horsepower of *any* NordicTrack treadmill, due to voltage and

amperage limitations, cannot exceed 2.21 CHP, and is generally much lower. SAC, ¶ 34. Plaintiffs' Complaint asserts claims for breach of express and implied warranties, violation of the Magnuson-Moss Warranty Act, violations of Minnesota and California consumer protection statutes, and negligent misrepresentation. SAC, ¶¶ 93-287. None of Plaintiffs' allegations relate in any way to ICON's iFit subscription service. *See generally* SAC.

A.    **The NordicTrack and iFit "Agreements" at Issue**

ICON's Motion to Compel attempts to conflate two entirely separate consumer transactions: 1) the purchase of a NordicTrack treadmill; and 2) the registration of an iFit subscription service. The first transaction involves the purchase of a product (a NordicTrack treadmill) that may or may not be used in conjunction with iFit service. Declaration of Nathan Prosser ("Prosser Decl."), ¶ 2. The second transaction involves the registration of a service (iFit) that may or may not be used in conjunction with a NordicTrack treadmill. *Id.*, ¶ 3. Consumers can use iFit, a service that provides online interactive coaching by fitness trainers, with NordicTrack treadmills fitness equipment, with other brands of treadmill and fitness equipment, or with (as the iFit website touts) "exercise gear you already own" such as dumbbells or exercise balls. *Id.*, ¶ 4. Purchasers of NordicTrack treadmills may subscribe to iFit—and then cancel their iFit service—at any time after their treadmill purchase, while still using their NordicTrack treadmill. *Id.*, ¶ 5. The relationship between the purchase of NordicTrack treadmills and the purchase of iFit service can be represented graphically as below:



NordicTrack itself notes the separate nature of the two transactions on the iFit Frequently Asked Questions, which explains that a credit card has to be entered both for the treadmill purchase and for the iFit subscription because "your machine purchase is a *separate transaction* from your iFit subscription . . . ." *Id.*, ¶ 3. (emphasis added). Defendants also make clear that the "iFit subscription is required for the advertised coach-controlled interactive personal training experience, but not mandatory to purchase" a treadmill. *Id.*, at ¶ 6. Here is an excerpt from iFit registration webpage:



*Id.*, ¶ 3; Ex. 2.

NordicTrack and iFit have separate "Terms of Use" ("Terms"). *Id.*, ¶¶ 7-8; Exs. 5 and 6. The current NordicTrack Terms are found at www.nordictrack.com/terms-of-use and have 40 separate headings, with the 37th heading of "arbitration" followed by an arbitration clause. *Id.*, ¶ 7. The current iFit Terms are found at www.ifit.com/termsofuse and have 42 separate headings, with the 39th heading of "arbitration" followed by an arbitration clause. *Id.*, ¶ 8. Both NordicTrack and iFit Terms have changed over time. *Id.*, ¶¶ 7-8; Exs. 5 and 6.

There are material differences between the two separate Terms of Use. For example, the "Modifications of Terms of Use" clause for iFit, while reserving the right to modify the Terms, states at the end that: "Notwithstanding the preceding sentences of this paragraph, no revisions to these Terms of Use will apply to any dispute between you and ICON that arose prior to the effective date of those revisions." *Id.*, ¶ 8; Ex. 6. That restriction is not found in the current NordicTrack Terms. *Id.,* ¶ 7; Ex. 5.

## 1. NordicTrack Treadmill Purchase

To purchase a NordicTrack treadmill, a consumer does not need to agree to the NordicTrack "Terms of Use." *Id.*, ¶¶ 9-11; Exs. 7-9. This is so whether the treadmill purchase is directly from NordicTrack or from a third-party vendor. *Id*.

In the latter situation, a consumer can fulfill a purchase with no reference whatsoever to the NordicTrack Terms. For example, one model of NordicTrack treadmill is listed on Amazon (the site Plaintiff Barclay made her purchase from) for $1,799.00. *Id.*, ¶ 9; Ex. 7. The Amazon website includes advertising content "from the manufacturer," and a link to the 40-page user manual, but no reference to the

NordicTrack Terms of Use or arbitration of disputes with NordicTrack either on the Amazon site or in the linked user manual.   *Id.* Similarly, one can buy a NordicTrack treadmill on Sears Outlet for $1,999.99. *Id.*, ¶ 10; Ex. 8. On the webpage from which a purchase can be made there are links both to the 40-page owner's manual and the 1-page limited warranty. *Id.* Neither of these documents include either the NordicTrack Terms or any reference to arbitration, and there is no reference to arbitration with NordicTrack on the Sears website. *Id.* A consumer can purchase a NordicTrack treadmill from Dick's Sporting Goods for $2,299.99, and the webpage in that case does not even have the hyperlink to owner's manual or warranty, much less any reference to NordicTrack's Terms. *Id.*, ¶ 11; Ex. 9.

When a consumer purchases a NordicTrack treadmill directly from NordicTrack online, there is no requirement that the consumer review or agree to the Terms of Use buried at the bottom of the website, prior to purchase. *Id.*, ¶ 12; Ex. 10. If a consumer accesses www.nordictrack.com and scrolls down to the very bottom of the website, they may see a cluttered section with numerous company hyperlinks.



*Id.* Within this section, there are thirty-three total hyperlinks, with six hyperlinks under "Company Links," six hyperlinks under "Customer Service," six hyperlinks under "Site Links," and six hyperlinks under "Contact Us." *Id.* Buried within these links is a hyperlink to "Terms of Use," in the same small white font as every other hyperlink. *Id.* There is also a small hyperlink to "Privacy Policy" under the six social media sharing hyperlinks, which, if accessed, has headings related to marketing, third-party marketing, advertising disclaimer, and return policy, but no reference to arbitration. *Id.*

When a consumer chooses to buy a treadmill on www.nordictrack.com they are currently directed to a check-out page that looks like this:



*Id.*, ¶ 13; Ex. 11. On that page, underneath an optional check box stating "Yes, I'd like delivery updates via text," is a faded font statement that says "I agree to receive text

messages at the number listed above. Msg & data rates may apply. View Terms & Privacy." *Id.* The latter phrase is a hyperlink to the Terms of Use. *Id.* Furthermore, as Defendants' evidence shows, the delivery text update box with peripheral Terms & Privacy hyperlink did not appear at checkout until July 23, 2019. Cox Decl., ¶ 6.

## 2. iFit Service Purchase

A consumer registering for iFit service on the iFit website currently must check a box confirming that they have read and agree to iFit's Terms of Use and Privacy Policy. Prosser Decl., ¶ 14; Ex. 12. Hyperlinks to the Terms of Use and Privacy Policy are found within that confirmation. *Id.* Similarly, consumers registering for iFit service through a mobile app at some point are informed that "by clicking next, you agree to the Terms of Use and Privacy Policy," which are again hyperlinked. *Id.*

This was not always the case. Earlier versions of the iFit sign-up webpage, as recent as March 30, 2019 and relevant to Plaintiffs' registrations, did not require the consumer to check a box, but rather simply stated that by placing the order the consumer was agreeing to the Terms of Use. *Id.*, ¶ 15; Ex. 13.[1]

---

[1] Defendants' MTC is inaccurate with respect to this change in website content. Defendants submit a declaration attaching "A true and correct copy of *a* screen shot capture" relating to an iFIT order, but do not indicate a specific date for that capture. MTC, Brammer Decl., ¶ 7. The declaration inaccurately states that "since before 2015" consumers who sign up for iFit have agreed to the terms of use by "checking the box" next to an acknowledgement stating that they have read and agreed to the iFit Terms of Use. *Id.* But this is incorrect. As recently as March 30, 2019 the registration page for iFit did not require the consumer to affirmatively "check the box"—it simply said that by placing the order they agreed to the Terms of Use. Prosser Decl., ¶ 15; Ex. 13. This factual distinction makes a large difference in the arbitration context, and it is incumbent upon Defendants to provide Plaintiffs and the Court with accurate information.

In addition, while the current iFit Terms contain an arbitration provision, earlier versions did not. MTC at 4; Brammer Decl., Ex. 4 at 1-2 There is no evidence that iFit gave subscribers notice when the arbitration provision was added to the iFit website's Terms of Use.

### B.     Plaintiffs' Involvement With NordicTrack and iFit

Each of the four named Plaintiffs had the same experience when purchasing their NordicTrack treadmill:

- they did not agree to the NordicTrack Terms of Use;

- they did not review the NordicTrack Terms of Use;

- they were unaware of any NordicTrack Terms of Use and the arbitration provision included within those Terms;

- Plaintiffs Barclay, Ovsak, and Nordick purchased their treadmills before Defendants implemented an optional click-box on the shipping page to receive text updates regarding delivery with the peripheral Terms & Privacy hyperlink;

- Plaintiff Schwartz purchased his treadmill after Defendants implemented an optional click-box on the shipping page to receive text message updates regarding delivery with the peripheral Terms & Privacy hyperlink;

- they did not consider that Defendants might now assert that the NordicTrack Terms of Use hyperlink on the shipping page, which is below a box that can be checked to obtain text updates regarding delivery, bound them to arbitration of disputes relating to NordicTrack advertising misrepresentations;

- Plaintiffs that subscribed to iFit were unaware of the iFit Terms of Use and the arbitration provision included within those Terms;

- Plaintiffs that subscribed to iFit did not review the iFit Terms of Use; and,

9

- those Plaintiffs that subscribed to iFit did not consider that iFit might now assert that their post-sale purchase of iFit service, which included an agreement to the iFit Terms of Use, bound them to arbitration of disputes relating to NordicTrack advertising misrepresentations.

Decl. of Teeda Barclay, ¶¶ 4-7; Decl. of Erin Ovsak, ¶¶ 4-5, 7; Decl. of Nicole Nordick ¶¶ 4-7; Decl. of Larry Schwartz, ¶ 4.

### C.    ICON's Failure to Produce Relevant Information

On the evening of Friday, April 24, 2020, almost five months after this litigation began, counsel for Defendants notified Plaintiffs' counsel of Defendants' assertion that Plaintiffs had allegedly agreed to arbitration, and requested that Plaintiffs' counsel respond by close of business that following Monday to indicate whether Plaintiffs would agree to arbitrate. Prosser Decl., ¶ 16; Ex 14. Defendants' counsel indicated that, absent agreement, Defendants would move to compel arbitration. *Id.*

Plaintiffs' counsel responded the following Monday, April 27, 2020. *Id.* ¶ 17; Ex. 15.  Plaintiffs' counsel indicated that to their knowledge no Plaintiff had agreed to a Terms of Use that included an arbitration provision at the time they purchased the treadmill. *Id.* They requested that Defendants provide information necessary for Plaintiffs' counsel to advise their clients regarding Defendants' request that the parties agree to arbitrate. *Id.*  Defendants were asked to provide, for each plaintiff: the evidence that they agreed to a Terms of Use for their purchase of a NordicTrack treadmill, along with the date of agreement and the Terms of Use in effect at the time; and the evidence that they agreed to a Terms of Use as part of their iFit registration, along with the date of agreement and the Terms of Use in effect at the time. *Id.* While there was some additional

correspondence, Defendants' counsel did not produce the evidence requested. Prosser Decl., ¶ 18; Ex. 16.

Defendants' initial email regarding arbitration referenced "ICON's Terms of Use." *Id.*, at ¶¶ 16-18*; Exs. 14-16. As discussed above, there is no such thing as "ICON's Terms of Use" – there is a NordicTrack Terms of Use and an iFit Terms of Use. While Defendants' motion to compel seems to acknowledge this point, it just vaguely asserts, without proof, that each Plaintiff agreed in some fashion, at some point in time, to some arbitration clause. Defendants fail to present electronic evidence showing, separately for each Plaintiff:

- what specific NordicTrack Terms were in effect at the time each Plaintiff accessed the NordicTrack website or purchased their treadmill;

- what specific webpages referencing the NordicTrack Terms were in effect at the time of each Plaintiff's access or purchase;

- whether any Plaintiff checked the box indicating they would "like delivery updates via text." (MTC at 4);

- what specific pages were accessed by each Plaintiff on the NordicTrack website;

- what specific iFit Terms were in effect at the time Plaintiffs accessed the iFit website or subscribed to iFit;

- what specific webpages referring to the iFit terms were in effect at the time of a Plaintiff's access or subscription;

- whether a Plaintiff subscribed to iFit via the website or mobile app; and

- evidence that a Plaintiff "checked the box" when subscribing to iFit.

11

Presumably ICON maintains electronic records from which this information could have been provided. At the very least, ICON should have provided contract records showing when and how each Plaintiff purported to assent to arbitration. *Cf. O'Callaghan v. Uber Corp. of Cal.*, No. 17-CV-2094, 2018 WL 3302179, at *7 (S.D.N.Y. July 5, 2018), *appeal dismissed*, No. 18-3277, 2019 WL 1958696 (2d Cir. Mar. 11, 2019) ("Uber's electronic records show that O'Callaghan assented to four updated agreements, each of which contains the arbitration provision."). Defendants have failed to do so.

Defendants' failure to provide the requested documentation to Plaintiffs' counsel and to the Court in and of itself calls into question their Motion to Compel, a motion for which they bear the burden of proof.

## ARGUMENT

Plaintiffs did not assent to arbitrate the product-related claims brought by them in the SAC. None of the four Plaintiffs assented to the NordicTrack Terms of Use or the arbitration provision contained within those Terms when they purchased their NordicTrack treadmills. Nor did they assent to the iFit Terms of Use in later subscribing to that service, and even if they had done so, an agreement to arbitrate based upon the iFit Terms of Use cannot be applied to an earlier separate treadmill purchase.

### I.     The Legal Standard

Arbitration restricts a party's right to a trial by jury, the only right explicitly mentioned in the United States Constitution (U.S. Const. art. III, § 2) and the Bill of Rights (U.S. Const. amend. VII). For that reason, "consent to such a process should not

casually be presumed or slyly obtained." *Campos v. Bluestem Brands, Inc.*, No. 3:15-CV-00629, 2016 WL 297429, at *3, n. 1 (D. Or. Jan. 22, 2016).

The Federal Arbitration Act ("FAA") embodies "the basic precept that arbitration 'is a matter of consent, not coercion.'" *Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp*., 559 U.S. 662, 697 (2010) (quotation omitted). Arbitration is a matter of contract, and "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (quotation omitted). "Mutual manifestation of assent" has long been "the touchstone of contract," and it remains so. *Specht v. Netscape Commcn's Corp.*, 306 F.3d 17, 29 (2d Cir. 2002); *cf*. Restatement (Second) of Contracts § 19(2) (1981). This manifestation requires a "meeting of the minds" as to all material or essential terms. *SCI Minn. Funeral Servs., Inc. v. Washburn-McReavy Funeral Corp.*, 795 N.W.2d 855, 864 (Minn. 2011); *see also O'Shaughnessy v. Young Living Essential Oils, LC*, No. 1:19-CV-412-LY, 2019 WL 5296359, at *4 (W.D. Tex. Oct. 18, 2019), *report and recommendation adopted sub nom. O'Shaughnessy v. Young Living Essential Oils, LC*, No. 19-CV-412-LY, 2019 WL 8587182 (W.D. Tex. Nov. 27, 2019), *aff'd sub nom. O'Shaughnessy v. Young Living Essential Oils, L.C.*, No. 19-51169, 2020 WL 2078368 (5th Cir. Apr. 28, 2020) (applying Utah law and denying motion to compel arbitration because "[i]t is fundamental that a meeting of the minds on the integral features of an agreement is essential to the formation of a contract.") (citation omitted).

Before compelling a party to arbitrate under the FAA, the court should consider the "gateway" question, which is "whether the parties have a valid arbitration

agreement." *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1416 (2019) (quoting *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003)). Thus, "the first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985*); see also MedCam, Inc. v. MCNC*, 414 F.3d 972, 974 (8th Cir. 2005). This threshold issue of assent and arbitration agreement validity is for the court, not the arbitrator, to decide, even where the purported arbitration agreement incorporates the rules of the American Arbitration Association. *Neb. Machinery Co. v. Cargotec Solutions, LLC*, 762 F.3d 737, 741 n. 2 (8th Cir. 2014).

Importantly, while there may be a federal policy favoring arbitration, "this presumption in favor of arbitration 'does not apply to the determination of whether there is a valid agreement to arbitrate between the parties.'" *Kirleis v. Dickie, MCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009) (citation omitted); *Norcia v. Samsung Telecomms. Am., LLC*, No. 14-CV-00582, 2014 WL 4652332, at *4 (N.D. Cal. Sept. 18, 2014), *aff'd*, 845 F.3d 1279 (9th Cir. 2017) (no "thumb on the scale" when deciding threshold issue of agreement). Arbitration agreements are on "an equal footing with other contracts" and like any other contract may be unenforceable based on any of the "generally applicable contract defenses, such as fraud, duress, or unconscionability . . . ." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). In *Howard v. Ferrellgas Partners*, 748 F. 3d 975, 977 (10th Cir. 2014), the Tenth Circuit explained that:

> Everyone knows the Federal Arbitration Act favors arbitration. But before the Act's heavy hand in favor of arbitration swings into play the parties themselves must agree

to have their disputes arbitrated. While Congress has chosen to preempt state laws that aim to channel disputes into litigation rather than arbitration, even under the FAA it remains a "fundamental principle" that "arbitration is a matter of contract," not something to be foisted on the parties at all costs.

As the parties seeking to compel arbitration, Defendants bear the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence. *Shockley v. PrimeLending*, 929 F.3d 1012, 1017 (8th Cir. 2019). Federal courts will apply state-law principles governing contract formation when deciding whether parties agreed to arbitrate a matter. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Under Utah law (the state law Defendants claim governs), as in the law of other states, Defendants must demonstrate a mutual manifestation of assent. *Bybee v. Abdulla*, 189 P.3d 40, 43 (Utah 2008) (denying motion to compel arbitration and noting the burden of proving mutual assent "to all material terms and conditions is on the party claiming that there is a contract.").[2] That burden is not lessened with respect to internet transactions. *See, e.g., Long v. Provide Commerce, Inc.*, 200 Cal. Rptr. 3d 117, 122 (Cal. Ct. App. 2016) (requirement of mutual assent "applies with equal force to arbitration provisions contained in contracts purportedly formed over the internet.").

In the world of electronic forms, the burden is "on the offeror to impress upon the offeree—*i.e.*, the average internet user—the importance of the details of the binding

---

[2] Plaintiffs do not agree that Utah law, the governing law per the disputed Terms, applies, but agree with Defendants that the issue of applicable law need not be resolved at this point given that the basic contract law at issue is the same however the choice-of-law issue is resolved. MTC at 9, n. 3.

contract being entered into." *Berkson v. GOGO LLC*, 97 F. Supp. 3d 359, 382 (E.D.N.Y. 2015). "[A] person using the Internet may not realize that she is agreeing to a contract at all, whereas a reasonable person signing a physical contract will rarely be unaware of that fact." *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1035 (7th Cir. 2016) (no assent to arbitration by clicking "I Accept" button). Therefore, courts will not enforce website terms and conditions where the importance of the details of the contract are obscured or minimized. *Berkson*, 97 F. Supp. 3d at 402; *see also Engen v. Grocery Delivery E-Services USA, Inc.*, No. 19-CV-2433, 2020 WL 1816043, at *3 (D. Minn. Apr. 10, 2020) (implicit in analysis of motion to compel is the understanding that "[o]f course, 'a party cannot be required to submit to arbitration any dispute which [s]he has not agreed . . . to submit.") (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582 (1960)).

Where, as here, motions to compel involve consideration of evidence beyond the pleadings, they are decided under the same standard a Rule 56 motions for summary judgment, including construing all evidence in favor of the non-movant, which in this case is Plaintiffs. *City of Benkelman v. Baseline Eng'g Corp.*, 867 F.3d 875, 882 (8th Cir. 2017); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (evidence construed in favor of non-movant on summary judgment); *Weitz Co., LLC v. Lloyd's of London*, 574 F.3d 885, 892 (8th Cir. 2009) (same).

## II.    None of the four Plaintiffs agreed to the NordicTrack Terms of Use

The NordicTrack Terms of Use purport to require arbitration of disputes. MTC, Cox Decl., Ex. 3. But no Plaintiff agreed to, or even viewed, the NordicTrack Terms of

Use, and Plaintiff Barclay purchased her NordicTrack treadmill not from nordictrack.com but through Amazon.com. Barclay Decl., ¶¶ 3-4; Nordick Decl., ¶ 4; Ovsak Decl., ¶ 4 Schwartz Decl., ¶ 4. The NordicTrack Terms of Use arbitration clause Defendants ask this Court to enforce appears nowhere on the packaging, labeling, or other materials that come with the NordicTrack treadmill. Prosser Decl., ¶ 19. It is also absent from the NordicTrack owners' manual, and the NordicTrack warranty, which are in part at issue in this litigation. *Id.* How, then, could any Plaintiff assent to be bound by the NordicTrack terms?

Defendants first assert that Plaintiffs agreed to arbitrate when they visited the NordicTrack website, which contains pages with hyperlinks to NordicTrack's terms of use. MTC at 6-7, 16-19. But browsewrap[3] agreements such as NordicTrack's cannot be enforced on the basis of constructive or "inquiry" notice unless: (i) the hyperlinked agreement is conspicuous and conspicuously placed; and (ii) the text of the hyperlink notifies users that taking a specified action will demonstrate assent to those terms. *Nguyen,* 763 F.3d at 1177. NordicTrack's disclosure of its Terms of Use fails to comply with these requirements and its Terms are therefore unenforceable. The hyperlinks to

---

[3] A "browsewrap" agreement is one in which a "website's terms and conditions of use are generally posted on the website via a hyperlink" without requiring that they be viewed or affirmatively agreed to. *Nguyen v. Barnes & Noble Inc*., 763 F.3d 1171, 1176 (9th Cir. 2014). Courts routinely find "browsewrap" agreements inadequate to obtain an unambiguous manifestation of assent. *Nguyen*, 763 F.3d at 1177 (invalidating browsewrap); *Van Tassell v. United Mktg. Grp., LLC*, 795 F. Supp. 2d 770, 790 (N.D. Ill. 2011) (same); *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 30 (2d Cir. 2002) (same).

Terms of Use on NordicTrack's site are inconspicuous and require no action that would indicate assent. Plaintiffs never agreed to, or even saw, the NordicTrack Terms of Use, and Defendants present no evidence to the contrary. There simply was no "agreement."

Defendants do not even attempt to argue that the placement of a hyperlink to the NordicTrack Terms at the bottom of each NordicTrack webpage is "conspicuous." Nor could they, given that it is one of two dozen hyperlinks all in the same small white font. *See* p. 7, *supra*. They assert, however, that the placement of the hyperlink on the checkout page places consumers on inquiry notice, given that it is in a different font and color. MTC at 17. First, this hyperlink at checkout was added July 23, 2019, after all plaintiffs but Mr. Schwartz purchased their treadmills. MTC, Cox Decl., ¶ 6. Second, Defendants ignore the critical requirement that there be an indication, through the hyperlink placement and surrounding text, of assent. *Nguyen*, 763 F.3d at 1179 ("even close proximity of the hyperlink to relevant buttons users much click on—without more—is insufficient to give rise to constructive notice."). Not only is the hyperlink in this case divorced from any language indicating assent, its placement after July 23, 2019 suggests it need only be viewed if the box requesting delivery updates by text is checked, which is not required to complete the treadmill purchase. *See* pp. 7-8, *supra*. Defendants have provided no such evidence of actual or inquiry notice through evidence that Mr. Schwartz assented to the optional delivery updates by text, and such evidence cannot exist for the other Plaintiffs who purchased treadmills before the July 23, 2019 text delivery checkbox implementation date.

A recent case on point is *Lopez v. Terra's Kitchen, LLC*, 331 F. Supp. 3d 1092 (S.D. Cal. 2018).  In *Lopez*, the court denied a motion to compel arbitration holding that there was neither actual nor inquiry notice of an arbitration agreement in a browsewrap situation. *Id.* The defendant had a website that offered subscriptions for ready-made meals. *Id.* at 1095. The defendant argued that constructive notice of its Terms & Conditions was given through placement of hyperlinks on each webpage, as well as placement of a hyperlink on the check-out page below a button to complete the purchase. *Id.* at 1100. The hyperlink on the bottom of the webpages was arranged along with 21 other hyperlinks, in columns, in the same font-size and color. *Id.* The district court found that the "buried" hyperlink at the bottom of the webpages, along with the hyperlink on the check-out page "without affirmative acknowledgment of the agreement before proceeding with the purchase," was not enough to give inquiry notice. *Id.* at 1101. *See also Nguyen*, 763 F.3d at 1178-79 (no inquiry notice where hyperlinks without connection to assent).

Defendants cite a few cases where inquiry notice was found in browsewrap situations. MTC at 18. Defendants emphasize how those hyperlinks in those cases were found to be conspicuous, glossing over the fact that in those cases—unlike here—the hyperlinks were associated with text notifying consumers that they were assenting to the hyperlinked terms. *See, e.g., Meyer v. Uber Techs., Inc*., 868 F.3d 66, 78 (2d Cir. 2017) (noting that "[b]y creating an Uber account, you agree to the TERMS OF SERVICE & PRIVACY POLICY").

Of course ICON could have, and should have, used more reliable methods of contract formation if its intent was to truly bind treadmill purchasers to arbitration. It could have made it a mandatory step for users to view the terms before purchase, or it could have required users to scroll through the terms and click a box stating "I agree." *See Berkson*, 97 F. Supp. 3d at 404. In *Berkson*, the consumer had to click a "sign in" button and there was text indicating that by doing so the consumer agreed to the terms of use. *Id.* The district court held there was nevertheless insufficient assent because the large "SIGN IN" button obscured the importance of the terms of use, and once the button was clicked there was no link to the terms. *Id.* By rejecting choices that would ensure users were conspicuously presented with the NordicTrack Terms of Use, ICON accepted the substantial probability that users would not see those terms when they purchased their treadmills. At the time of Plaintiffs' purchases, there was neither actual nor constructive notice of the NordicTrack Terms, including its arbitration provision. No Plaintiff assented to the Terms, to arbitration, or to delegation of issues to the arbitrator. Defendants' motion to compel should be denied on this basis alone.

**III.    None of the four Plaintiffs agreed to arbitrate disputes relating to their NordicTrack treadmills that arose at time of purchase through their subsequent subscription to iFit.**

Defendants attempt to salvage the clear lack of assent to arbitration at the time of Plaintiffs' treadmill purchases by also asserting that Plaintiffs Barclay, Nordick, and Ovsak agreed to arbitrate the dispute relating to their NordicTrack treadmill purchases and associated warranties by later signing up for and agreeing to iFit's Terms. This will not wash. There is scant evidence that Plaintiffs Barclay, Nordick, and Ovsak actually

assented to iFit's Terms of Use. But of more import is the fact that no Plaintiff assented, through the iFit Terms, to arbitration of disputes relating to his or her earlier NordicTrack treadmill purchase. Plaintiff Barclay immediately canceled her iFit membership after the 30-day free trial period without ever using it.  Barclay Decl., ¶ 5. In the case of Erin Ovsak, the iFit subscription was not hers but her husband's, and at the time of Mr. Ovsak's subscription, the iFit Terms had no arbitration provision. Ovsak Decl., ¶ 5; Brammer Decl. ¶ 9, Ex. 4. Moreover, Mr. Ovsak's iFit membership expired on April 3, 2018 and holds no effect. Ovsak Decl. ¶ 6, Ex. 1.[4]

### A.  The inquiry notice of the iFit Terms is insufficient for assent.

According to Defendants' records, Plaintiff Barclay signed up for an iFit membership a few weeks after her treadmill purchase, Plaintiff Nordick signed up for an iFit membership over a month after her treadmill purchase, and Plaintiff Ovsak's husband, Jay Ovsak, signed up for an iFit membership over a month after Plaintiff Ovsak's treadmill purchase. MTC at 6-7, citing Brammer Decl, ¶¶ 15-17. None of these Plaintiffs reviewed the iFit Terms prior to subscription. Barclay Decl., ¶ 5; Nordick Decl., ¶ 5; Ovsak Decl., ¶ 5.

Defendants argue that all three Plaintiffs must be constructively charged with assenting to the iFit Terms, because they allegedly clicked a box at checkout next to the words "I confirm that I have read and agree to iFit's Terms of Use and Privacy Policy and I authorize iFit to charge my payment method for the subscription as described

---

[4] Defendants fail to inform the Court that both Ovsak and Barclay no longer maintain iFit memberships, evidence that Defendants undoubtedly possess.

above."  MTC at 11, citing Brammer Decl., ¶ 7, Ex. 2. But internet archives show that at the time of subscription, the "check the box" webpage was not a "check the box," but rather said, in small font below a large vividly colorful block "PLACE ORDER" button, "By clicking 'PLACE ORDER,' you agree to the Terms of Use and Privacy Policy." Prosser Decl., ¶ 8; Ex. 5. *See Dillon v. BMO Harris Bank, NA*, 173 F. Supp. 3d 258, 266 (M.D.N.C. 2016) ("Even absent fraud, there is risk of error in the production of a document from the bowels of an electronic record-keeping system, which may include agreements whose terms and electronic click-through procedures varied over time.").

The difference between the checkout page provided by Defendants and the actual checkout page that would have been present when Barclay, Nordick, and Plaintiff Ovsak's husband subscribed is important evidence. A small font reference to the iFit Terms beneath a large "PLACE ORDER" button does not provide constructive notice. *See Berkson,* 97 F. Supp. 3d at 404 (statement in small font above "NEXT" button indicating that by clicking next consumer was assenting to terms of use insufficient to provide constructive notice); *Nicosia v. Amazon.com, Inc*., 834 F.3d 220, 237 (2d Cir. 2016) (declining to enforce an arbitration clause, as the disclosure – "'By placing your order, you agree to Amazon.com's . . . conditions of use' – is not bold, capitalized, or conspicuous in light of the whole webpage.").

### B. There was no assent, through the iFit Terms, to arbitration of disputes arising at the time of the earlier NordicTrack treadmill purchase.

Apart from the issue of constructive notice with respect to the iFit Terms, there are two broader and related issues that preclude forced arbitration of a prior NordicTrack

treadmill dispute based upon the iFit Terms: 1) Plaintiffs Barclay and Nordick, and Plaintiff Ovsak's husband, did not assent to arbitration of the separate treadmill transaction with NordicTrack through a later purchase of an iFit service; and 2) the iFit arbitration terms cannot be applied retroactively to NordicTrack treadmill purchases.

The iFit Terms relate, unsurprisingly, to iFit subscriptions. They provide, *inter alia*, that iFit can discontinue access to the service, they grant the consumer a license to use the service for noncommercial use, they list prohibited uses of the iFit service, they list iFit subscription terms (including automatic renewal), they address user content and social media, they provide a consent to receive mobile communications, they limit liability "arising out of or in connection with the use of an ICON site, ICON service, user content, or of any website referenced or linked to from an ICON site" to $100 or the amounts received for ICON services in the twelve months preceding the claim, and they state that consumers assume the risk of using ICON sites and services.  MTC, Brammer Decl., Exs. 5-8. The iFit arbitration clause, buried at the bottom of the iFit Terms, states that ICON may require arbitration of "disputes arising from the use of these Terms of Use or the ICON sites . . . ." *Id.*

Even if Plaintiffs had read the iFit Terms of Use in detail at the time they registered, and had clearly agreed to them, no reasonable consumer would interpret the iFit Terms to require arbitration of a dispute relating to a prior NordicTrack treadmill purchase. *See Wexler v. AT&T Corp.*, 211 F. Supp. 3d 500 (E.D.N.Y. 2016) (motion to compel arbitration denied where "no reasonable person" would think that by checking a box accepting cell phone service they were obligated to arbitrate every dispute under

AT&T's corporate umbrella).[5] This is particularly so where iFit itself has stated that the two transactions—purchase of a NordicTrack treadmill and an iFit subscription—are entirely separate even when done at the same time. *See* p. 4, *supra.*

This is not a question of the scope of arbitration, which Defendants contend must be determined by the arbitrator; it is a question of assent and basic contract formation. Assuming the scope of iFit arbitration is as Defendants assert—*i.e.*, it covers prior NordicTrack treadmill purchases—the Court can and should find that there was no mutual assent. *See Bosse v. New York Life Ins. Co.*, No. 19-CV-016, 2019 WL 5967204, at *3 (D.N.H., Nov. 13, 2019) (while scope is determined by arbitrator, preliminary question of assent is determined by the court, and "a party cannot be compelled to arbitrate an unrelated dispute where it is simply fortuitous that the parties happened to have a contractual relationship") (citation omitted).

Contracts to arbitrate may not be formed through "stealth tactics." *Norcia*, 2014 WL 4652332, at *4 (motion to compel denied where no assent can be based on inconspicuous provisions of document that's contractual nature is not obvious). That is

---

[5] *Wexler* was factually distinguished in *Stinson v. Best Buy Co.*, No. 0:18-CV-295, 2018 WL 3850739, at *10 (D. Minn. June 26, 2018), *report and recommendation adopted*, No. 0:18-CV-295, 2018 WL 3848443 (D. Minn. Aug. 13, 2018). In *Stinson*, a motion to compel arbitration was granted where the plaintiff's claims were "inextricably intertwined" with, arose out of, and depended upon the terms of the Citibank credit agreement containing the arbitration provision. *Id.* That is factually inapposite to the situation here, where the claims neither arise out of nor depend upon the iFit registration or its Terms, and in fact arise from an entirely separate transaction.

precisely what Defendants' argument proposes, and it need not and should not be countenanced by this Court.

Defendants' argument that the iFit Terms require arbitration of disputes arising from prior NordicTrack treadmill purchases also fails because the iFit Terms, as applied to arbitration, cannot be applied retroactively. Retroactive application of arbitration is often rejected were a defendant illogically claims that a *prior* dispute "arises" out of a *subsequent* agreement. *See, e.g., Austin Freight Sys., Inc. v. W. Wind Logistics, Inc.*, No. 18-CV-4832, 2019 WL 2088056, at *4 (N.D. Ill. May 13, 2019) (collecting cases); *Newbanks v. Cellular Sales of Knoxville, Inc*., 548 F. App'x 851, 954 (4th Cir. 2013) (rejecting arbitration of earlier claims that did not "arise" out of the agreement); *Sec. Watch, Inc. v. Sentinel Syst., Inc.*, 176 F.3d 369, 372 (6th Cir. 1999) (same); *Smith v. Swift Transp., Co., Inc*., No. 13-CV-2247, 2013 WL 5551804, at *3 (D. Kan. Oct. 7, 2013) (same).[6]

Applying the iFit arbitration clause to an earlier NordicTrack treadmill purchase would, for the reasons stated above, be putting a square peg into a round hole.

---

[6] The cases cited by Defendants on this point are factually inapposite. MTC at 13, n. 6, citing *Levin v. Alms & Assocs., Inc*., 634 F.3d 260, 267 (4th Cir. 2011) and *Nanosolutions, LLC v. Prajza*, 793 F. Supp. 2d 46, 60 (D.D.C. 2011). In *Levin*, the arbitration clause was applied retroactively where the business relationship was "seamlessly renewed" and the claims were "part-and-parcel" of the longstanding financial advising relationship between the parties. *Levin*, 634 F.3d at 269. In *Nanosolutions*, the arbitration clause addressing all "conflicts between parties" applied retroactively to an employment dispute where the current agreement had language referencing the prior employment and attempted to resolve those issues. *Nanosolutions*, 793 F.3d at 60-61.

Defendants' argument goes well beyond any reasonable concept of mutual assent and should be rejected.

### C. The iFit arbitration provision cannot apply to Erin Ovsak, for the additional reasons that she did not subscribe to iFit, and the arbitration provision was not in place at the time her husband subscribed.

The iFit-related arbitration claims as they relate to Plaintiff Erin Ovsak fail for two additional reasons: 1) Jay Ovsak—not Erin Ovsak—entered into the iFit subscription; and 2) at the time Mr. Ovsak entered into the iFit subscription in 2016, the iFit Terms contained no arbitration clause. And, as Defendants should be aware but failed to note, Jay Ovsak's iFit membership expired on April 3, 2018. Ovsak Decl., ¶ 6; Ex. 1. With respect to Erin Ovsak, Defendants attempt to compel arbitration based upon a now-expired subscription agreement entered into by her husband *after* her treadmill purchase and at a time when there was no iFit arbitration provision, because at a later point ICON unilaterally modified her husband's iFit agreement, apparently without notice to Jay Ovsak, to add arbitration. This negates the fundamental principle that arbitration is a matter of contract and is the epitome of "foisting" arbitration on a party. *Howard,* 748 F.3d at 977 (arbitration is "not something to be foisted on the parties at all costs.").

Defendants claim that because a member of Erin Ovsak's household agreed to the iFit Terms, Erin Ovsak is bound by the (later) arbitration provision that was added to that agreement. MTC at 14-16. It is true that Jay Ovsak, Erin Ovsak's husband, subscribed to iFIT after Erin Ovsak made her NordicTrack treadmill purchase. Ovsak Decl., ¶ 5. This

does not, as Defendants suggest, render Erin Ovsak subject to arbitration as a third-party beneficiary of the iFit agreement.[7]

As Defendants acknowledge, third-party beneficiaries are determined by the intentions of the parties to the contract.  MTC at 14 (citing *Palmer v. Davis*, 808 P.2d 128, 131 (Utah Ct. App. 1991)). "Parties are presumed to be contracting for themselves only," a presumption that can be overcome only if the intent to make someone a third-party beneficiary is "clearly written or evidenced in the contract." *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 362 (5th Cir. 2003) (citations omitted) (affirming denial of motion to compel arbitration and rejecting estoppel and third-party beneficiary arguments).

The intention of ICON in this respect, as reflected in the iFit Terms, is clear: "You may not assign your rights and obligations under these Terms of Use to any party, and any purported attempt to do so will be null and void." MTC, Brammer Decl., Ex. 8. This does not reflect an intention that there will be third-party beneficiaries of the contract, and in fact reflects the opposite.

Even were Erin Ovsak the contracting party, Defendants could not use the modification clause in the iFit agreement to apply the later-added arbitration clause

---

[7] Jay Ovsak did not act as the "agent" of his spouse. MTC at 15, n. 15; *see* Ovsak Decl., ¶ 5. Erin Ovsak did not create or direct Jay Ovsak to create an iFit account on behalf of the household (Jay Ovsak's membership is individual); Erin Ovsak did not use Jay Ovsak's email to create the iFit account; and Erin Ovsak has not created her own individual iFit account.  *Id.* Erin Ovsak's husband created the iFit account of his own volition. *Id.*

retroactively for the following reasons: 1) the modification clause itself prevents it; and 2) unilateral modification to add arbitration requires some notice to the consumer.

The iFit Terms' modification clause states in part that "no revisions to these Terms of Use will apply to any dispute between you and ICON that arose prior to the effective date of those revisions." MTC, Brammer Decl., Ex. 8. Defendants seek to apply an arbitration clause that was added to the iFit Terms after the dispute between Ovsak and NordicTrack arose, which was at the time of purchase.

In any case, in the arbitration context, courts require more than a modification clause coupled with a website change to find that consumers have agreed to an added arbitration clause: there must be some notice to consumer that the arbitration clause has been added. *See, e.g., Moore-Dennis v. Franklin*, Nos. 1131142, 1131176, 2016 WL 761698, at \*7-10 (Ala. Feb. 26, 2016) (citing *Martin v. Wells Fargo Bank, NA*, No. 12-CV-06030, 2013 WL 6236762 (N.D. Cal. Dec. 2, 2013); *Schnabel v. Trilegiant Corp.*, 697 F.3d 110 (2d Cir. 2012); *Versmesse v. AT&T Mobility, LLC*, No. 3:13-CV-171, 2014 WL 856447 (N.D. Ind. Mar. 4, 2014); *Karzon v AT&T, Inc.*, No. 4:13-CV-2002, 2014 WL 51331 (E.D. Mo. 2014); *Hudyka v. Sunoco, Inc.*, 474 F. Supp. 2d 712 (E.D. Pa. 2007); *Rodman v. Safeway, Inc.*, No. 11-CV-03003, 2015 WL 604985, at \* 11 (N.D. Cal. Feb. 12, 2015). It is Defendants' burden to provide evidence of this notice, and their Motion to Compel provides none. Under these circumstances, Plaintiff Ovsak cannot be charged with notice, and assent is impossible.

Defendants have failed to prove that any Plaintiff mutually assented to any arbitration clause or to the delegation of arbitration. For this reason, Defendants' motion should be denied.[8]

## IV.    No further discovery is necessary

The relevant and material facts are not in dispute. Defendants have presented insufficient competent evidence to demonstrate the existence of an arbitration agreement between Plaintiffs and ICON.  It is their burden to do so. *Shockley*, 929 F.3d at 1017. The Court should conclude as a matter of law that there was no mutual assent and deny Defendants' motion to compel. *See Engen*, 2020 WL 1816043, at *5 (denying motion to compel where record insufficient as a matter of law to show assent); *Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1334 (11th Cir. 2016) (affirming denial of motion to compel arbitration without summary trial).

---

[8] Assuming it were to be viewed that Plaintiffs assented to arbitration—which they did not—enforcement of an arbitration provision, including delegation, would be unconscionable, inasmuch as it would force a one-sided (ICON can require consumer to arbitrate but can itself use the court system to sue) contract of adhesion provision upon Plaintiffs. *See Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159, 169-71 (5th Cir. 2004) (upholding district court's ruling that an arbitration agreement was unconscionable where consumers' likely claims were bound to arbitration while cellular provider's claims could go to court). This is an issue of basic contract formation for the court, not the arbitrator, to decide. *See Fallo v. High-Tech Inst.*, 559 F.3d 874, 880 (8th Cir. 2009) (holding incorporation of AAA rules delegated arbitrability to arbitrator, but court determined whether agreement was unconscionable).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that Defendants' Motion to Compel Arbitration be denied.

Respectfully submitted,

Dated: May 21, 2020                    **HELLMUTH & JOHNSON, PLLC**

*/s/ Nathan D. Prosser*
Nathan D. Prosser (MN 0329745)
8050 West 78th Street
Edina, MN 55439
Telephone: (952) 941-4005
Fax: (952) 941-2337
*nprosser@hjlawfirm.com*

Karl L. Cambronne (MN 0014321)
Bryan L. Bleichner (MN 0326689)
CHESTNUT CAMBRONNE, PA
100 Washington Avenue South, Suite 1700
Minneapolis, MN 55401
Telephone: (612) 339-7300
Fax: (612) 336-2940
*kcambronne@chestnutcambronne.com*
*bbleichner@chestnutcambronne.com*

W.B. Markovits (*pro hac vice*)
Terence R. Coates (*pro hac vice*)
Justin C. Walker (*pro hac vice*)
MARKOVITS, STOCK & DEMARCO, LLC
3825 Edwards Road, Suite 650
Cincinnati, OH 45209
Phone: (513) 651-3700
Fax: (513) 665-0219
*bmarkovits@msdlegal.com*
*tcoates@msdlegal.com*
*jwalker@msdlegal.com*

*Counsel for Plaintiffs and Proposed Class*

30