IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| TEEDA BARCLAY, ERIN OVSAK, and NICOLE NORDICK, individually, and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ICON HEALTH & FITNESS, INC., and NORDICTRACK, INC.,<br><br>Defendants. | Case No. 0:19-cv-02970-ECT-DTS<br><br><br>**DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL ARBITRATION** |

# TABLE OF CONTENTS

INTRODUCTION ......................................................................................................1

ARGUMENT ......................................................................................................... 2

I.  Plaintiffs had constructive notice of and agreed to the iFit Terms, and thus should be ordered to arbitrate as a matter of law. .......................................... 3

    A.  The undisputed evidence demonstrates that Barclay and Nordick are bound by the iFit Terms. .................................................... 3

    B.  The undisputed evidence demonstrates that Ovsak is bound by the iFit Terms. .........................................................................................8

II.  Plaintiffs ask this Court to address issues that must be resolved by an arbitrator. ....................................................................................................... 13

    A.  Plaintiffs' arguments concerning the scope and validity of the arbitration agreement must be presented to the arbitrator.................14

    B.  Plaintiffs' scope and unconscionability arguments fail on the merits. ...................................................................................................16

III.  If the court concludes that there is not enough evidence to compel arbitration at this time, the Court should order limited, targeted discovery. .................21

CONCLUSION........................................................................................................24

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*3M Co. v. Amtex Sec., Inc.*,
542 F.3d 1193 (8th Cir. 2008) .................................................................................19

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) ................................................................................... 12, 20

*Austin Freight Sys., Inc. v. West Wind Logistics, Inc.*,
No. 18-cv-4832, 2019 WL 2088056 (N.D. Ill. May 13, 2019) ...................................18

*Brady v. Park*,
302 P.3d 1220 (Utah Ct. App. 2013) .......................................................................16

*Brehany v. Nordstrom, Inc.*,
812 P.2d 49 (Utah 1991) ....................................................................................... 13

*Carnival Cruise Lines, Inc. v. Shute*,
499 U.S. 585 (1991) .............................................................................................. 6

*Cent. Fla. Invs., Inc. v. Parkwest Assocs.*,
40 P.3d 599 (Utah 2002) ...................................................................................17, 19

*Crawford v. Beachbody, LLC*,
No. 14-cv-1583, 2014 WL 6606563 (S.D. Cal. Nov. 5, 2014) ...................................6

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985) ............................................................................................. 2

*DeJohn v. The .TV Corp. Int'l*,
245 F. Supp. 2d 913 (N.D. Ill. 2003) ....................................................................... 2

*Fallo v. High-Tech Institute*,
559 F.3d 874 (8th Cir. 2009) ................................................................................. 15

*Fteja v. Facebook, Inc.*,
841 F. Supp. 2d 829 (S.D.N.Y. 2012) ..................................................................... 6

*GE Energy Power Conversion France SAS, Corp. v. Outokumpu
Stainless USA, LLC,*
--- S. Ct. ---, 2020 WL 2814297 (June 1, 2020) ........................................................10

*Green Tree Fin. Corp.-Ala. v. Randolph,*
531 U.S. 79 (2000) ........................................................................................16

*Henry Schein, Inc. v. Archer & White Sales, Inc.,*
139 S. Ct. 524 (2019) ....................................................................................14

*Hubbert v. Dell Corp.,*
835 N.W.2d 113 (Ill. Ct. App. 2005) ............................................................ 7

*Lamps Plus, Inc. v. Varela,*
139 S. Ct. 1407 (2019).............................................................................14, 15

*Levin v. Alms & Associates, Inc.,*
634 F. 3d 260 (4th Cir. 2011) ......................................................................18

*Litton Fin. Printing Div. v. N.L.R.B.,*
501 U.S. 190 (1991) ...................................................................................... 2

*Lopez v. Terra's Kitchen, LLC,*
331 F. Supp. 3d 1092 (S.D. Cal. 2018) ........................................................ 7

*M.A. Mortenson Co. v. Saunders Concrete Co., Inc.,*
676 F.3d 1153 (8th Cir. 2012) ...................................................................... 20

*Madol v. Dan Nelson Auto. Grp.,*
372 F.3d 997 (8th Cir. 2004) ........................................................................16

*MedCam, Inc. v. MCNC,*
414 F.3d 972 (8th Cir. 2005) ........................................................................17

*Miller v. Corinthian Colls., Inc.,*
769 F. Supp. 2d 1336 (D. Utah 2011) .....................................................19, 20

*Molnar v. 1-800-Flowers.com, Inc.,*
No. 08-cv-0542, 2008 WL 4772125 (C.D. Cal. Sept. 29, 2008).....................23

*Moore-Dennis v. Franklin,*
201 So. 3d 1131 (Ala. 2016) ........................................................................ 13

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) ................................................................................. 17, 19

*Newbanks v. Cellular Sales of Knoxville, Inc.*,
    548 Fed. App'x 851 (4th Cir. 2013) ........................................................ 18

*Nguyen v. Barnes & Noble Inc.*,
    763 F.3d 1171 (9th Cir. 2014) ................................................................. 7

*Nicosia v. Amazon.com, Inc.*,
    384 F. Supp. 3d 254 (E.D.N.Y. 2019) ......................................... 6, 8, 10, 11

*Nicosia v. Amazon.com, Inc.*,
    834 F.3d 220 (2d Cir. 2016) ................................................................... 8

*O'Callaghan v. Uber Corp. of Cal.*,
    No. 17-cv-2094, 2018 WL 3302179 (S.D.N.Y. July 5, 2018), *appeal
    dismissed*, 2019 WL 1958696 (2d Cir. Mar. 11, 2019) ............................... 7

*Patel v. Regions Bank*,
    No. 18-cv-00796, 2019 WL 2601343 (M.D. La. June 25, 2019) ................... 10

*PRM Energy Sys., Inc. v. Primenergy, L.L.C.*,
    592 F.3d 830 (8th Cir. 2010) ................................................................. 19

*Pro Tech Indus., Inc. v. URS Corp.*,
    377 F.3d 868 (8th Cir. 2004) .................................................................. 2

*Rent-A-Center, West, Inc. v. Jackson*,
    561 U.S. 63 (2010) ............................................................................... 15

*Rodman v. Safeway, Inc.*,
    No. 11-cv-03003, 2015 WL 604985 (N.D. Cal. Feb. 12, 2015) ................... 12

*Ryan v. Dan's Food Stores, Inc.*,
    972 P.2d 395 (Utah 1998) .................................................................... 20

*Schnabel v. Trilegiant Corp.*,
    697 F.3d 110 (2d Cir. 2012) .................................................................. 12

*SCI Minn. Funeral Servs., Inc. v. Washburn-McReavy Funeral Corp.*,
    795 N.W.2d 855 (Minn. 2011) ........................................................... 2, 16

*Sec. Watch, Inc. v. Sentinel Sys, Inc.*,
    176 F.3d 369 (6th Cir. 1999)......................................................................................18

*Sgouros v. TransUnion Corp.*,
    817 F.3d 1029 (7th Cir. 2016) ................................................................................... 7

*Smith v. Swift Transp. Co.*,
    No. 13-cv-2247, 2013 WL 5551804 (D. Kan. Oct. 7, 2013).......................................18

*Tompkins v. 23andMe, Inc.*,
    840 F.3d 1016 (9th Cir. 2016) ................................................................................. 13

*Traylor v. I.C. Sys., Inc.*,
    No. 11-cv-2968, 2012 WL 1883814 (D. Minn. May 22, 2012) (Frank, J.) ................ 24

*Wiseley v. Amazon.com, Inc.*,
    709 Fed. App'x 862 (9th Cir. 2017) ......................................................................... 13

*Wootten v. Fisher Invs., Inc.*,
    688 F.3d 487 (8th Cir. 2012) ...................................................................................16

## Statutes

9 U.S.C. § 4.............................................................................................................. 2

## Other Authorities

2 Williston on Contracts § 6:3 (4th ed.)....................................................................16

## INTRODUCTION

Plaintiffs' memorandum in opposition to Defendants ICON Health & Fitness, Inc. and NordicTrack, Inc.'s (collectively, "ICON") motion to compel arbitration confirms that the Court should grant ICON's motion and compel Plaintiffs to arbitrate their claims, individually, against ICON.

The undisputed *material* facts demonstrate that each of the remaining Plaintiffs had at least constructive notice of, and agreed to, the iFit Terms, which contain an arbitration agreement. Teeda Barclay and Nicole Nordick agreed to arbitrate their claims against ICON when they signed for iFit memberships, manifesting their assent to be bound by clicking "PLACE ORDER," or a similar click button. And although Erin Ovsak did not personally sign up for iFit, well-established principles of estoppel (reaffirmed by the Supreme Court earlier this week) require Ovsak to arbitrate her claims against ICON too, since her husband agreed to the iFit Terms (and the modification clause therein).

Unable to contest these material facts, Plaintiffs trotted out a host of irrelevant facts to contest arbitration:

- Through a Venn diagram, Plaintiffs assert that NordicTrack treadmill purchasers and iFit subscribers do not necessarily overlap. Plaintiffs' Mem. of Law in Opp. to Defs.' Mot. to Compel Arbitration at 4 [ECF No. 36] (hereinafter "MIO"). But the household of every Plaintiff *does* fall in the diagram's center.

- Plaintiffs assert that they did not actually read the NordicTrack Terms or the iFit Terms (collectively, "Terms"). MIO at 9-10, 21. But Plaintiffs' "failure to read [the] contract is not a get out of jail

free card." *DeJohn v. The .TV Corp. Int'l*, 245 F. Supp. 2d 913, 919 (N.D. Ill. 2003).

- Plaintiffs assert that they did not consider whether the Terms could bind them to arbitration. MIO at 9-10. But caselaw cited by Plaintiffs recognizes that mutual assent is "tested under an objective standard." *SCI Minn. Funeral Servs., Inc. v. Washburn-McReavy Funeral Corp.*, 795 N.W.2d 855, 864 (Minn. 2011).

- Plaintiffs assert that Barclay and Ovsak (but not Nordick) no longer have iFit memberships. MIO at 21 n.4. But even if true,[1] Plaintiffs' claims "involve[] facts and occurrences that arose before expiration" of the contract and, as a result, "arise under the contract." *Litton Fin. Printing Div. v. N.L.R.B.*, 501 U.S. 190, 205-06 (1991).

When it comes to the *material* facts, the parties are either in agreement or Plaintiffs are notably silent. In these circumstances, the Federal Arbitration Act ("FAA") "mandates that district courts *shall* direct the parties to proceed to arbitration." *Pro Tech Indus., Inc. v. URS Corp.*, 377 F.3d 868, 871 (8th Cir. 2004) (quoting *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 218 (1985)); *see also* 9 U.S.C. § 4.

## ARGUMENT

Plaintiffs' claims belong in arbitration because, under widely accepted principles governing internet commerce, each remaining Plaintiff (or their spouse) agreed to the iFit Terms. The Court should order Plaintiffs to arbitrate their claims, including all gateway questions of arbitrability. Alternatively, there are at the very least disputed issues of material fact regarding whether any Plaintiff agreed to

---

[1] ICON's records reflect that these Plaintiffs downgraded to free memberships but did not cancel their iFit accounts.

arbitration, and the parties should be ordered to engage in limited and targeted discovery regarding their agreement to arbitrate.

## I.   Plaintiffs had constructive notice of and agreed to the iFit Terms, and thus should be ordered to arbitrate as a matter of law.

The undisputed evidence demonstrates that each remaining Plaintiff agreed to arbitrate their claims against ICON. Barclay and Nordick had constructive (if not actual) notice of, and agreed to, the iFit Terms, including their arbitration clause. And Ovsak is bound by the iFit Terms, by virtue of her husband's agreement to the iFit Terms and the modification clause therein.[2]

## A.   The undisputed evidence demonstrates that Barclay and Nordick are bound by the iFit Terms.

At the time that Barclay and Nordick signed up for iFit memberships, the sign-up process on iFit.com and on the touchscreen treadmill console involved what some courts refer to as a hybrid sign-up wrap agreement, similar to that which is

---

[2] When it comes to the NordicTrack Terms, Plaintiffs attack a strawman, namely, that all four Plaintiffs had constructive notice of the NordicTrack Terms. MIO at 17-19. ICON's actual constructive-notice argument with respect to the NordicTrack Terms was limited to Larry Schwartz who has now, of course, voluntarily dismissed himself from this lawsuit. *See* Plaintiff Larry Schwartz's Notice of Voluntary Dismissal of Claims Without Prejudice [ECF No. 42]. As a result, this reply memorandum does not respond to Plaintiffs' argument regarding whether the NordicTrack.com checkout page provides constructive notice of the NordicTrack Terms. The three remaining Plaintiffs could have had *actual notice* of the NordicTrack Terms, which ICON should be permitted to explore through discovery and a summary trial. *See* Section III, *infra*.

present on the iFit mobile app.[3] When Barclay and Nordick would have registered for iFit memberships on iFit.com, under a button that had to be clicked to proceed and read "PLACE ORDER," appeared the statement: "By clicking 'PLACE ORDER,' you agree to the Terms of Use and Privacy Policy." Am. Brammer Decl. Ex. 10. The phrase "Terms of Use" appeared in blue font and hyperlinked to the iFit Terms in effect. Am. Brammer Decl. ¶ 20, Ex. 10.



---

[3] ICON's opening brief mistakenly asserted that since 2015 iFit.com had a clickwrap agreement as part of the sign-up process. Submitted with this brief is an amended declaration from Chase Brammer that corrects that error. ICON first implemented a clickwrap agreement on iFit.com in February 2020. Am. Brammer Decl. ¶ 7. Before then, at the time that Barclay, Nordick, and Jay Ovsak signed up for iFit memberships, iFit.com had a hybrid, sign-up wrap agreement. *See* Am. Brammer Decl. ¶¶ 19-22, Exs. 9, 10, 11.

*See id.* Ex. 10. At the same time, for any user that activated a Bluetooth-equipped NordicTrack treadmill on iFit.com, a similar statement appeared under a button with the phrase "START TRIAL."



*Id.* Ex. 11; *see also id.* ¶ 21.

These iFit.com sign-up processes are similar to what was presented on iFit's mobile app, in which, under a click button that read "CREATE ACCOUNT," appeared the statement: "By clicking next, you agree to the <u>Terms of Use</u> and <u>Privacy Policy</u>," with hyperlinks to each. Am. Brammer Decl. ¶ 8, Ex. 3. The iFit.com sign-ups were also similar to the optional iFit sign-up on ICON's touchscreen-equipped treadmills,[4] in which, next to a button that read "NEXT," appeared the statement:

---

[4] According to the allegations in Plaintiffs' Second Amended Complaint, Nordick appears to have purchased a touchscreen-equipped treadmill. *Compare* Second Am. Compl. ¶ 22 [ECF No. 22] (hereinafter "SAC"), *with* T 7.5 S, NordicTrack, *https://www.nordictrack.com/treadmills/t75s* (last visited June 3, 2020).

"By continuing, you agree to our **Medical Disclaimer, Terms of Use,** and **Privacy Policy**," with links to each of the bolded terms. *Id.* ¶ 22, Ex. 12.

Sign-up wrap agreements like those used by ICON on iFit.com, on its mobile app, and on its touchscreen-equipped treadmills are routinely enforced, with the hyperlink providing "the twenty-first century equivalent of turning over the cruise ticket" to review the applicable terms. *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 839-40 (S.D.N.Y. 2012) (analogizing to *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585 (1991)). The nomenclature used to describe these agreements is not always consistent, but many courts describe similar sign-up wrap agreements as "hybrid clickwrap/browsewrap agreement[s]." *Crawford v. Beachbody, LLC*, No. 14-cv-1583, 2014 WL 6606563, at *3 (S.D. Cal. Nov. 5, 2014). Whatever the process is called, the result is the same—courts have "no difficulty finding" that such sign-up wrap agreements provide "reasonably conspicuous," constructive notice of the terms, and that the "PLACE ORDER" button equivalent requires "the user to manifest their assent" to those terms. *Nicosia v. Amazon.com, Inc.*, 384 F. Supp. 3d 254, 266, 269 (E.D.N.Y. 2019) (collecting cases).

Applying this consistent line of authority leads to a single, indisputable conclusion—Barclay and Nordick had constructive notice of the iFit Terms, irrespective of whether they signed up for iFit memberships via the mobile app, on iFit.com as part of the registration or treadmill activation processes, or on the

treadmill console touchscreen. *See* Defs.' Mem. of Law in Support of Mot. to Compel Arbitration at 12 [ECF No. 30] (hereinafter "MTC"). Crucially, the Terms appeared below or next to the "PLACE ORDER" button or its equivalent and, in the case of the iFit.com agreements, appeared in blue hyperlinked font. *See Hubbert v. Dell Corp.*, 835 N.W.2d 113, 121 (Ill. Ct. App. 2005) (discussing internet users' familiarity with blue hyperlinks).[5] Armed with constructive (if not actual) notice of the iFit Terms, Barclay and Nordick then manifested assent to those terms by clicking the "PLACE ORDER" button or its equivalent.

Even the cases that Plaintiffs cite in their opposition memorandum demonstrate that courts have consistently recognized that "[t]here is nothing automatically offensive about [sign-up wrap] agreements, as long as the layout and language of the site give the user reasonable notice that a click will manifest assent to an agreement." *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1033-34 (7th Cir. 2016); *see also O'Callaghan v. Uber Corp. of Cal.*, No. 17-cv-2094, 2018 WL 3302179, at *7, n.2 (S.D.N.Y. July 5, 2018) (enforcing hybrid wrap agreement and

---

[5] The presence of the blue hyperlink on the iFit.com registration and activation pages is also one of the many reasons that the iFit agreements are distinguishable from those in *Nguyen v. Barnes & Noble Inc.* and *Lopez v. Terra's Kitchen, LLC*. MIO at 18-19; *see Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1174 (9th Cir. 2014) (noting that hyperlinks appeared "in green typeface in the lower lefthand corner of every page in the online checkout process"); *Lopez v. Terra's Kitchen, LLC*, 331 F. Supp. 3d 1092, 1101 (S.D. Cal. 2018) (describing terms hyperlink that appeared "in green typeface" and was "buried at the bottom of Defendant's webpage").

compelling arbitration), *appeal dismissed*, 2019 WL 1958696 (2d Cir. Mar. 11, 2019). For example, Plaintiffs cite the Second Circuit's decision in *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220 (2d Cir. 2016), in support of their argument that ICON did "not provide constructive notice" of the iFit Terms. MIO at 22. Plaintiffs omit, however, that in *Nicosia* the Second Circuit was reviewing an order granting a motion to dismiss and merely held that "factual questions remain[ed] as to the formation of the agreement to arbitrate." *Nicosia*, 834 F.3d at 238 n.7. On remand, and after engaging in "limited and focused" discovery, Amazon moved to compel arbitration and the district court *granted* Amazon's motion based on a virtually identical sign-up wrap agreement as the one for iFit. *Nicosia*, 384 F. Supp. 3d at 297 (quoting Report & Recommendation).

Consistent with the great weight of authority, this Court should conclude that Barclay and Nordick had constructive notice of the iFit Terms and agreed to those terms, including their arbitration agreement, by signing up for iFit and clicking the "PLACE ORDER" button, or its equivalent. The Court should therefore require Barclay and Nordick to arbitrate their disputes with ICON.

**B.    The undisputed evidence demonstrates that Ovsak is bound by the iFit Terms.**

Under well-recognized principles of estoppel, Ovsak too must arbitrate her claims against ICON, given her admission that her husband registered for an iFit membership shortly after she purchased their household treadmill. Barclay Decl. ¶ 5

8

[ECF 38]; *see also* Am. Brammer Decl. ¶ 15. And both Ovsak and her husband are bound by the arbitration agreement in the 2018 iFit Terms, due to the previous terms' modification clause. *Id.* ¶ 12, Ex. 6.

Like Barclay and Nordick, Ovsak's husband, Jay Ovsak, signed up for iFit and, in so doing, agreed to the iFit Terms through a sign-up wrap agreement. When Jay Ovsak signed up for an iFit membership, the phrase "By clicking submit, you agree to the **Terms of Service**" appeared below the purchase button, with the phrase "Terms of Service" appearing in bold, blue font and hyperlinking directly to the iFit Terms in effect.



Am. Brammer Decl. ¶ 19, Ex. 9. Just as a similar sign-up wrap agreement provided constructive notice of, and assent to, the iFit Terms for Barclay and Nordick, it too resulted in a binding agreement between ICON and Jay Ovsak. *See* Section I.A., *supra*.

Ovsak cannot avoid arbitration just because her husband, Jay Ovsak, was the one to sign up for iFit. Just this week, the United States Supreme Court reiterated

that equitable estoppel doctrines may be used to enforce an arbitration agreement in a case involving a non-signatory to that agreement. *GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, --- S. Ct. ---, 2020 WL 2814297, at \*4-5 (June 1, 2020). Although Ovsak asserts that she did not direct her husband to create an iFit account on behalf of their household, her declaration does *not* dispute that she *directly benefitted* from or used that iFit membership. In such circumstances, the law is clear: a party is equitably estopped from avoiding arbitration. *See* MTC at 14-15; *see also Patel v. Regions Bank*, No. 18-cv-00796, 2019 WL 2601343, at \*4 (M.D. La. June 25, 2019) ("Direct benefit estoppel applies when a non-signatory knowingly exploits the agreement containing the arbitration clause.").

Put simply, Ovsak cannot use password sharing "as a back door to undermine the contractual landscape governing internet commerce." *Nicosia*, 384 F. Supp. 3d at 272. And Plaintiffs' counsel cannot pick and choose which family members in a household using a shared product should be named plaintiffs in a putative class action. That Plaintiffs do not even respond to this argument or the case law that ICON cites confirms that Ovsak is bound by the iFit Terms to the same extent as her husband.[6]

---

[6] Plaintiffs are also incorrect that ICON did not intend for Ovsak to be bound by Jay Ovsak's iFit membership. MIO at 27. The whole "purpose of an 'account' on a

Plaintiffs' alternative argument—that the 2015 iFit Terms' modification clause did not operate to bind Ovsak to the later-added arbitration agreement— ignores the terms' plain language and is without merit for at least two reasons. MIO at 27-28.

*First*, Plaintiffs invoke the wrong modification clause. In arguing that "the modification clause itself prevents" its retroactive applicability, Plaintiffs cite a clause *not* in the 2015 iFit Terms to which Jay Ovsak agreed but in the 2019 iFit Terms. MIO at 28. Plaintiffs ignore the fact that the *relevant* modification clauses in the 2015, 2016, and 2018 iFit Terms (the last of which added the arbitration agreement) do not include *any* retroactivity-limiting language. Am. Brammer Decl. Ex. 4 at 2, Ex. 5 at 5, Ex. 6 at 2. Thus, the undisputed evidence is that the *relevant* modification clauses did not prevent Ovsak from being bound by the 2018 iFit Terms, including the arbitration agreement.

*Second*, Plaintiffs' argument is inconsistent with the relevant modification clauses' text. Plaintiffs ignore the modification clause's unambiguous statement that it is the iFit user's "responsibility to review this site and these Terms of Use from

---

platform like [iFit] is to assume virtual personhood." *Nicosia*, 384 F. Supp. 3d at 272. ICON intended to bind the iFit user, and Ovsak at times was "the identity of the human user behind the scene" of that "virtual personhood." *Id.* An individual cannot "avoid the terms of a website by simply logging on to a friend's or relative's account instead of creating their own." *Id.* At a minimum, there is a fact dispute about the intentions of the parties, which must be explored in discovery. *See* Section III, *infra*.

time to time and to familiarize yourselves with any modifications." Am. Brammer Decl. Ex. 4 at 2.[7] An arbitration agreement "is a matter of contract," and must be placed "on an equal footing with other contracts" and enforced "according to [its] terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quotation marks omitted). Under the plain language of the 2015 and 2016 iFit Terms' modification clauses, the Ovsaks are bound by the arbitration agreement contained in the 2018 iFit Terms.

Plaintiffs cite a number of cases in arguing that notice beyond that called for in the relevant iFit Terms is required. MIO at 28. Most of the cited cases are inapposite because they concern whether a contract came into existence in the first instance, not whether a party effectively modified a preexisting contract. *See, e.g.*, *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 113 (2d Cir. 2012). Only two of the cited cases concern contract modification, and in neither case did the modification clause include a requirement that the user "review this site and these Terms of Use from time to time . . . to familiarize yourselves with any modifications." Am. Brammer Decl. Ex. 4 at 2; *see Rodman v. Safeway, Inc.*, No. 11-cv-03003, 2015 WL 604985, at *9 (N.D. Cal. Feb. 12, 2015) (stating that terms provided either that

---

[7] Even if the court were inclined to agree with Plaintiffs that further notice is required, ICON should be able to explore and prove through discovery and a summary trial whether Jay Ovsak had actual and/or constructive notice of the iFit Terms' modification. *See* Section III, *infra*.

party would "plan to notify you" or had "no responsibility to notify you"); *Moore-Dennis v. Franklin*, 201 So. 3d 1131, 1145 (Ala. 2016) (Shaw, J., concurring in result) (listing methods of permissible notice). In any event, those cases are certainly not binding here, and Plaintiffs have failed to identify any case applying Utah or Minnesota law that imposes an extra-textual notice requirement into a contract.[8]

*      *      *

The record before the Court demonstrates that each Plaintiff (or, in Ovsak's case, spouse) had at least constructive notice of and assented to the iFit Terms. No further legal analysis or discovery is needed for this Court to compel Plaintiffs to arbitrate their claims against ICON on an individual basis.

## II.   Plaintiffs ask this Court to address issues that must be resolved by an arbitrator.

Plaintiffs do not dispute that the iFit Terms' incorporation of the American Arbitration Association rules is unmistakable evidence that the parties intended for an *arbitrator*, not the Court, to resolve questions of arbitrability. Despite this

---

[8] To the extent that Plaintiffs are invoking an unconscionability argument regarding the modification clause, that argument must be made to the arbitrator. *See, e.g., Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1033 (9th Cir. 2016). Wherever presented, this argument is unlikely to succeed under Utah law, where "every contract is subject to an implied covenant of good faith." *See Brehany v. Nordstrom, Inc.*, 812 P.2d 49, 55 (Utah 1991); *see also Wiseley v. Amazon.com, Inc.*, 709 Fed. App'x 862, 864 (9th Cir. 2017) (concluding that "unilateral modification clause does not render the arbitration provision substantively unconscionable because Amazon is limited by the implied covenant of good faith and fair dealing" under Washington law).

unmistakable delegation, Plaintiffs nonetheless raise issues that must be resolved by an arbitrator. Binding Supreme Court precedent mandates that the Court reject Plaintiffs' invitation to wade into the arbitrator's territory. But even if the Court were inclined to do so, Plaintiffs' arguments do not, as a matter of law, defeat ICON's right to arbitrate Plaintiffs' claims.

### A.   Plaintiffs' arguments concerning the scope and validity of the arbitration agreement must be presented to the arbitrator.

Two Supreme Court decisions from last term confirm that this Court's decision must start and end with a determination that Plaintiffs agreed to the arbitration agreement in the iFit Terms. In the first, the Supreme Court reaffirmed that parties are free to delegate "gateway questions" of arbitrability to an arbitrator, including "whether the parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy." *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1416-17 (2019) (quotation marks omitted). In the second, the Supreme Court held in a 9-0 decision that "[w]hen the parties' contract delegates the arbitrability question to an arbitrator, a court . . . possesses no power to decide the arbitrability issue," even if the Court considers the argument for arbitrability to be "wholly groundless." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019).

Plaintiffs nonetheless devote substantial briefing to arguing that even if they agreed to the Terms, they do not need to arbitrate their claims against ICON for

three reasons: (1) the iFit Terms do not apply to Plaintiffs' claims; (2) the iFit Terms do not apply retroactively; and (3) the arbitration agreement is unconscionable. MIO at 22-23, 29 n.8. Although Plaintiffs attempt to cloak the first and second arguments in the language of assent, in essence, each argument concerns "whether a concededly binding arbitration clause applies to a certain type of controversy" and has therefore been delegated to an arbitrator. *See Lamps Plus, Inc.*, 139 S. Ct. at 1416-17; *see also Fallo v. High-Tech Institute*, 559 F.3d 874, 880 (8th Cir. 2009) (reversing order denying motion to compel and concluding that incorporation of "the AAA Rules is clear and unmistakable evidence that [the parties] intended to allow an arbitrator" to determine whether Plaintiffs' claims were arbitrable).[9] Plaintiffs' unconscionability argument is a challenge to the arbitration agreement as a whole's validity, and not to the delegation clause itself, and thus must also be resolved by an

---

[9] In *Fallo*, the only threshold question that the Eighth Circuit considered before compelling arbitration was whether the arbitration clause was unconscionable. 559 F.3d at 878-89. Importantly, however, *Fallo* pre-dates the Supreme Court's subsequent clarification that when the parties have (as here) delegated the question of arbitrability to the arbitrator, the *only* unconscionability challenge that may be resolved by the court is whether the delegation is, itself, unconscionable. *See Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 71 (2010). Plaintiffs raise no such challenge here, contending instead that the entire arbitration agreement is unconscionable. MIO at 29 n.8. This challenge must be resolved by the arbitrator. *See Rent-A-Center*, 561 U.S. at 71-72 (explaining that unless the plaintiff "challenged the delegation provision specifically, we must treat it as valid under [FAA] § 2, and must enforce it under §§ 3 and 4").

arbitrator. *Wootten v. Fisher Invs., Inc.*, 688 F.3d 487, 493-94 (8th Cir. 2012) (declining to rule on arbitration provision's enforceability).

### B.    Plaintiffs' scope and unconscionability arguments fail on the merits.

Given that the parties agreed to delegate the resolution of each of Plaintiffs' three gateway arbitrability issues to an arbitrator, the Court need not and should not reach the merits of Plaintiffs' arguments. Even on their merits, however, Plaintiffs' arguments regarding the validity and scope of the arbitration agreement fail as a matter of law. As the parties resisting arbitration, Plaintiffs "bear[] the burden of proving that the claims at issue are unsuitable for arbitration." *Madol v. Dan Nelson Auto. Grp.*, 372 F.3d 997, 999 (8th Cir. 2004) (quoting *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000)); *cf. Brady v. Park*, 302 P.3d 1220, 1227 (Utah Ct. App. 2013) ("[T]he parties challenging the provision[] bear the burden of demonstrating that the provision is unconscionable."). Plaintiffs have not come close to meeting their burden to prove that their claims are unsuitable for arbitration.

*First,* reasonable consumers would understand that the iFit Terms could apply to Plaintiffs' claims.[10] Under the FAA, an arbitration agreement's scope "is

---

[10] Of course, Plaintiffs' subjective understanding of the Terms is not relevant, and Plaintiffs' opposition memorandum doesn't argue otherwise. *See, e.g., SCI Minn. Funeral Servs*, 795 N.W.2d at 864; *see also* 2 Williston on Contracts § 6:3 (4th ed.) (describing the objective standard for manifesting assent).

given a liberal interpretation, with any doubts resolved in favor of arbitration." *MedCam, Inc. v. MCNC*, 414 F.3d 972, 975 (8th Cir. 2005); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). It is similarly "the policy of the law in Utah to interpret contracts in favor of arbitration." *Cent. Fla. Invs., Inc. v. Parkwest Assocs.*, 40 P.3d 599, 606 (Utah 2002) (quotation marks omitted).

In arguing that no reasonable consumer would conclude that Plaintiffs' claims fall within the scope of the arbitration clause, Plaintiffs overlook not only the FAA's interpretive principles, but also the description of the iFit Terms' scope contained in the terms' very first paragraph. That scope description explains that the iFit Terms apply to the use of *all* ICON websites, in addition to the use of "any downloadable applications, services, Content . . . or interface provided by us, including iFit Services." *See, e.g.*, Am. Brammer Decl. Ex. 6 at 2. Here, each of the three remaining Plaintiffs' claims against ICON plainly arise from their use of an ICON website—NordicTrack.com. *See, e.g.*, Cox Decl. Ex. 1 at 5 (showing ICON logo on NordicTrack.com); SAC ¶¶ 17, 20, 23 (explaining that Plaintiffs "reviewed NordicTrack's website"). Accordingly, the iFit Terms' plain language contradicts Plaintiffs' argument that no reasonable consumer would interpret those terms to encompass Plaintiffs' claims.

*Second*, the iFit Terms' arbitration agreement applies retroactively. Plaintiffs' argument to the contrary relies on distinguishable cases in which the relevant arbitration agreements by their own terms could not apply to disputes that pre-dated the agreement. MIO at 25. In three of Plaintiffs' cited cases, the arbitration clause explicitly limited its applicability to claims "*arising out of this Agreement*." *Austin Freight Sys., Inc. v. West Wind Logistics, Inc.*, No. 18-cv-4832, 2019 WL 2088056, at *4 (N.D. Ill. May 13, 2019).[11] The courts in those cases reasonably concluded that no claim could retroactively arise out of an agreement that had not yet come into existence. In the fourth case, the arbitration agreement applied only to disputes arising from the "Employee's employment." *Newbanks v. Cellular Sales of Knoxville, Inc.*, 548 Fed. App'x 851, 856 (4th Cir. 2013). Recognizing that the Fourth Circuit had "previously held that temporally-broad arbitration provisions may be retroactively applied to causes of action that accrued prior to the execution of the arbitration agreement," the court declined to retroactively apply the arbitration agreement because, before the parties agreed to arbitrate, "there existed no employment relationship." *Id.* at 856-57 (citing *Levin v. Alms & Associates, Inc.*, 634 F. 3d 260, 266-69 (4th Cir. 2011)).

---

[11] *See also Sec. Watch, Inc. v. Sentinel Sys, Inc.*, 176 F.3d 369, 372 (6th Cir. 1999) (providing for ADR of claims "arising out of or relating to the Products furnished pursuant to *this Agreement*" (emphasis added)); *Smith v. Swift Transp. Co.*, No. 13-cv-2247, 2013 WL 5551804, at *1 (D. Kan. Oct. 7, 2013) (providing for arbitration of disputes "arising out of or relating to *this Agreement*" (emphasis added)).

In stark contrast to these cases, the iFit Terms' arbitration clause applies to claims that arise from both the iFit Terms' agreement *and* the use of the ICON Sites. Am. Brammer Decl. Ex. 6 at 2. Plaintiffs could and did use an ICON Site—NordicTrack.com—before agreeing to the iFit Terms. SAC ¶¶ 17, 20, 23. Since the iFit Terms' scope encompasses disputes beyond those arising from the terms themselves, the arbitration agreement can and should be interpreted to apply retroactively to Plaintiffs' claims. *See* Am. Brammer Decl. Ex. 6 at 2.

At a minimum, however, it "cannot be said with positive assurance that the arbitration clause is not susceptible of an interpretation that" it applies retroactively. *3M Co. v. Amtex Sec., Inc.*, 542 F.3d 1193, 1199 (8th Cir. 2008). In that case, at worst, the iFit Terms are ambiguous and should be construed to apply retroactively. The FAA's requirement that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration" applies when "the problem at hand is the construction of the contract language." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25; *see also PRM Energy Sys., Inc. v. Primenergy, L.L.C.*, 592 F.3d 830, 836 (8th Cir. 2010). Here, again, Utah law is in accord. *Cent. Fla. Invs.*, 40 P.3d at 606.

*Finally*, the agreement is not substantively unconscionable just because ICON alone can choose to arbitrate. Parties attempting to invalidate an agreement as unconscionable "bear[] a heavy burden" under Utah law. *Miller v. Corinthian Colls., Inc.*, 769 F. Supp. 2d 1336, 1344 (D. Utah 2011). Even when "a contract term is

unreasonable or more advantageous to one party, the contract, without more, is not unconscionable." *Ryan v. Dan's Food Stores, Inc.*, 972 P.2d 395, 402 (Utah 1998). Rather, to be substantively unconscionable, "the terms must be so one-sided as to oppress . . . an innocent party." *Id.* (alteration in original and quotation marks omitted).

The Eighth Circuit has specifically recognized that an arbitration agreement is not "substantively unconscionable because it gives one party the sole discretion to choose arbitration." *M.A. Mortenson Co. v. Saunders Concrete Co., Inc.*, 676 F.3d 1153, 1158 (8th Cir. 2012). And a federal court applying Utah law has reached the same conclusion. *See Miller*, 769 F. Supp. 2d at 1345 (concluding that arbitration agreement that was only effective against the plaintiff-students was not substantively unconscionable). Plaintiffs remain able to seek redress before an arbitrator, in a forum that the Supreme Court has recognized "is itself desirable, reducing the cost and increasing the speed of dispute resolution." *Concepcion*, 563 U.S. at 345. Arbitration is a particularly efficient forum for resolving bilateral consumer claims like those of Plaintiffs. *See id.* at 348 (stating that "the average consumer arbitration between January and August 2007 resulted in a disposition on the merits in six months, four months if the arbitration was conducted by documents only"). Plaintiffs have not met their burden of showing that the arbitration agreement is substantively unconscionable.

\*       \*       \*

The Court should reject Plaintiffs' attempt to have this Court weigh in on the arbitration agreement's scope and validity. But irrespective of whether this Court or the arbitrator resolves issues related to gateway questions of arbitrability, the result is the same—Plaintiffs' claims against ICON should proceed, if at all, before an arbitrator.

**III.    If the court concludes that there is not enough evidence to compel arbitration at this time, the Court should order limited, targeted discovery.**

On the record before this Court, there is more than sufficient undisputed evidence to conclude that the three remaining Plaintiffs are bound by the arbitration agreement in the iFit Terms. But if the Court concludes that there is insufficient evidence to compel arbitration at this juncture, it should permit the parties to engage in further discovery on issues relevant to both constructive and actual notice of the Terms (including whether any of the Plaintiffs had notice of the NordicTrack Terms), and proceed to a summary trial on any outstanding, arbitration-related factual issues.

Plaintiffs' argument that no further discovery is necessary is confined to a single paragraph at the end of their brief. MIO at 29. Earlier parts of Plaintiffs' opposition memorandum demonstrate the opposite. Plaintiffs list evidence that they assert ICON failed to present. Many of the items on that list are now irrelevant,

given that Plaintiffs have abandoned Schwartz's claims in this proceeding. Others, however, require discovery from Plaintiffs, including:

- determining "what specific pages were accessed by each Plaintiff on the NordicTrack website," MIO at 11, which requires questioning Plaintiffs;

- determining "whether a Plaintiff subscribed to iFit via the website or mobile app," MIO at 11, which also requires questioning Plaintiffs.

Plaintiffs apparently fault ICON for failing to provide information that Plaintiffs alone possess.

Beyond this outstanding information already identified by Plaintiffs, still other information could demonstrate that each Plaintiff assented to arbitration with ICON, including, among other things:

- Whether any Plaintiff or Jay Ovsak saw a link to the iFit Terms, either before or after signing up for iFit memberships, whether online, on the mobile application, or on their treadmill[12];

---

[12] Barclay and Nordick assert that they do not recall seeing a hyperlink to the NordicTrack Terms, but they do not say the same with respect to the iFit Terms. *See* Barclay Decl. ¶ 4-5 [ECF No. 38]; Nordick Decl. ¶ 4-5 [ECF No. 39]. Barclay, Nordick, and Ovsak each assert that they "have subsequently read the iFit Terms of Use, and [they] still do not see how they relate to [their] NordicTrack treadmill purchase." Barclay Decl. ¶ 7; Nordick Decl. ¶ 7; Ovsak Decl. ¶ 7 [ECF No. 40]. To the extent that their subjective understanding is relevant, ICON is entitled to ask them about their understanding of the relevant Terms.

- The extent to which Ovsak used, or otherwise benefited from, her husband's iFit account[13];

- Whether Jay Ovsak had actual notice of the iFit Terms, or opened any emails with links to the modified iFit Terms;

- Whether, even if they didn't read the Terms, Plaintiffs otherwise had actual notice of the Terms[14];

Of course, none of this information is necessary for the Court to conclude, based on the information before it, that each Plaintiff agreed to (or in Ovsak's case is otherwise bound by) the iFit Terms. But if the Court disagrees, the parties should be ordered to "engage in very limited discovery to gather information necessary for the Court to determine whether Plaintiff[s] agreed to the arbitration provision[s]" in the Terms, and proceed to either further motion practice or a summary trial under the

---

[13] Notably, whereas Barclay's declaration states that she never used the iFit service, Ovsak's is silent on this question. *Compare* Barclay Decl. ¶ 5, *with* Ovsak Decl. ¶ 5.

[14] This issue is particularly relevant for Barclay. Courts presume that clients are in contact with their lawyer, and Barclay is not only a client but also an employee of class counsel. *See Molnar v. 1-800-Flowers.com, Inc.*, No. 08-cv-0542, 2008 WL 4772125, at *6 (C.D. Cal. Sept. 29, 2008) (declining to dismiss breach of contract claim when plaintiff's lawyer allegedly investigated claims, including Terms of Use, prior to plaintiff placing relevant order). Notably, Barclay is the only named plaintiff that did not purchase a treadmill directly from NordicTrack.com, suggesting that she may have been instructed by her employer to avoid ICON's checkout so as to circumvent arbitration.

FAA. *See Traylor v. I.C. Sys., Inc.*, No. 11-cv-2968, 2012 WL 1883814, at *2 (D. Minn. May 22, 2012) (Frank, J.).[15]

## CONCLUSION

The Court should stay this action and order Plaintiffs to arbitrate their claims against ICON on an individual, non-class basis. Alternatively, the Court should stay any merits proceedings of this action, and order limited discovery and a summary trial on the issue of whether Plaintiffs agreed to one of the two potentially applicability arbitration agreements.

Dated:  June 4, 2020          **GREENE ESPEL PLLP**

                      s/X. Kevin Zhao
                      Lawrence M. Shapiro, P.A., Reg. No. 0130886
                      X. Kevin Zhao, Reg. No. 0391302
                      Caitlinrose H. Fisher, Reg. No. 0398358
                      222 S. Ninth Street, Suite 2200
                      Minneapolis, MN  55402
                      lshapiro@greeneespel.com
                      kzhao@greeneespel.com
                      cfisher@greeneespel.com
                      (612) 373-0830

                      Attorneys for Defendants

---

[15] At a minimum, such discovery should include a deposition of each named Plaintiff, and a document collection of the emails that each Plaintiff received from ICON.