## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| **TEEDA BARCLAY, JAY OVSAK, NICOLE NORDICK,** individually, and on behalf of all others similarly situated, | Case No. 0:19-cv-02970-ECT-DTS |
| Plaintiffs, | **FOURTH AMENDED CLASS ACTION COMPLAINT** |
| v. | |
| **iFIT Health & Fitness, Inc.** *f/k/a* **ICON HEALTH & FITNESS, INC.** and **NORDICTRACK, INC.,** | JURY TRIAL DEMANDED |
| Defendants. | |

The allegations made in this Fourth Amended Class Action Complaint ("FAC") are based upon information and belief except those allegations that pertain to Plaintiffs, which are based on personal knowledge. Each allegation either has evidentiary support or, alternatively, pursuant to Federal Rule of Civil Procedure 11(b)(3), is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

### INTRODUCTION

1.    Plaintiffs Teeda Barclay, Jay Ovsak, and Nicole Nordick (collectively "Plaintiffs") bring this proposed class action on behalf of themselves and similarly-situated purchasers (the "Class Members") of iFit Health & Fitness, Inc.[1] ("iFit Health")  and NordicTrack, Inc. ("NordicTrack" or collectively with iFit Health, "Defendants")

---

[1]   The Court has directed the Clerk to update the case caption to reflect that Defendant Icon Health & Fitness, Inc. has changed its name to iFit Health & Fitness, Inc. (ECF No. 133, n.1).

treadmills, challenging the conduct of NordicTrack in the false advertising, misleading marketing, and sales of its personal fitness treadmills (the "Treadmills"),[2] which are manufactured, developed, marketed, and sold for household use. The Treadmills are incapable of reaching and maintaining Defendants' overstated and inflated continuous horsepower representations during normal designed household exercise use. Plaintiffs seek damages and equitable relief on behalf of themselves and all others similarly situated.

2.    Treadmill motor horsepower rating is one of the most prevalent and recognized specifications a consumer compares when purchasing a treadmill. NordicTrack markets that the horsepower delivered by the motor can directly affect the quality of the Treadmills' performance and thus a reasonable consumer's purchasing decision. NordicTrack deceitfully touts excessive continuous horsepower capabilities with false and misleadingly inflated continuous horsepower ratings intended to induce consumers into purchasing the Treadmills and paying an inflated premium price based on the horsepower misrepresentations.

3.    NordicTrack misleads consumers into believing that the Treadmills actually generate and maintain the represented continuous horsepower, even though the horsepower misrepresentations can never be obtained during actual household use by Plaintiffs and

---

[2]    NordicTrack, Inc. manufactured, advertised, marketed, and sold multiple treadmill models during the relevant time period with similar horsepower misrepresentations, including but not limited to, the Incline Trainers X7i (2.75 CHP), X9i (3.0 CHP), X15i (4.0 CHP), X22i (4.25/4.00 CHP), X32i (4.25 CHP), X11i (4.25/3.75 CHP), T Series T6.5 S (2.6 CHP), T6.5 SI (2.6 CHP), T6.7 (2.6 CHP), T7.5 S (3.0 CHP), T8.5 S (3.5 CHP), T9.5 S (3.6 CHP), Commercial 2950 (4.25 CHP), 2450 (4.0 CHP), 1750 (3.8/3.75CHP), C Series C700 (2.75 CHP), C1650 (3.5 CHP), C850s (2.75 CHP), C960i (3.0 CHP), C990 (3.0 CHP), C590 (2.6 CHP) and Elite 3760 (3.5 CHP), 5760 (3.8 CHP), 7760 (4.0 CHP).

consumer Class Members. NordicTrack manufactures, develops, markets, distributes, and sells a variety of treadmill models throughout the country, including the Treadmills Plaintiffs and Class Members have purchased. Based on the horsepower misrepresentations, NordicTrack charges a premium price for the Treadmills' misrepresented horsepower capabilities that are not actually available during household usage.

4.     NordicTrack makes numerous representations on its website (www.nordictrack.com/treadmills), in marketing materials, in store displays and online at Dick's Sporting Goods ("Dick's"), and in-store displays and online at Sears, that its Treadmills have a specific power output, quantified in continuous horsepower ("CHP"). The Treadmills cannot produce, let alone maintain continuously, their marketed and advertised continuous horsepower during household usage. NordicTrack also sells and markets its Treadmills through other third-party retailers such as Amazon and Best Buy.

5.     NordicTrack maintains an authorized sales and distribution partnership with Amazon.com, the world's largest e-commerce marketplace. Through Amazon.com, NordicTrack markets the same horsepower capability misrepresentations as it makes on its own website, marketing, and advertising.

6.     In addition to online sales through Amazon.com and directly through www.nordictrack.com/treadmills, NordicTrack sells its exercise equipment products through an authorized distribution and sales partnership with Dick's, the nation's largest sporting goods retailer, and Sears, which sells a variety of NordicTrack treadmills online. NordicTrack treadmills are prominently displayed and sold at most of Dick's,

approximately 720, retail sporting goods store locations, in 47 states throughout the country. Thus, Amazon.com, Dick's, and other third-party retailers like Sears, act as authorized agents of Defendants in the marketing, sale, and distribution of Treadmills.

7.     NordicTrack consistently and prevalently advertises and markets that the Treadmills operate at a continuous horsepower of between 2.6 CHP and 4.25 CHP, depending on the specific treadmill model.  On information and belief, *all* NordicTrack treadmills operate in household use well below NordicTrack's continuous horsepower representations and maintain similar continuous horsepower regardless of the misrepresented CHP.

8.     NordicTrack labels the Treadmills with false and misleading horsepower ratings because such representations are highly material to consumers and serve to differentiate the Treadmills from the competition and justify a higher price.   Reasonable consumers expect their Treadmills to generate and maintain the horsepower NordicTrack claims. But instead, Plaintiffs and Class Members' Treadmills only provide a small fraction of the horsepower promised by NordicTrack while exercising.

9.     NordicTrack's CHP representations are inaccurate, misleading, and materially overstate the Treadmills' true operating horsepower. It is not possible for the Treadmills to operate at a continuous horsepower of 4.25 CHP, or even 2.6 CHP, when drawing electrical power from the standard 120-volt, 15-amp outlet found in residential homes in the United States for which the Treadmills are designed.

10.     NordicTrack recognizes that consumers view a treadmill's power as one of the most important features in making a treadmill purchase for their home. Defendants

specifically highlight NordicTrack's claims concerning the Treadmills' horsepower in advertising, on its website, in its press releases, and at its point-of-sale marketing materials prominently displayed at Dick's stores and online by third-party retailers like Amazon and Sears. In addition to online sales through authorized partners, Defendant iFit Health also markets and sells treadmills through its online retail subsidiary, Workout Warehouse (www.workoutwarehouse.com/nordictrack).

11.    NordicTrack's false and overstated horsepower representations are designed to mislead consumers into believing the Treadmills have much more power than they actually deliver, leading consumers to overpay for the Treadmills and/or cause consumers to purchase the Treadmills instead of competitor manufacturers' treadmills or less expensive models.

12.    Reasonable consumers like Plaintiffs expect the Treadmills to produce the represented horsepower stated in and on NordicTrack's marketing materials, website, and/or retail store display, during household operation, and would not have purchased the Treadmills or would have paid less had they known that Defendants' representations regarding the Treadmills' CHP were false and misleading. NordicTrack's Treadmills are worth substantially less than what Plaintiffs and Class Members paid to purchase them.

13.    Plaintiffs suffered damages resulting from NordicTrack's actions and omissions. Accordingly, Plaintiffs bring this class action asserting claims against Defendants for violations of consumer protection and false advertising statutes, breaches of express and implied warranties, and negligent misrepresentations.

## JURISDICTION

14.    This Court has jurisdiction over this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because iFit Health and NordicTrack are incorporated as Utah corporations. iFit Health and NordicTrack are citizens of the State of Utah; Plaintiffs Teeda Barclay, Jay Ovsak, and Nicole Nordick are citizens of, and purchased a NordicTrack Treadmill within, the State of Minnesota; there are more than 100 class members in many different states throughout the country; and the aggregate amount in controversy exceeds $5 million.

15.    Venue is proper in this Court because Defendants are registered Utah corporations that transact business, distribute, advertise, and sell Treadmills in the District of Minnesota, including the Treadmills Plaintiffs Barclay, Ovsak, and Nordick purchased, and Plaintiffs reviewed and evaluated NordicTrack's CHP representation and eventually purchased their NordicTrack treadmills in this District.

## PARTIES

16.    Plaintiff Teeda Barclay (individually "Plaintiff Barclay") purchased a NordicTrack 6.5 S treadmill online through Amazon.com on or about June 3, 2019, for the purpose of using the Treadmill for personal exercise use in the basement of her home located in Coon Rapids, Minnesota. After purchasing her Treadmill, Plaintiff Barclay has used her Treadmill for its ordinary intended use within her home and has not received the CHP that NordicTrack represented. Amazon's website expressly noted that the 6.5 S treadmill delivered 2.6 CHP.

17.     Before purchasing her Treadmill from Defendants, Plaintiff Barclay reviewed NordicTrack's website and NordicTrack's statements that the NordicTrack 6.5 S treadmill was capable of producing 2.6 CHP when she was comparing the T Series 6.5 S treadmill to other treadmill manufacturers, such as Sole Treadmills. NordicTrack's representations and marketing stating that the T Series 6.5 S treadmill provides 2.6 CHP was a material factor considered in Plaintiff Barclay's purchase of her Treadmill. Plaintiff Barclay would not have purchased her NordicTrack T Series 6.5 S treadmill or would have paid considerably less if she had known its true horsepower capabilities. Plaintiff Barclay believed that power was a material factor in the quality of treadmill she wished to purchase, that the CHP represented at the NordicTrack website indicated the power of the treadmill she would receive, and she would not have purchased her Treadmill or would have paid less but for the CHP representations on NordicTrack's and Amazon's websites.

18.     Plaintiff Barclay paid over $500 for her NordicTrack T Series 6.5 S treadmill in June 2019 and has been damaged. After purchasing her Treadmill, and delivery to her home, Plaintiff Barclay has used her Treadmill for ordinary use within her home and has not received the CHP that Defendants represented.

19.     Plaintiff Jay Ovsak (individually "Plaintiff Ovsak") purchased a NordicTrack Commercial 2950 treadmill online directly from Defendants' website on or about February 13, 2016, for the purpose of using the Treadmill for personal exercise use in his home located in Breckenridge, Minnesota. After purchasing his Treadmill, Plaintiff Ovsak has used his Treadmill for its ordinary intended use within his home and has not received the CHP that NordicTrack represented. At the time of Plaintiff Ovsak's purchase,

NordicTrack's website expressly noted that the Commercial 2950 treadmill delivered 4.25 CHP.

20.    Before purchasing his Treadmill from Defendants, Plaintiff Ovsak reviewed NordicTrack's website, including NordicTrack's statements that the NordicTrack Commercial 2950 treadmill was capable of providing 4.25 CHP when he was comparing the Commercial 2950 treadmill to other treadmill manufacturers online. NordicTrack's representations and marketing stating that the Commercial 2950 treadmill produced 4.25 CHP was a material factor considered in Plaintiff Ovsak's purchase of his Treadmill. Plaintiff would not have purchased his NordicTrack Commercial 2950 treadmill or would have paid considerably less if he had known the true horsepower capabilities. Plaintiff Ovsak believed that power was a material factor in the quality of treadmill he wished to purchase, that the CHP represented at the NordicTrack website indicated the power of the treadmill he would receive.

21.    Plaintiff Ovsak paid over $2,000 for his NordicTrack Commercial 2950 treadmill in February 2016 and has been damaged. After purchasing his Treadmill, and delivery to his home, Plaintiff Ovsak has used his Treadmill for ordinary use within his home, until the Treadmill stopped working, and has not received the CHP that Defendants represented.

22.    Plaintiff Nicole Nordick (individually "Plaintiff Nordick") purchased a NordicTrack T7.5 S treadmill online through NordicTrack.com on or about January 22, 2019, for the purpose of using the Treadmill for personal exercise use in her home located just outside Breckenridge, Minnesota. After purchasing her Treadmill, Plaintiff Nordick

has used her Treadmill for ordinary intended use within her home and has not received the CHP that NordicTrack represented. NordicTrack's website expressly noted that the T7.5 S treadmill had 3.0 CHP.

23.     Before purchasing her Treadmill from Defendants, Plaintiff Nordick reviewed NordicTrack's website, NordicTrack's statements that the NordicTrack T7.5 S treadmill was capable of providing 3.0 CHP when she was comparing the T7.5 S treadmill to other treadmill manufacturers online. NordicTrack's representations and marketing stating that the T7.5 S treadmill produced 3.0 CHP was a material factor considered in Plaintiff Nordick's purchase of her Treadmill. Plaintiff would not have purchased her NordicTrack T7.5 S treadmill or would have paid considerably less if she had known the true horsepower capabilities. Plaintiff Nordick believed that power was a material factor in the quality of treadmill she wished to purchase, that the CHP represented at the NordicTrack website indicated the power of the treadmill she would receive.

24.     Plaintiff Nordick paid over $1,500 for her NordicTrack T7.5 S treadmill in January 2019 and has been damaged. After purchasing her Treadmill, and delivery to her home, Plaintiff Nordick has used her Treadmill for ordinary use within her home and has not received the CHP that Defendants represented.

25.     Defendant iFit Health is a Utah corporation, headquartered in Logan, Utah. In 1998, iFit Health acquired NordicTrack, Inc. and added treadmills to the NordicTrack brand. iFit Health develops, markets, and sells fitness equipment for residential use, including treadmills, ellipticals, bikes, and rowers. iFit Health is the world's largest manufacturer and marketer of fitness equipment. iFit Health is in the business of

developing, marketing, and selling exercise equipment throughout North America in interstate commerce and continues to expand its presence in the US and internationally.[3]

26.    Defendant NordicTrack, Inc. is a Utah corporation, headquartered in Logan, Utah.  Originally, NordicTrack was founded in 1975 in Chaska, Minnesota after a Minnesota resident invented the NordicTrack ski machine in his basement. The NordicTrack brand has been owned and managed by Defendant iFit Health for over twenty years. NordicTrack manufacturers, markets, and sells treadmills, strength training equipment, elliptical machines, stationary bikes, and the Nordic ski machine.

## STATEMENT OF FACTS

### I.    <u>Horsepower Overview</u>

27.    Horsepower is a unit of measurement of power or the rate at which mechanical energy is expended and is often used to quantify the mechanical power output of a motor or an engine.

28.    The "horsepower" measurement of power was adopted in the late 18th century by Scottish engineer James Watt to compare the output of steam engines with the power of draft horses. In describing electric power under the metric system, the term "watt" is now commonly used instead of horsepower as a measure of mechanical power output performed by a motor. One unit of horsepower equals approximately 746 watts.

---

[3]    iFit Health has a wide range of health fitness brands in addition to NordicTrack, including entities doing business as ProForm Fitness Products, Freemotion, Weslo, Weider, Fitness Warehouse, Workout Warehouse, and Healthrider.

29.    The amount of mechanical power output generated by any given electric motor can be determined by examining that electrical voltage available to it and the amperage that the motor is capable of drawing. To calculate an electric motor's operating horsepower, voltage is multiplied by amperage and then by a fraction representing the efficiency of the motor. That total is then divided by 746 watts to convert the watts to horsepower.

30.    A simple equation thus describes how to calculate horsepower by multiplying the available voltage, amperage draw, and motor efficiency, and dividing that product by 746 (to convert into horsepower as measured by wattage):

$$\frac{(\underline{\text{Voltage}}) \text{ x } (\underline{\text{Amperage}}) \text{ x } (\underline{\text{Motor Efficiency}})}{746} = \textbf{HP}$$

31.    Most electrical outlets in American homes are equipped with the standard 15-amps, with two slots and a U-shaped grounding third hole and have an accompanying 120-volt circuit. A 15-amp circuit is usually served by 14-gauge wire and is protected by a 15-amp circuit breaker or fuse based on building and electrical codes.

32.    Defendants' Treadmills are rated at 15 amps with a 110-volt circuit, which equates to a theoretical maximum mechanical power output of 1,650 watts or 2.21 horsepower output without taking into consideration the motor's actual efficiency[4] and power factor losses, which further decrease the motor's horsepower output. Heat and other

---

[4]    Electric motor efficiency is the measure of the ability of an electric motor to convert electrical energy to mechanical energy.

factors decrease the motor's efficiency, and therefore further decrease the power output of the motor while in actual use.

33.     After factoring the effects of the power factor and efficiency losses, NordicTrack's Treadmills are capable of providing only a fraction of the advertised CHP that NordicTrack markets its Treadmills as capable of providing while in household use.

34.     It is beyond the safety rating for an electrical device to draw more power than the receptacle and household electrical circuit is designed for. If an electrical device does draw more power than the household electrical circuit is designed for, the circuit-breaker will flip and cut off power to that circuit. As such, NordicTrack treadmills are incapable of drawing more power than a household outlet is capable of providing during actual household use.

35.     In addition to the power input limits available during household use, the Treadmills themselves are equipped with an electronic control board that regulates the amperage draw and further limits the horsepower capabilities to well below Defendants' continuous horsepower representations for the Treadmills.

36.     Defendants' Treadmills are only capable of producing a fraction of the misrepresented CHP due to the Treadmill's onboard electrical circuit breaker, as well as common household electrical limits found in households throughout the United States.

37.     NordicTrack's horsepower representations seem to defy the laws of physics and allow NordicTrack's Treadmills to output more CHP than the Treadmills are actually capable of producing from a common household outlet power source in the United States and for which the Treadmills are rated and marketed. Based on NordicTrack's misleading

horsepower representations, Defendants' Treadmills purportedly output more CHP than possible from the actual energy input from a household outlet receptacle.

## II.    Continuous Horsepower

38.    NordicTrack markets and sells the Treadmills as maintaining a certain "continuous horsepower," or "continuous duty horsepower." CHP can be defined as a measurement of the motor's ability to maintain and continuously produce power over an extended period of time without exceeding the current rating of the motor.

39.    CHP is often considered to be the most accurate indicator of a motor's power output because, as Defendant iFit Health states, "*it is performed at the voltage used in application by the particular motor*."[5] iFit Health further professes that "*[e]xperts agree that continuous-duty ratings are the more accurate indicator of true performance*."[6]

40.    NordicTrack's authorized third-party sales partner, Dick's, represents that "*CHP measures how much power the motor maintains throughout the workout*."[7]

41.    The CHP associated with a particular treadmill is meant to define "*how much power is maintained throughout the workout*."[8] Additional industry experts have made

---

[5]    http://iconsupport.eu/what-difference-between-hp-and-chp (emphasis added) (last accessed Oct. 24, 2019).

[6]    *Id.*

[7]    https://protips.dickssportinggoods.com/sports-and-activities/exercise-and-fitness/how-to-choose-the-right-treadmill (emphasis added) (last accessed July 11, 2022).

[8]    https://www.treadmillreviews.net/treadmill-motors-what-you-need-to-know/ (emphasis added) (last accessed July 11, 2022).

clear that a "*continuous duty motor measures the minimum horsepower delivered at all points during a workout*."[9]

42.    The CHP associated with a treadmill is the "*measure of sustained power during regular use*. The continuous motor power is what is consistently delivered during heavy usage over an extended period of time."[10]

43.    When assessing the CHP of a treadmill, "the measurement is taken over an extended period of time. *It shows that the motor can maintain the power it is rated for without lagging or slowing down under strain.*"[11]

44.    The advertised CHP capabilities associated with NordicTrack's Treadmills are deliberate misrepresentations because the Treadmill motor is incapable of maintaining the stated CHP rating at any time during the consumer's workout.  In fact, NordicTrack's Treadmills are not capable of achieving the advertised CHP at any time during a consumer's workout.

45.    In order for NordicTrack even to come close to achieving the misrepresented horsepower capabilities of the Treadmills, NordicTrack bases its false and misleading horsepower representations on an inflated laboratory testing power draw (amperage) not possible in household use. The laboratory testing power input far exceeds the current rating

---

[9]    https://blog.johnsonfitness.com/blog/treadmill_drive_motors_and_the_question_of_horsepower/ (emphasis added) (last accessed Oct. 24, 2019).

[10]    https://treadmill-ratings-reviews.com/treadmill-articles/facts-about-treadmill-motors/ (emphasis added) (last accessed July 11, 2022).

[11]    https://www.treadmillreviews.com/treadmill-buying-guide/ (emphasis added) (last accessed July 11, 2022).

of the Treadmill motors while in household use, and thus cannot be truthfully represented, by definition, as the Treadmills' CHP capabilities to Plaintiffs and the Class Members.

46.    NordicTrack's advertised CHP is a misleading power metric for a consumer to evaluate unless the motor is actually capable of attaining the CHP in actual use and under standard operating conditions. A reasonable consumer is led to believe that the CHP representations are actually achievable while in normal exercise use based on NordicTrack's horsepower misrepresentations. Reasonable consumers cannot properly evaluate the Treadmills' power metrics due to NordicTrack's misleading and false statements regarding the Treadmills' inflated CHP.

### III.    <u>NordicTrack's CHP Misrepresentations and Misleading Statements</u>

47.    NordicTrack promotes the Treadmills online and in numerous market outlets including its own treadmill blog. NordicTrack makes clear that although "it's not 'sexy', the motor on your treadmill is one of the most important features when choosing your machine."[12]

48.    NordicTrack lists the misrepresented CHP SMART-Response Motor for the X15i treadmill, as one of the top selling features on its website.[13]



---

[12]    https://nordictracktreadmillblog.com/treadmill-motor/ (last accessed Oct. 24, 2019).

[13]    https://www.nordictrack.com/incline-trainers/commercial-x15i (last accessed July 12, 2022).

49.    Focusing directly on the power capabilities of its X11i incline trainer treadmill, Defendants point to their "monster 3.75 motor [which] means it can hold up to heavy or frequent use with ease."[14]

50.    NordicTrack touts that its treadmill "machine works as hard as you with up to an incredible 4.25 CHP DurX™ Commercial Plus motor, powering your calorie-torching iFit workout."[15] In other words, your workout will be powered by "an incredible 4.25 CHP" motor.

51.    NordicTrack also claims that its T Series treadmill "machine works as hard as you with up to an incredible 3.6 CHP DurX™ Commercial Plus motor. Your calorie-torching iFit workouts will never be the same."[16]

52.    NordicTrack further states that "[t]he 3.0 continuous horsepower DurX™ motor features…a built-in ground brush [which] ensure[s] the motor performs with quiet reliability mile after mile."[17] Defendants' representations plainly indicate that the CHP is delivered to the consumer while working out "mile after mile."

53.    The NordicTrack Blog also explains that the "CHP is found by measuring the continual use of the motor at the highest listed horsepower" which is "helpful to runners who plan on doing a good bit of training on their treadmills."[18]  NordicTrack is clearly

---

[14]    https://nordictracktreadmillblog.com/-x11i-review (last accessed Mar. 13, 2020).

[15]    https://www.nordictrack.com/commercial-treadmills (last accessed Oct. 1, 2019).

[16]    https://www.nordictrack.com/t-series-treadmills (last accessed Oct. 1, 2019).

[17]    https://www.workoutwarehouse.com/treadmills/c-990 (last accessed Oct. 24, 2019).

representing that the CHP is the treadmill power achieved in continual use during a runner's workout.

54.    NordicTrack sells many of its Treadmills through Amazon.com and proclaims the "Proven Performance" of the T Series Treadmills (6.5 S & 6.5 Si Models) using a "Durable 2.6 CHP Motor," is perfect for "running, jogging, and walking in the comfort of your home" and pictures a "durable 2.6 CHP motor."[19] Defendants' misrepresentations convey that a consumer will be able to achieve the listed CHP while in household use.



55.    Additional treadmill reviews parrot Defendants' misrepresentations and further mislead reasonable consumers such as Plaintiffs. The T 6.5 Si model "has a commercial 2.6 CHP motor, giving it greater durability and power than can usually be

---

[18]    https://www.nordictrack.com/learn/knowing-the-difference-between-treadmill-motors/ (last accessed Nov. 8, 2019).

[19]    https://www.amazon.com/NordicTrack-Treadmills-6-5S-6-5Si-Models/dp/B07RZ3N-X6J (last accessed Oct. 28, 2019).

found in a treadmill in this price range" and has the "commercial [2.6 CHP] DurX™ motor, which makes it a stronger motor…."[20]

56.    NordicTrack consistently and prevalently touts its Smart–Response Drive System: "Our precision 4.0 CHP DurX™ Commercial Plus Motor is built to power your toughest, fastest workouts."[21]



57.    Representations by Defendants also extend to the actual product branding misrepresentations of CHP capabilities on the treadmill running deck itself and through promotional YouTube videos, of for example a "3.0 CHP" Drive System.[22]

---

[20]  https://www.treadmillreviews.com/nordictrack-t-6-5-si-treadmill-review/ (last accessed Oct. 2, 2019).

[21]  https://www.nordictrack.com/incline-trainers/commercial-x15i (last accessed Feb. 10, 2020).

[22]  https://www.youtube.com/watch?v=Yv_rhgVdDOY (last accessed Mar. 13, 2020).



58.    In addition to NordicTrack's online advertising and marketing horsepower misrepresentations, NordicTrack's in-store floor model displays across the country at Dick's Sporting Goods prominently exhibit NordicTrack's CHP as a major selling feature (picture taken at Dick's Sporting Goods, Richfield, MN, Oct. 2, 2019) (highlighting added).



19

59.    In direct correlation to the misrepresented horsepower and the various treadmill models that NordicTrack offers, Defendants have priced the models according to the misleading CHP associated with each model, incrementally increasing the price premium based on successively higher CHP representations.

60.    NordicTrack's advertised CHP rating is fictitious when compared to the actual horsepower available in normal household operation. In order to achieve the misleading CHP output that NordicTrack claims the Treadmills are capable of achieving, the power input necessary when plugged into a consumer's household outlet would far exceed the actual capability of the electrical infrastructure found in American homes.

61.    The CHP misrepresentations made by NordicTrack are more than mere subjective promotional statements that could be considered advertising puffery. NordicTrack's CHP misrepresentations are an objectionably measurable and quantifiable metric that a reasonable consumer is drawn to believe is real and achievable when using the Treadmills for ordinary exercise use.

62.    In January 2020, after the original Complaint had been filed, Defendant NordicTrack attempted to provide a surreptitiously hidden disclaimer on its website in a perfunctory attempt to clarify the continuous horsepower representations it has so prevalently misrepresented throughout the Class Period to Plaintiffs and Class Members.[23]

---

[23]   https://www.nordictrack.com/treadmills/commercial-2950-treadmill (last accessed Jan. 28, 2020).

> \\Continuous Horsepower ("CHP") is a term used in the treadmill industry for consumer comparison purposes. The CHP rating is measured in laboratory testing using a dynamometer, which measures the mechanical power of the motor. The CHP rating does not denote the operational horsepower of the treadmill in ordinary household use. In ordinary household use, the motor does not operate at the horsepower shown.

63.    Defendants' newly revealed disclaimer, buried in fine print on its website at the very bottom of its treadmill performance specs, is inadequate, and fails to sufficiently notify a reasonable consumer as to the true operating horsepower capabilities of Defendants' Treadmills.

## CLASS ACTION ALLEGATIONS

64.    It is believed that there are thousands of Class Members across the United States who have purchased NordicTrack's Treadmills.

65.    Under Fed. R. Civ. P. 23(b)(2) and (b)(3), Plaintiffs bring this lawsuit on behalf of themselves and a nationwide class (the "Nationwide Class" or "Class") defined as follows:

> All persons in the United States who purchased a NordicTrack treadmill, during the maximum period of time permitted by law, for personal, family, or household purposes, and not for resale.

66.    Under Fed. R. Civ. P. 23(b)(2) and (b)(3), Plaintiffs bring this lawsuit on behalf of themselves and a Minnesota-statewide class (the "Minnesota Subclass") defined as follows:

> All persons in the State of Minnesota who purchased a NordicTrack treadmill, during the maximum period of time permitted by law, for personal, family, or household purposes, and not for resale.

67.    The Nationwide Class and Minnesota Subclass specifically exclude iFit Health and NordicTrack's current and former officers and directors, members of the immediate families of Defendants' officers and directors, Defendants' employees, Defendants' legal representatives, heirs, successors, and assigns, any entity in which Defendants have or had a controlling interest during the Class Period, Defense counsel and members of his/her immediate family, and the judicial officers to whom this lawsuit is assigned.

68.    The definitions of the Nationwide Class and Minnesota Subclass are unambiguous, and Plaintiffs are members of the Class and Subclass they individually seek to represent.

69.    Plaintiffs reserve the right to amend or modify the Nationwide Class and Subclass definitions and exclusions to create greater specificity, further division into subclasses, or limitation to particular issues as this case progresses.

70.    The Nationwide Class is so numerous and geographically dispersed that joining all Class Members would be impracticable. The exact number of Class Members is unknown by Plaintiffs at this time and can only be ascertained through appropriate discovery. Plaintiffs believe that the Class numbers at least in the thousands.

71.    The Minnesota Subclass is so numerous and geographically dispersed in Minnesota that joining all the member would be impracticable. The exact number of members in each Subclass is unknown by Plaintiffs at this time and can only be ascertained through appropriate discovery. Plaintiffs believe that each Subclass consists of at least 100 potential class members.

22

72.    Plaintiffs' claims are typical of the claims of the Class because Plaintiffs purchased a NordicTrack treadmill that was sold with a misleading CHP rating and suffered a pecuniary loss as a result of the purchase. Plaintiffs' claims have the same essential characteristics as all other Class Members' claims and the evidence to establish the facts and claims stated herein will be the same for Plaintiffs and all other members of the Classes. All claims are based on Defendants' course of conduct and similar legal theories. All Class Members, including Plaintiffs, suffered the same type of injury and possess the same interests in pursuing this case as does Plaintiffs, and none benefitted from the misleading representations. A single resolution of these claims would be preferable to a multiplicity of similar actions.

73.    Plaintiffs' claims are typical of the claims of the Class and Subclass because Plaintiffs purchased NordicTrack treadmills sold with a misleading horsepower rating and suffered a pecuniary loss as a result of the purchase. The Subclass claims have the same essential characteristics as all other Subclass Members' claims and the evidence to establish the facts and claims stated herein will be the same for Plaintiffs and all other members of the Subclass. Each Subclass claim is based on the course of conduct and similar legal theories. All Subclass Members, including Plaintiffs, suffered the same type of injury and possess the same interests in pursuing this case as do Plaintiffs, and none benefitted from the misleading representations. A single resolution of these claims would be preferable to a multiplicity of similar actions.

74. Plaintiffs will fairly and adequately protect the interests of the members of the Class and the Subclass and have retained counsel competent and experienced in class action litigation.

75. Defendants acted or refused to act on grounds generally applicable to the Class and the Subclass, thereby making it appropriate for the Court to render final injunctive relief regarding the Class as a whole and the Subclass as a whole. Specifically, NordicTrack continues to misrepresent the true continuous horsepower available in the Treadmills.

76. Common questions of law and fact exist as to Class Members' claims and Subclass Members' claims and predominate over questions affecting only individual Class or Subclass Members. Common legal and factual questions include, but are not limited to:

    a. The nature of NordicTrack's promotion of CHP;

    b. Whether NordicTrack misrepresented the CHP, and/or horsepower of the Treadmills;

    c. Whether the NordicTrack's "continuous horsepower" claims were false and/or misleading;

    d. Whether NordicTrack knew or should have known its claims regarding the Treadmills' horsepower were false and/or misleading;

    e. Whether NordicTrack's representations were material to consumers and the market;

    f. Whether the Treadmills produce the represented "continuous horsepower" for any time material to consumer operation and use;

g.      Whether NordicTrack placed "continuous horsepower" ratings on the Treadmills' packaging and store displays;

h.      Whether NordicTrack provided point of sale materials to retailers for use in promoting NordicTrack's Treadmills and whether those materials included misleading references to CHP;

i.      Whether NordicTrack provided advertising copy or suggested promotional language to retailers for use in promoting NordicTrack's Treadmills and whether those materials included misleading references to CHP;

j.      Whether NordicTrack's CHP statements constituted contractual promises or warranties on the Treadmills;

k.      Whether NordicTrack's misleading representations caused it to receive money that it would not have received absent those representations;

l.      Whether NordicTrack's actions breached the duties it owed Plaintiffs and the Class under express warranties for the Treadmills;

m.      Whether NordicTrack's actions breached the duties it owed Plaintiffs and the Class under its implied warranties regarding the Treadmills;

n.      Whether Plaintiffs and the Class paid more for the Treadmills than they would have paid absent NordicTrack's misleading horsepower representations;

o.      Whether Class Members are entitled to damages, restitution, and/or monetary relief and if so, the amount and nature of such relief; and

p.    Whether the Court should enjoin NordicTrack from continuing to misrepresent the Treadmills' continuous horsepower.

77.    Resolution of each of these issues will turn upon evidence common to all Class and Subclass Members.

78.    Resolution of issues common to all Class and Subclass Members will predominate over individual issues.

79.    The issues common to the Class and the Subclass and the nature of the common relief creates a cohesive class for injunctive relief.

80.    Treating this case as a class action rather than attempting multiple individual actions provides a superior method for the fair and efficient adjudication of this controversy because:

a.    It will avoid a multiplicity of suits and consequential burden on the courts and Defendants;

b.    It would be virtually impossible for all members of the Class and/or Subclass to intervene as Plaintiffs in this action;

c.    It would assure uniform application of the laws and a single, uniform decision across the board without sacrificing procedural fairness or bringing about other undesirable results;

d.    It will provide court oversight of the claims process, once NordicTrack's liability is adjudicated;

e.    It would permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and

without the unnecessary duplication of effort and expense that numerous individual actions would engender; and

f.      It will permit the adjudication of relatively small claims by certain Class Members, who could not afford to individually litigate such claims against a large corporate entity such as NordicTrack.

81.    Plaintiffs and the proposed Nationwide Class and Minnesota Subclass satisfy the requirements of Rule 23(b)(1)(A), (b)(2), and/or (b)(3).

82.    Plaintiffs are not aware of any difficulties that are likely to be encountered in managing this action that would preclude its maintenance as a class action.

## PRE-LAWSUIT NOTICE

83.    In a notice letter dated October 10, 2019, Plaintiff Barclay provided Defendants with proper pre-suit notice on behalf of Plaintiff Barclay and similarly situated putative class members before filing this lawsuit in an attempt to address Defendants' horsepower misrepresentations without court intervention and allow Defendants the opportunity to cure. Defendant iFit Health acknowledged receipt of Plaintiff's notice letter in an October 11, 2019 email from iFit Health's legal counsel.

84.    Plaintiff Barclay's October 10, 2019 notice letter was sent within a reasonable time after she discovered or reasonably should have discovered that her NordicTrack treadmill did not produce the represented 2.6 CHP. Plaintiff Barclay first became aware that her NordicTrack treadmill did not produce the represented horsepower on September 4, 2019.

27

85.     In response to the October 10, 2019 pre-suit notice letter, NordicTrack indicated through its legal counsel that it fully stands behind its treadmill specifications and provided no indication that Defendants were willing to cure the treadmill horsepower misrepresentations.

86.     In a second supplemental pre-suit notice letter sent to Defendants' counsel, dated February 3, 2020, Plaintiffs provided iFit Health and NordicTrack with additional proper pre-suit notice on behalf of Plaintiff Ovsak, and Plaintiff Nordick, and similarly situated putative class members before filing the First Amended Complaint. Plaintiffs' February 3, 2020 pre-notice letter was delivered to Defendants' counsel within a reasonable time after they discovered or reasonably should have discovered that their NordicTrack treadmill did not possess the represented continuous horsepower. Plaintiff Ovsak first became aware that his NordicTrack treadmill did not produce the represented horsepower on January 21, 2020. Plaintiff Nordick first became aware that her NordicTrack treadmill did not produce the represented horsepower on January 28, 2020.

87.     Finally, to ensure Defendants received proper pre-suit notice and an opportunity to cure on a classwide basis, Plaintiffs, individually, and on behalf of similarly situated putative class members, delivered a third pre-suit notice letter, dated February 10, 2020, via FedEx (February 11, 2020) and certified mail (February 14, 2020) to Defendants in Logan, Utah and via FedEx on February 11, 2020 to Defendants' legal counsel in Minneapolis, Minnesota. The February 10, 2020 third pre-suit notice letter was received by Defendants and their counsel more than 30 days before the filing of the Second Amended Complaint. The pre-suit notice letter specifically provided detailed purchase

28

information of Plaintiffs Barclay, Ovsak, and Nordick and indicated the false and misleading representations regarding NordicTrack's continuous horsepower marketing, advertising, packaging, and sales of its treadmills. Plaintiffs' February 10, 2020 notice letter was delivered to counsel within a reasonable time after they discovered or reasonably should have discovered that their NordicTrack treadmill did not possess the represented continuous horsepower, as set for the in more detail above.

## COUNT 1
### Breach of Express Warranty
### (on behalf of Nationwide Class)

88.    Plaintiffs restate and incorporate all other allegations in this Complaint.

89.    Plaintiffs and the Class bring this count as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

90.    Defendants represented on the Treadmills' packaging, on NordicTrack's website and on point-of-sale materials used for display and sale of the Treadmills that the Treadmills had certain horsepower specifications, as noted in allegations above, which Plaintiffs and other consumers reviewed and relied on as truths asserted before purchasing their Treadmills.

91.    As detailed above, these representations are false and/or misleading, and the Treadmills Plaintiffs and the Class Members purchased do not conform to the above noted horsepower representations and cannot operate as promised during household usage.

92.    These representations constitute express warranties as to the Treadmills' qualities, nature and performance.

93. These representations became part of the basis of the bargain for Plaintiffs and the other Class Members because they reviewed and considered such statements in deciding to purchase the Treadmills and because such statements are among the facts a reasonable consumer would consider material in the purchase of the Treadmills.

94. Plaintiffs and the Class would not have purchased the Treadmills absent Defendants' representations that the Treadmills would operate at 2.6 CHP and above or would have paid substantially less for the Treadmills.

95. Defendants breached these express warranties because the Treadmills cannot reach the claimed horsepower even under ideal conditions during household operation.

96. At the time the Treadmills were sold, Defendants knew that the written affirmation of facts or written promises regarding the level of horsepower were false and misleading.

97. Defendants have breached their promises and warranties by failing to provide goods conforming to the promised product specifications directly and proximately injured Plaintiffs and the Class by providing them with non-conforming Treadmills and creating an artificially inflated price for those Treadmills.

98. Plaintiffs provided Defendants with appropriate pre-suit notice before the filing of this lawsuit.

99. Defendants' breach of the promises and warranties entitles Plaintiffs and the Class to: (a) damages, in an amount to be determined at trial, and (b) an order requiring future representations to conform with the Treadmills' actual performance in the type of use for which they are intended.

### COUNT 2
### Breach of Express Warranty — Magnuson-Moss Warranty Act
### (on behalf of the Nationwide Class)
### [Reserved][24]

100.    Plaintiffs restate and incorporate all other allegations in this Complaint.

101.    Plaintiffs and the Class bring this count as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

102.    The Treadmills are consumer products as defined in 15 U.S.C. § 2301(1).

103.    Plaintiffs and the Class Members are consumers as defined in 15 U.S.C. § 2301(3).

104.    Defendants are suppliers and warrantors as defined in 15 U.S.C. §§ 2301(4) and (5).

105.    Defendants provided Plaintiffs and Class Members "written warranties" within the meaning of 15 U.S.C. § 2301(6).

106.    15 U.S.C. § 2310(d) is satisfied because Plaintiffs properly invoke the jurisdiction of this Court under CAFA.

107.    This same section—15 U.S.C. § 2310(d)—provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written warranty.

---

[24]    Although not repleaded, Plaintiffs specifically reserve Counts 2 (Breach of Express Warranty – Magnuson-Moss Warranty Act (Nationwide Class)) and Count 6 (Minnesota Uniform Deceptive Trade Practices Act; Minn. Stat. § 325D.43-.48 (Minnesota Class)) originally pleaded in the Third Amended Complaint (ECF No. 80), and subsequently dismissed. (Opinion and Order, ECF No. 133). Plaintiffs also specifically reserve Minnesota consumer protection statutes originally pleaded in Counts 7-9 and the fraud claim in Count 10 as to Plaintiffs Barclay and Nordick. Plaintiffs reserve these Counts for appellate purposes only due to the uncertainty in the Eighth Circuit regarding waiver of dismissed claims that are not realleged.

108.    Defendants made written warranties regarding the Treadmills to Plaintiffs and Class Members within the meaning of 15 U.S.C. § 2301(6) ("written warranties" or "express warranties").

109.    Defendants breached express warranties made to Plaintiffs and the Class Members.

110.    Defendants promised, affirmed, and expressly warranted that the Treadmills had 2.6 CHP or higher, and promised that the Treadmills would maintain 2.6 CHP or higher for their lifetimes. In other words, Defendants expressly warranted to Plaintiffs and Class Members that the Treadmills would meet a level of performance, or power output, associated with a 2.6 CHP or higher horsepower treadmill motor, for life.

111.    The Treadmills are warranted to produce 2.6 CHP or higher for at least the duration of the lifetime warranty during household usage.

112.    Defendants' horsepower warranties became part of the basis of the bargain for Plaintiffs and other Class Members because they reviewed and considered such statements in deciding to purchase the Treadmills, and because such statements are among the facts a reasonable consumer would consider material in the purchase of a high-end household treadmill.

113.    Plaintiffs reviewed and considered Defendants' representations about the Treadmills producing at least 2.6 CHP up to 4.25 CHP before purchasing the Treadmills. But for Defendants' representations about the Treadmills' horsepower capabilities, Plaintiffs would not have purchased the Treadmills or would have paid substantially less for the Treadmills.

114.    Defendants breached their horsepower warranties by delivering Treadmills that do not—and indeed cannot—provide the power and performance of a 2.6 CHP or higher treadmill during household usage.

115.    At the time the Treadmills were sold, Defendants knew that the affirmations of fact or written promises they made regarding horsepower were false and were offered with no intention or capability of honoring them.

116.    As a direct and proximate result of Defendants' breach of its express written warranties regarding the horsepower representations, Plaintiffs and the Class Members have been damaged in an amount to be proven at trial.

117.    Plaintiffs have given Defendants notice and an opportunity to cure these breaches. Plaintiffs have also given Defendants notice that that notice was also on behalf of putative class members.

118.    In addition, under 15 U.S.C. § 2310(d)(2), Plaintiffs and the other Class Members are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been incurred by Plaintiffs and the other Class Members in connection with the commencement and prosecution of this action.

119.    Furthermore, Plaintiffs and the Class Members are also entitled to equitable relief under 15 U.S.C. § 2310(d) and damages as a result of Defendants' violation of their written warranties.

**COUNT 3**
**Breach of Express Warranty**
**Minn. Stat. §336.2-313**
**(on behalf of the Minnesota Subclass)**

120.    Plaintiffs restate and incorporate all other allegations in this Complaint.

121.    Plaintiffs and the Minnesota Subclass bring this count as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

122.    An express warranty was created by the Defendants on an affirmation of fact or promise made by NordicTrack to the Plaintiffs and Minnesota Subclass Members which relates to the goods and becomes part of the basis of the bargain to create an express warranty that the goods shall conform to the affirmation or promise.

123.    Defendants represented that the Treadmills as "goods," had certain horsepower specifications on the Treadmills' packaging, on NordicTrack's website, and on point-of-sale materials used for display and sale of the Treadmills, as noted herein, which Plaintiffs and the Minnesota Subclass Members reviewed and considered before purchasing their Treadmills. NordicTrack warranted that the Treadmills would perform as advertised with a warranty on the motor producing the stated CHP.

124.    Defendants' promise that their Treadmills provide a specific CHP was part of the basis of the bargain when Plaintiffs and Minnesota Subclass Members purchased the Treadmills.

125.    As detailed above, these representations are false and/or misleading, and the Treadmills Plaintiffs and the Minnesota Subclass Members purchased, do not conform to

the above-noted horsepower representations and cannot operate as promised during household operation.

126.    These representations constitute express warranties as to the Treadmills' qualities, nature and performance.

127.    These representations became part of the basis of the bargain for Plaintiffs and the Minnesota Subclass Members because they reviewed and considered such statements in deciding to purchase the Treadmills and because such statements are among the facts a reasonable consumer would consider material in the purchase of a high-end treadmill.

128.    Plaintiffs and the Minnesota Subclass Members would not have purchased the Treadmills absent NordicTrack's representations about the Treadmills producing 2.6 CHP or higher, or would have paid substantially less for the Treadmills.

129.    Defendants breached these express warranties because the Treadmills cannot reach the affirmation and promise of stated CHP during household use.

130.    At the time the Treadmills were sold, Defendants knew that the written affirmations of facts or written promises regarding the level of horsepower during household use were false.

131.    Defendants' breach of promises and warranties by failing to provide goods conforming to the promised product specifications directly and proximately injured Plaintiffs and the Minnesota Subclass Members, by providing them with non-conforming Treadmills and creating an artificially inflated price for those Treadmills.

35

132.    NordicTrack's breach of the promises and warranties entitles Plaintiffs and the Minnesota Subclass Members to: (a) damages, in an amount to be determined at trial, and (b) an order requiring future representations to conform with the Treadmills' actual performance in the type of use for which they are intended.

**COUNT 4**
**Breach of Implied Warranty**
**Minn. Stat. § 336.2-314**
**(on behalf of the Minnesota Subclass)**

133.    Plaintiffs restate and incorporate all other allegations in this Complaint.

134.    Plaintiffs bring this count as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

135.    A warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to the goods of that kind.

136.    Defendants' implied warranty extends to Plaintiffs who may reasonably be expected to use, consume, or be affected by the goods and was injured by breach of the warranty. Minn. Stat. § 336.2-318.

137.    The laws governing the sale of goods imply a warranty that the goods conform to the representations and specifications suppliers/merchants supply for the goods to conform to the promises or affirmations of fact made on the container or label.

138.    The promises or affirmations of fact made by Defendants are made with the intent that the consumer benefit from such representations.

139.    The purpose of these warranties is to protect consumers. Consumers are the intended beneficiaries of those warranties, as the representations were made to facilitate

36

NordicTrack's Treadmill sales by creating consumer demand in the market and consumer purchases.

140.   The Treadmills are consumer goods.

141.   Defendants are merchants with respect to the sale of the Treadmills.

142.   NordicTrack breached these implied contractual provisions because the Treadmills cannot perform as NordicTrack promised and/or affirmed.

143.   NordicTrack cannot provide a remedy or provide conforming goods because motors useable in the Treadmills inherently cannot provide the represented power in ordinary household operation.

144.   NordicTrack's breach of the implied warranty of merchantability injured the Plaintiffs and the Minnesota Class by providing Treadmills that could not do the work as warranted and caused Plaintiffs and the Class to pay a premium price for the Treadmills.

145.   NordicTrack's actions breach implied warranties due consumers.

146.   NordicTrack's breach entitles Plaintiffs and the Minnesota Subclass Members to: (a) damages, in an amount to be determined at trial, and (b) an order requiring future representations to conform with the Treadmills' actual performance in the type of use for which they are intended.

## COUNT 5
### Breach of Warranty — Magnuson-Moss Warranty Act
### (on behalf of the Minnesota Subclass)

147.   Plaintiffs restate and incorporate all other allegations in this Complaint.

148.   Plaintiffs bring this claim on behalf of the Minnesota Subclass pursuant to Rule 23 of the Federal Rules of Civil Procedure.

149.    The Treadmills are consumer products within the meaning of 15 U.S.C. § 2301(1).

150.    Plaintiffs and the Minnesota Subclass Members are consumers within the meaning of 15 U.S.C. § 2301(3) because they are persons entitled under applicable state laws to enforce against the warrantor the obligations of its express and implied warranties.

151.    Defendants are and were a supplier of consumer products and a warrantor within the meaning of 15 U.S.C. §§ 2301(4) and (5).

152.    15 U.S.C. § 2310(d) is satisfied because Plaintiffs properly invokes the jurisdiction of this Court under CAFA.

153.    This same section—15 U.S.C. § 2310(d)—provides a cause of action to any consumer who is damaged by the failure of a warrantor to comply with an implied warranty.

154.    Defendants made implied warranties regarding the Treadmills to Plaintiffs and the Minnesota Subclass Members within the meaning of 15 U.S.C. § 2301(7). NordicTrack provided Plaintiffs and other Minnesota Subclass Members an implied warranty of merchantability within the meaning of 15 U.S.C. § 2301(7).

155.    Defendants breached the implied warranty of merchantability because the Treadmills do not—and cannot—perform as promised or affirmed at the 2.6 CHP or higher representation of the Treadmill during household operation. Specifically, the Treadmills do not—and cannot—produce the power expected of a 2.6 CHP or higher treadmill during ordinary household use.

38

156.    As a direct and proximate result of NordicTrack's breach of the warranties regarding the CHP representations, Plaintiffs, individually and on behalf of the Minnesota Class, has been damaged. In addition, under 15 U.S.C. § 2310(d)(2), Plaintiffs and the Minnesota Class are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been incurred by Plaintiffs and the Minnesota Class in connection with the commencement and prosecution of this action.

157.    Furthermore, Plaintiffs and the Minnesota Class are also entitled to equitable relief under 15 U.S.C. § 2310(d) and damages as a result of NordicTrack's violation of its implied warranties.

158.    Plaintiffs and the Minnesota Subclass Members are entitled to recover damages and other appropriate relief, as alleged.

**COUNT 6**
**Violation of Minnesota Uniform Deceptive Trade Practices Act**
**Minn. Stat. § 325D.43-.48**
**(on behalf of the Minnesota Subclass)**
**[Reserved]**

159.    Plaintiffs restate and incorporate all other allegations in this Complaint.

160.    Plaintiffs and the Minnesota Class bring this count as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

161.    The Minnesota Uniform Deceptive Trade Practices Act ("MUDTPA"), Minn. Stat. §§ 325D.43-.48, prohibits deceptive trade practices in a person's business, vocation, or occupation. *See* Minn. Stat. §§ 325D.44, subd. 1.

162.   Defendants advertised, offered, or sold goods or services in Minnesota and therefore engaged in business directly or indirectly affecting the people of Minnesota.

163.   By engaging in deceptive trade practices in the course of its business, directly or indirectly affecting the people of Minnesota, Defendants violated Minn. Stat. § 325D.44, including the following provisions:

   a.   Representing that its goods and services had characteristics, uses, qualities and benefits that they did not have, in violation of Minn. Stat. §325D.44, subd. 1(5);

   b.   Representing that goods and services are of a particular standard or quality when they are of another, in violation of Minn. Stat. §325D.44, subd. 1 (7); and

   c.   Engaging in other conduct which similarly creates a likelihood of confusion or misunderstanding, in violation of Minn. Stat. §325D.44, subd. 1, (13).

164.   Defendants' deceptive practices include:

   a.   Representing a rating for CHP that it knew could not be achieved in normal household use;

   b.   Highlighting the fictitious CHP rating as a means to distinguish otherwise similar products and as a means to suggest the reasonability of an increased cost for the Treadmills purchased by Plaintiffs and the Minnesota Class; and

c.  Breaching the express and implied warranties related to the CHP Treadmills were capable of achieving in household use;

165.  Defendants' conduct caused substantial injury and provided no benefit to consumers.

166.  Defendants intended to mislead Plaintiffs and Minnesota Subclass Members and induce them to rely on its misrepresentations.

167.  Had Defendants disclosed to Plaintiffs and the Minnesota Subclass Members that its Treadmills did not meet the ratings for CHP as advertised, Defendants would have been unable to justify the price differentiation and premium price charged to consumers.

168.  As a direct and proximate result of Defendants' deceptive trade practices, Plaintiffs and the Minnesota Subclass Members have suffered and will continue to suffer monetary damages, in an amount to be determined at trial.

169.  Plaintiffs and the Minnesota Class are entitled to recover damages and other appropriate relief, as alleged.

**COUNT 7**
**Violation of Minnesota Prevention of Consumer Fraud Act**
**Minn. Stat. § 325F.68-.70**
**(on behalf of the Minnesota Subclass)**
**[Reserved as to Plaintiffs Barclay and Nordick]**

170.  Plaintiffs restate and incorporate all other allegations in this Complaint.

171.  Plaintiffs and the Minnesota Class bring this count as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

172.  Defendants' acts, practices, misrepresentations, and omissions constitute fraud, false pretense, false promises, misrepresentations, misleading statements as well as

41

deceptive sales practices and dissemination of misleading information in violation of Minnesota Prevention of Consumer Fraud Act, Minn. Stat. § 325F.69, subd. 1

173.    Defendants engaged in such acts, deceptive practices, misleading statements, misrepresentations, and omissions with the intent that Plaintiffs and the Minnesota Class would rely on such misrepresentations and omissions in connection with the sale of Treadmills.

174.    Plaintiffs and the Minnesota Class are entitled to restitution and/or actual damages and/or equitable and injunctive relief, costs, and reasonable attorneys' fees pursuant to Minn. Stat. § 8.31, subd. 3a.

## COUNT 8
### Violation of Minnesota False Statement in Advertising Act
### Minn. Stat. § 325F.67
### (on behalf of the Minnesota Subclass)
### [Reserved as to Plaintiffs Barclay and Nordick]

175.    Plaintiffs restate and incorporate all other allegations in this Complaint.

176.    Plaintiffs and the Minnesota Class bring this count as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

177.    The Minnesota False Statement in Advertising Act, Minn. Stat. § 325F.67, prohibits any person or corporation who sells merchandise, directly or indirectly, to the public, for sale or distribution, from making or causing to be published, disseminating, circulating or placing before the public, in this state, in publication, notice, poster, bill, label, price tag, pamphlet or in any other way, any advertisement containing any material assertion, representation, or statement of fact which is untrue, deceptive or misleading. *See* Minn. Stat. §§ 325F.67.

178.    The Treadmills are merchandise under this statute, and Defendants have engaged in substantial advertisement in the state of Minnesota concerning the nature, capabilities and/or quality of the Treadmills related to their CHP capacity, and this advertisement contained untrue, deceptive and misleading representations as to the nature and quality of the Treadmills, specifically that the Treadmills can achieve and maintain a continuous horsepower that is impossible under the known intended household use.

179.    By committing the acts described more fully above, while continuing to advertise a false and deceptive representation of the Treadmills, Defendants have violated the Minnesota False Statement in Advertising Act.

180.    Plaintiffs and the Minnesota Class have suffered injuries caused by Defendants' false advertising because they were induced to purchase a product that they would not otherwise have purchased; and because they paid a premium price for merchandise that was not of the quality or character advertised, due to Defendants' false and misleading statements, either express or implied, regarding the Treadmills' ability to achieve and maintain a CHP that is impossible under the known intended household use.

181.    In accordance with Minn. Stat. § 325F.67, and as authorized by Minn. Stat. § 8.31, subd. 3a, Plaintiffs seeks an order, on behalf of themselves and others similarly situated: (a) enjoining Defendants from continuing to represent the Treadmills as being capable of maintaining a CHP beyond that possible under household conditions, or in any way falsely advertising the horsepower output as more than would actually be expected through normal use and operation of the Treadmills; and (b) awarding Plaintiffs and the Minnesota Class damages and costs, including reasonable attorneys' fees.

**COUNT 9**
**Violations of Minnesota Unlawful Trade Practices Act**
**Minn. Stat. § 325D.13**
**(on behalf of a Minnesota Subclass)**
**[Reserved as to Plaintiffs Barclay and Nordick]**

182.   Plaintiffs restate and incorporate all other allegations in this Complaint.

183.   Plaintiffs and the Minnesota Subclass bring this count as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

184.   Defendants misrepresented the true quality of its Treadmills, while touting an inflated horsepower capability. Specifically, Defendants represent that their Treadmills are capable of providing an inflated CHP not actually available while in household use.

185.   Minnesota Unlawful Trade Practices Act, Minn. Stat. §§ 325D.09-.16 (MUTPA), prohibits Defendant sellers from knowingly misrepresenting, either directly or indirectly, the true quality of merchandise.

186.   MUTPA allows for a private right of action to enjoin violation for any person damaged or who is threatened with loss, damage, or injury by reason of a violation of section 325D.13, and any person shall be entitled to sue for and have injunctive relief against any damage or threatened loss or injury by reason of a violation.

187.   In the course of business, Defendants willfully failed to disclose and directly concealed the true horsepower capabilities of the Treadmills discussed in the allegations above and otherwise engaged in activities with a tendency or capacity to deceive. Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission, in connection with the sale of the Treadmills.

44

CASE 0:19-cv-02970-ECT-DJF    Doc. 145    Filed 07/15/22    Page 45 of 50

188.    Defendants knew their Treadmills did not produce the CHP represented to Plaintiffs and Subclass Members.

189.    By failing to disclose the true horsepower capabilities of the Treadmills, Defendants engaged in deceptive business practices in violation of the MUTPA.

190.    Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs and Subclass Members, about the true horsepower capabilities of the Treadmills.

191.    Defendants intentionally and knowingly misrepresented material facts regarding the Treadmills with intent to mislead Plaintiffs and Subclass Members.

192.    Defendants knew or should have known that its conduct violated the MUTPA.

193.    Defendants owed Plaintiffs and Subclass Members a duty to disclose the true horsepower capabilities of the Treadmills, because Defendants:

a.    Possessed exclusive knowledge that the Treadmills did not meet the represented horsepower capabilities;

b.    Intentionally concealed the foregoing from Plaintiffs and Subclass Members; and

c.    Made incomplete and misleading representations about the Treadmills, while purposefully withholding material facts from Plaintiffs and Subclass Members that contradicted these representations.

194.    Plaintiffs and Subclass Members suffered ascertainable loss caused by Defendants' misrepresentations and its concealment of and failure to disclose material

45

information. Plaintiffs and Subclass Members who purchased the Treadmills either would have paid less or would not have purchased the Treadmills at all but for Defendants' violations of MUTPA. All purchasers of the Treadmills have suffered ascertainable losses as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

195.    Defendants' continuous violations of MUTPA present a continuing risk to the general public.

196.    As a direct and proximate result of Defendants' violations of the MUTPA, Plaintiffs and Subclass Members have suffered injury-in-fact and/or actual damages.

197.    In accordance with Minn. Stat. § 325D.13, and as authorized by Minn. Stat. § 325D.45, Plaintiffs seek an order, on behalf of themselves and others similarly situated: (a) enjoining Defendants from continuing to represent the Treadmills as being capable of maintaining a CHP beyond that possible under household conditions, or in any way falsely advertising the horsepower output as more than would actually be expected through normal use and operation of the Treadmills; and (b) awarding Plaintiffs and the Minnesota Subclass damages and costs, including reasonable attorneys' fees.

## COUNT 10
### Fraud
### (on behalf of Plaintiff Ovsak and the Minnesota Subclass)
### [Reserved as to Plaintiffs Barclay and Nordick]

198.    Plaintiffs restate and incorporate all other allegations in this Complaint.

199.    Plaintiff Ovsak and the Minnesota Subclass bring this count as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

46

200.    In the course of business during the Class Period Defendants uniformly and pervasively, through standardized advertising, misrepresented that the Treadmills maintain a CHP output that they cannot accomplish while in household use.

201.    Defendants' CHP misrepresentations were false representations of a material fact, which Defendants knew to be false or made recklessly, knowing that there was insufficient knowledge upon which to base such a representation. Defendants supplied Plaintiffs Ovsak and members of the Minnesota Subclass false and misleading information that a reasonable consumer would have used as guidance in evaluating the Treadmills' horsepower capabilities.

202.    Defendants also committed fraud through material omissions of relevant facts relating to the Treadmills' horsepower. Defendants' claims regarding CHP were at the very least misleading without the inclusion of additional material facts, such as Defendants' apparent use of "CHP" to mean the horsepower of a treadmill motor on a dynamometer in a laboratory setting—a meaning contrary to both logic and industry standards.

203.    At the time Defendants made these misrepresentations and omissions, Defendants knew or should have known that these CHP representations and omissions were false and misleading, or made them without knowledge of their truth or falsity. Defendants have failed to exercise reasonable care or competence in communicating the CHP representations.

204.    The misrepresentations and omissions made by Defendants, upon which Plaintiff Ovsak and the Minnesota Subclass Members described above reasonably and

justifiably relied, were intended to induce and actually induced them to purchase or pay a premium price for the Treadmills.

205.    Plaintiff Ovsak and the Minnesota Subclass Members described above would not have purchased the Treadmills or would have paid considerably less, if the true facts concerning the CHP claims had been known.

206.    Defendants' deceitful actions have caused damage to Plaintiff Ovsak and the Minnesota Subclass Members described above, who are entitled to damages and other legal and equitable relief as a result of Defendants' misrepresentations.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, respectfully request that this Court:

1. Certify the proposed Class and Subclass and appoint Plaintiffs and their legal counsel to represent the Class and Subclass;

2. Find in favor of Plaintiffs, the Class, and the Subclass on all counts;

3. Declare that Defendants' conduct violated the statutes referenced in this Complaint;

4. Award damages, including compensatory, exemplary, and statutory to Plaintiffs, the Class, and the Subclass in an amount to be determined at trial;

5. Grant restitution to Plaintiffs, the Class, and the Subclass and require Defendants to disgorge its ill-gotten gains;

6. Award Plaintiffs, the Class, and the Subclass reasonable attorneys' fees and the costs and disbursements incurred in this suit;

7. Enjoin Defendants from future misrepresentations regarding the horsepower of its Treadmills;

8. Award Plaintiffs, the Class, and the Subclass pre-judgment and post-judgment interest at the highest legal rate to the extent provided by law; and

9. Order any such other and further relief the Court deems just and equitable.

Plaintiffs demand a trial by jury of all issues so triable.

Respectfully submitted,

July 15, 2022

*/s/ Nathan D. Prosser*
Nathan D. Prosser (MN 0329745)
HELLMUTH & JOHNSON, PLLC
8050 West 78th Street
Edina, MN 55439
Phone: (952) 941-4005
*nprosser@hjlawfirm.com*

Karl L. Cambronne (MN 0014321)
Jeffrey D. Bores (MN 0227699)
Bryan L. Bleichner (MN 0326689)
CHESTNUT CAMBRONNE PA
100 Washington Ave. S., Suite 1700
Minneapolis, MN 55401
Phone: (612) 339-7300
*kcambronne@chestnutcambronne.com*
*jbores@chestnutcambronne.com*
*bbleichner@chestnutcambronne.com*

W.B. Markovits (*pro hac vice*)
Terence R. Coates (*pro hac vice*)
Justin C. Walker (*pro hac vice*)
MARKOVITS, STOCK & DEMARCO, LLC
119 E. Court Street, Suite 530
Cincinnati, OH 45202
Phone: (513) 651-3700
*bmarkovits@msdlegal.com*

*tcoates@msdlegal.com*
*jwalker@msdlegal.com*

**Counsel for Plaintiffs, the Proposed Class, and the Subclass**